**FOX ROTHSCHILD LLP**
Formed in the Commonwealth of Pennsylvania
By:  Barry J. Muller
        Christopher R. Kinkade
Princeton Pike Corporate Center
997 Lenox Drive, Building 3
Lawrenceville, New Jersey 08648-2311
Tel: (609) 896-3600
Fax: (609) 896-1469
*Attorneys for Plaintiff LUKOIL North America LLC*

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| LUKOIL NORTH AMERICA LLC,  successor in interest to Getty Petroleum Marketing, Inc., | Case No.: |
| Plaintiff, | **COMPLAINT** |
| v. | |
| TURNERSVILLE PETROLEUM INC., successor to N.B.  Oil Inc. by assignment, and SURINDER BINDRA, | |
| Defendants. | |

Plaintiff LUKOIL North America LLC, successor in interest to Getty Petroleum Marketing, Inc. ("LNA"), by way of Complaint against Defendants Turnersville Petroleum Inc., successor to N.B. Oil Inc. by assignment ("Turnersville"), and Surinder Bindra ("Bindra"), hereby alleges and states as follows:

**<u>PARTIES, JURISDICTION, AND VENUE</u>**

1.      LNA, successor in interest to Getty Petroleum Marketing, Inc., is a distributor of motor fuel and enters into business relationships with franchisees to provide motor fuel to the public.

2.      LNA is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business at 505 Fifth Avenue, New York, NY 10017.

3.      Upon information and belief, Turnersville is a corporation organized and existing under the laws of the State of New Jersey, with its principal place of business at 505 Black Horse Pike, Williamstown, NJ 08094.

4.      Turnersville, as successor to N.B. Oil Inc. by assignment, was a franchisee of LNA, at the property located at 505 Black Horse Pike, Williamstown, NJ 08094.

5.      Upon information and belief, Bindra is an adult individual and the President of Turnersville whose address is 2111 Orien Road, Toms River, New Jersey 08755.

6.      The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338 and 15 U.S.C. § 1121.  The Court has supplemental jurisdiction over certain claims pursuant to 28 U.S.C. § 1367.

7.      The Court has personal jurisdiction over Defendants by virtue of their residence in and doing business in this District.

8.      Venue is proper in this District pursuant to 28 U.S.C. § 1391 because all Defendants are residents of the State of New Jersey and each Defendant resides in this District and because a substantial part of the events or omissions giving rise to the claims occurred in this District.

## ALLEGATIONS COMMON TO ALL COUNTS

### The LUKOIL Marks

9.      LNA has the exclusive right to license and use in the United States the trademark LUKOIL and various related trade names, trademarks, and service marks (certain of which are on the Principal Register of the United States Patent and Trademark Office), logos, and

derivations thereof, including Registration Nos. 4036862, 4026294, 4026293, 3750154, 3725905, 3725904, 3689748, 3689747, 3518690, and 3518689 (collectively, the "LUKOIL Marks").

10.     LNA or its predecessors have used the LUKOIL Marks in United States commerce since at least as early as 2003, and the LUKOIL Marks remain in use and in full force and effect today.

11.     Through its license system, LNA markets, promotes, and provides services to its licensees throughout the United States.  In order to identify the origin of their oil and gas products and automotive services, LNA allows its licensees to utilize the LUKOIL Marks and to promote the LUKOIL brand name.

12.     LNA has invested substantial effort over a long period of time, including the expenditure of millions of dollars, to develop goodwill in the LUKOIL Marks such that consumers throughout the United States recognize the LUKOIL Marks as distinctly designating LNA goods and services as originating with or being approved by LNA.

13.     The value of the goodwill and reputation of LNA and the LUKOIL Marks cannot be calculated in monetary terms.  However, because LNA is one of the largest oil and gas companies in the United States, the value of LNA's goodwill is measured in the billions of dollars.

14.     As a result of LNA's substantial marketing efforts, including licensing of the LUKOIL Marks, the LUKOIL Marks have become famous throughout the United States.

### The Agreement between the Parties and Defendants' Default

15.     LNA, through its predecessor in interest, Getty Petroleum Marketing Inc., and Turnersville, successor to N.B. Oil Inc. by assignment, were parties to a certain PMPA Franchise

Agreement, having an effective date of June 1, 2005 (the "PMPA Franchise Agreement") and related and additional agreements, including the Open Dealer/Reseller Additional Provisions and the Maintenance and Information Services Agreement (the PMPA Franchise Agreement, together with all related and additional agreements, hereinafter, the "Franchise Agreement").

16.    Effective as of the date of the Franchise Agreement, Bindra provided LNA with a Key Individual Guaranty (the "Guaranty"), pursuant to which Bindra agreed to unconditionally guarantee all of Turnersville's payment and performance obligations under the Franchise Agreement.

17.    Upon information and belief, at all relevant times Bindra has been and remains an executive or officer of Turnersville and controls and directs the conduct of Turnersville.

18.    Turnersville breached the terms of the Franchise Agreement, which terms were both reasonable and of material significance to the franchise relationship, *inter alia*:

- Turnersville failed to use good faith and best efforts to maximize the sale of products at the marketing premises;

- Turnersville failed to purchase motor fuel from LNA and failed to maintain an adequate inventory of motor fuel to serve the needs of the motoring public at the marketing premises;

- Turnersville failed to pay to LNA in a timely manner when due all sums to which LNA was legally entitled; and

- Turnersville willfully adulterated, mislabeled and/or misbranded motor fuels and committed other trademark violations.

19.    LNA fully performed its obligations under the Franchise Agreement.

20.     By letter dated August 27, 2013, LNA provided Defendants with formal notice of LNA's intention to terminate the Franchise Agreement and the franchise relationship pursuant to 15 U.S.C. § 2804, with termination to take effect on November 26, 2013.

21.     The Franchise Agreement and franchise relationship were terminated on November 26, 2013.  The termination of the Franchise Agreement and franchise relationship precludes Defendants from any further use of the LUKOIL Marks.

22.     Since termination of the Franchise Agreement and franchise relationship, Defendants have continued to use the LUKOIL Marks to induce the public to purchase fuel and related automotive goods and services.

23.     Since termination of the Franchise Agreement and franchise relationship, Defendants have continued to use the LUKOIL Marks in connection with misbranded oil and gas and related automotive goods and services that do not originate with or are not approved by LNA.

## COUNT ONE
### Trademark Infringement (15 U.S.C. § 1114) against All Defendants

24.     LNA incorporates the foregoing paragraphs by reference herein as though fully set forth at length.

25.     Defendants have marketed and sold and continue to market and sell oil and gas and related automotive goods and services through the unauthorized use of the LUKOIL Marks.

26.     As recently as May 15, 2014, Defendants were still using the LUKOIL Marks at the location of defendant Turnersville.

27.     Upon information and belief, Defendants are presently using the LUKOIL Marks at the location of defendant Turnersville.

28.    Below are photographs of the location of defendant Turnersville depicting use of the LUKOIL Marks on May 15, 2014.

 

 



29.     In an effort to halt Defendants' infringing activities, LNA's counsel sent Defendants a cease and desist letter via FedEx on Thursday, May 29, 2014, which was delivered on Friday, May 30, 2014.  The letter requested, *inter alia*, that Defendants cease their infringing activities and provide written confirmation of same to LNA's counsel by June 11, 2014.

30.     Despite receipt of the May 29, 2014, cease and desist letter, as of June 12, 2014, Defendants were still displaying and using the LUKOIL Marks at the location of defendant Turnersville.

31.     Below are photographs of the location of defendant Turnersville depicting use of the LUKOIL Marks on June 12, 2014.







32.     Through continued unauthorized use of the LUKOIL Marks, Defendants have falsely held themselves out and continue to falsely hold themselves out to the general consuming public as licensees, franchisees, or authorized resellers of LNA's goods and services without authorization, thereby trading off of the goodwill of LNA and the LUKOIL Marks.

33.     Defendants' unauthorized use of the LUKOIL Marks has caused and is likely to continue to cause confusion, mistake, or deception among prospective or actual consumers and constitutes trademark infringement in violation of Section 32 of the Lanham Act.

34.     Defendants have at all times been aware of LNA's exclusive rights in the LUKOIL Marks and have acted willfully or with intentional or reckless disregard of LNA's rights and the termination of the Franchise Agreement and franchise relationship, such that Defendants' actions constitute willful infringement of the LUKOIL Marks.

35.     Defendants' unauthorized use of the LUKOIL Marks has caused and is likely to continue to cause significant damage to LNA and irreparable harm to the goodwill of LNA and the LUKOIL Marks such that LNA has an inadequate remedy at law.

**COUNT TWO**
**False Designation of Origin (15 U.S.C. § 1125(a)) against All Defendants**

36.     LNA incorporates the foregoing paragraphs by reference herein as though fully set forth at length.

37.     The acts of Defendants in marketing and selling goods and services under the LUKOIL Marks without authorization of LNA constitutes a false designation of origin, a false and misleading description of fact, and a false and misleading representation of fact that has caused and is likely to continue to cause confusion, mistake, and deception as to the affiliation of Defendants with LNA in violation of Section 43(a) of the Lanham Act.

38.     The acts of Defendants in marketing and selling goods and services under the LUKOIL Marks without authorization of LNA constitutes a false designation of origin, a false and misleading description of fact, and a false and misleading representation of fact that has caused and is likely to continue to cause confusion, mistake, and deception as to the origin, sponsorship, or approval of Defendants' goods and services vis-à-vis LNA in violation of Section 43(a) of the Lanham Act.

39.     Defendants' aforementioned acts have at all times been willful and deliberate.

40.     Defendants' unauthorized use of the LUKOIL Marks has caused and is likely to continue to cause significant damage to LNA and irreparable harm to the goodwill of LNA and the LUKOIL Marks such that LNA has an inadequate remedy at law.

**COUNT THREE**
**Trademark Dilution (15 U.S.C. § 1125(c)) against All Defendants**

41.     LNA incorporates the foregoing paragraphs by reference herein as though fully set forth at length.

42.     The LUKOIL Marks are famous marks within the meaning of the Lanham Act.

43.     Defendants' continued unauthorized use of the LUKOIL Marks as described above, particularly in connection with oil and gas products not originating from or authorized by LNA, after the LUKOIL Marks have become famous, has caused and is likely to continue to cause dilution of the distinctive quality of the LUKOIL Marks and the goodwill associated therewith in violation of Section 43(c) of the Lanham Act.

44.     Defendants' aforementioned acts have at all times been willful and deliberate.

45.     Defendants' unauthorized use of the LUKOIL Marks has caused and is likely to continue to cause significant damage to LNA and irreparable harm to the goodwill of LNA and the LUKOIL Marks such that LNA has an inadequate remedy at law.

## COUNT FOUR
### Breach of Contract against Defendant Turnersville

46.     LNA incorporates the foregoing paragraphs by reference herein as though fully set forth at length.

47.     LNA and Turnersville were parties to a certain PMPA Franchise Agreement, having an effective date of June 1, 2005 (the "PMPA Franchise Agreement") and related and additional agreements, including the Open Dealer/Reseller Additional Provisions and the Maintenance and Information Services Agreement (the PMPA Franchise Agreement, together with all related and additional agreements, hereinafter, the "Franchise Agreement").

48.     Turnersville breached the terms of the Franchise Agreement, which terms were both reasonable and of material significance to the franchise relationship, *inter alia*:

- Turnersville failed to use good faith and best efforts to maximize the sale of products at the marketing premises;

- Turnersville failed to purchase motor fuel from LNA and failed to maintain an adequate inventory of motor fuel to serve the needs of the motoring public at the marketing premises;

- Turnersville failed to pay to LNA in a timely manner when due all sums to which LNA was legally entitled; and

- Turnersville willfully adulterated, mislabeled and/or misbranded motor fuels and committed other trademark violations.

49.     LNA fully performed its obligations under the Franchise Agreement.

50.     As a direct and proximate result of Turnersville's breach of the Franchise Agreement, LNA has suffered and continues to suffer damages, including consequential and compensatory damages, liquidated damages, attorneys' fees, costs and expenses.

10

## COUNT FIVE
### Breach of Contract against Defendant Bindra

51.     LNA incorporates the foregoing paragraphs by reference herein as though fully set forth at length.

52.     Effective as of the date of the Franchise Agreement, Bindra provided LNA with a Key Individual Guaranty (the "Guaranty").

53.     Pursuant to the Guaranty, Bindra agreed, among others, to unconditionally guarantee all of Turnersville's payment and performance obligations under the Franchise Agreement including, but not limited to, any and all liability, damages, loss and other expenses (including court costs and attorneys' fees) that arise from Turnersville's breach of the Franchise Agreement.

54.     Pursuant to the Guaranty, Bindra is liable to LNA for the damages sustained by LNA arising out of Turnersville's breach of the Franchise Agreement.

## PRAYER FOR RELIEF

WHEREFORE, LNA respectfully requests judgment against Defendants as follows:

a)      That Defendants have willfully infringed and are willfully infringing LNA's federally registered trademark rights in the LUKOIL Marks under 15 U.S.C. § 1114;

b)      That Defendants have committed and are committing acts of false designation of origin, false or misleading description of fact, and false or misleading representation in violation of LNA's rights under 15 U.S.C. § 1125(a);

c)      That Defendants have committed and are committing acts of dilution by tarnishment and dilution by blurring of the distinctive quality of LNA's LUKOIL Marks under 15 U.S.C. § 1125(c);

11

d)      Preliminarily and permanently restraining and enjoining Defendants, along with their affiliates, subsidiaries, related companies or entities, officers, agents, servants, employees, and attorneys, and all those who act in concert or participation with them, from marketing, promoting, or selling oil and gas or related automotive goods or services in connection with the LUKOIL Marks, any colorable imitations thereof, or any marks or designations that are likely to cause confusion with the LUKOIL Marks;

e)      Ordering that Defendants provide an accounting to determine all gains, profits, savings, and advantages obtained by Defendants as a result of their wrongful actions;

f)      Ordering that Defendants destroy or deliver to LNA all materials bearing any of the LUKOIL Marks or portions thereof;

g)      In connection with Counts One, Two, and Three under the Lanham Act, granting compensatory damages, treble damages, attorneys' fees, prejudgment interest, costs of suit, and such other and further relief as the Court deems just and proper;

h)      In connection with Count Four for breach of contract against Turnersville, granting consequential and compensatory damages, liquidated damages, attorneys' fees, costs of suit, interest, and such other and further relief as the Court deems just and proper; and

i)      In connection with Count Five for breach of contract against Bindra, granting compensatory damages, liquidated damages, attorneys' fees, costs of suit, interest, and such other and further relief as the Court deems just and proper.

Dated: June 13, 2014

**FOX ROTHSCHILD LLP**

Attorneys for Plaintiff
LUKOIL North America LLC

s/ Christopher R. Kinkade
Barry J. Muller
Christopher R. Kinkade
Princeton Pike Corporate Center
997 Lenox Drive, Building 3
Lawrenceville, New Jersey 08648-2311
Tel: (609) 896-3600
Fax: (609) 896-1469

## <u>L. CIV. R. 11.2 CERTIFICATION</u>

Plaintiff, by its undersigned counsel, hereby certifies that the matters in controversy in this case are not, to the best of its knowledge and belief, the subject of any other action pending in any court or of a pending arbitration proceeding, nor is any such other action or arbitration proceeding contemplated.


Dated: June 13, 2014

**FOX ROTHSCHILD LLP**

Attorneys for Plaintiff
LUKOIL North America LLC

<u>s/ Christopher R. Kinkade</u>
Barry J. Muller
Christopher R. Kinkade
Princeton Pike Corporate Center
997 Lenox Drive, Building 3
Lawrenceville, New Jersey 08648-2311
Tel: (609) 896-3600
Fax: (609) 896-1469