UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| LUKOIL NORTH AMERICA, LLC, successor in interest to Getty Petroleum Marketing, Inc., | Civil Action No. 1:14-CV-03810-RMB-AMD |
| Plaintiff, | |
| v. | |
| TURNERSVILLE PETROLEUM, INC., successor to N.B. Oil, Inc. by assignment, and SURINDER BINDRA, | |
| Defendants. | |

**DEFENDANT-COUNTERCLAIMANT TURNERSVILLE PETROLEUM, INC.'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF-COUNTERCLAIM DEFENDANT LUKOIL NORTH AMERICA LLC'S MOTION TO DISMISS THE COUNTERCLAIMS**

BROWN MOSKOWITZ & KALLEN, P.C.
180 River Road
Summit, New Jersey  07901
(973) 376-0909
Attorneys for Defendants-Counterclaimants
Turnersville Petroleum, Inc. and Defendant Surinder Bindra

Of Counsel and On the Brief:
LORA L. FONG
SHALOM D. STONE

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ..................................................................................1

STATEMENT OF FACTS ..........................................................................................2

LEGAL ARGUMENT..................................................................................................3

    POINT I          TURNERSVILLE'S STATE LAW CLAIMS ARE OUTSIDE
                            THE NARROW PREEMPTIVE SCOPE OF THE PMPA…………….3

    POINT II         TURNERSVILLE'S COUNTERCLAIMS FOR BREACH OF
                            CONTRACT, VIOLATION OF THE U.C.C., AND BREACH
                            OF THE DUTY OF GOOD FAITH AND FAIR DEALING
                            READILY MEET THE STANDARD AND SHOULD
                            NOT BE DISMISSED………………………………………………….7

                1. Turnersville's Counterclaim for Breach of Contract
                   (Count I) is Well-Pleaded and Should Not
                   be Dismissed………………………………………………………….9

                2. Turnersville's Counterclaim Alleging Violations of the
                   U.C.C. (Count II) is Well-Pleaded and Should Not be
                   Dismissed…………………………………………………………....10

                3. Turnersville's Counterclaim for Breach of Good Faith
                   and Fair Dealing (Count III) is Well-Pleaded and
                   Should Not be Dismissed……………………………………………13

CONCLUSION............................................................................................................16

# TABLE OF AUTHORITIES

<u>Cases</u>:

*Ashcroft v. Igbal*,
129 S. Ct. 1937 (2009) ............................................................................................7

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544, (2007) ...............................................................................................7

*Bellmore v. Mobil Oil Corp.*,
783 F.2d 300 (2d Cir. 1986) ....................................................................................3

*Clark v. BP Oil Co.*,
137 F.3d 386 (6th Cir. 1998) ...................................................................................5

*Consumers Petroleum Co. v. Texaco, Inc.*,
804 F.2d 907 (6th Cir. 1986) ...................................................................................5

*Coyle v. Englander's*,
199 N.J. Super. 212, 488 A.2d 1083 (App. Div. 1985) ...........................................9

*Dersh Energies Inc. v. Shell Oil Co.*,
314 F.3d 846 (7th Cir. 2002) ...................................................................................4

*Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*,
421 F.Supp.2d 831 (D.N.J. 2006) ...........................................................................9

*Fowler v. UpMC Shadyside*,
578 F.3d, 203 (3d Cir. 2009) ...................................................................................8

*Joc, Inc. v. ExxonMobil Oil Corp.*,
2010 WL 1380750 (D.N.J. April 1, 2010) ......................................................12, 15

*Kehm Oil Co. v. Texaco, Inc.*,
537 F.3d 290 (3d Cir. 2008) ....................................................................................5

*O'Shea v. Amoco Oil Co.*,
866 F.2d 584 (3d Cir. 1989) ................................................................................3, 5

*Pauly v. Houlihan's*,
2012 WL 6652754 (D.N.J. Dec. 20, 2012) ............................................................10

*Philips v. County of Allegheny*,
515 F.3d 224 (3d Cir. 2008) ................................................................................7, 8

*Simmons v. Mobil Oil Corportion*,
29 F.3d 505 (9th Cir. 1993) ...................................................................................5

*Slack v. Suburban Propane Partners, L.P.*,
2010 WL 3810870 (D.N.J. Sept 21, 2010) ...........................................................14

*Slack v. Suburban Propane Partners, L.P.*,
2010 WL 5392845 (D.N.J. Dec. 22, 2010) ......................................................14, 15

*Slatky v. Amoco Oil Co.*,
830 F.2d 476 (3d Cir. 1987) ..................................................................................4

*Wilson v. Amerada Hess Corp.*,
168 N.J. 236 (2001) ..........................................................................11, 13, 14, 15

*Yocham v. Novartis Pharmaceuticals Corp.*,
736 F.Supp. 2d 875 (D.N.J. 2010) ......................................................................12

<u>Statutes, Regulations and Court Rules:</u>

Fed. R. Civ. Proc. R. 12(b)(6) ..................................................................................1

Petroleum Marketing Practices Act, 15 U.S.C. § 2801 ..........................................1

NJ Franchise Practices Act, *N.J.S.A.* 56:10-1 .........................................................6

*N.J.S.A.* 12A:2-305 ........................................................................................2, 9, 10

*N.J.S.A.* 12A:2-607 ..........................................................................................12, 13

## PRELIMINARY STATEMENT

Defendant-Counterclaimant Turnersville Petroleum, Inc. ("Turnersville") submits this memorandum of law in opposition to the overreaching and baseless motion to dismiss brought by Plaintiff-Counterclaim Defendant Lukoil North America, LLC ("LNA"). Turnersville has properly pleaded a four-count Counterclaim, asserting claims for (1) breach of contract; (2) violation of the Uniform Commercial Code; (3) breach of the duty of good faith and fair dealing, and (4) violation of the New Jersey Franchise Practices Act. LNA's motion seeks to dismiss all claims asserted by Turnersville in the Counterclaim.

The Motion to Dismiss should be denied in its entirety. LNA's arguments miss the mark, falling short of the applicable legal standards and giving short shrift to the facts alleged by Turnersville in its Counterclaim. First, LNA has asserted that Turnersville's claims are preempted under the Petroleum Marketing Practices Act, 15 U.S.C. § 2801 *et seq.*(the "PMPA"). This argument belies a fundamental misunderstanding of the legislative purpose and narrowly limited scope of the PMPA. Controlling authority is clear; the PMPA only preempts claims based on state laws that conflict with the PMPA's regulation of a franchisor's grounds for terminating a franchise agreement, or that regulate the procedures for and notification requirements regarding such termination. The claims asserted by Turnersville in its Counterclaim have nothing to do with the grounds invoked by LNA, or the procedure it followed, in terminating the franchise agreement with Turnersville – and have everything to do with the lack of good faith on LNA's part in its <u>performance</u> of the franchise agreement and with its breach thereof.

Second, Turnersville's claims are well-pleaded and should not be dismissed under Fed. R. Civ. Proc. R. 12(b)(6). Turnersville is obligated to provide a short and plain statement of its

1

claims showing that it is entitled to relief, and its factual allegations are to be taken as true, with all reasonable inferences drawn in Turnersville's favor. As set forth in detail below, the claims asserted by Turnersville readily withstand the test for dismissal, and LNA's motion should be denied in its entirety.

## STATEMENT OF FACTS

Plaintiff-Counterclaim Defendant LNA markets motor fuel under its "LNA" trademark, in part, through a franchise distribution system, whereby Lukoil franchisees are authorized to operate motor fuel stations under the Lukoil brand. Counterclaim ¶8. LNA (as franchisor) and Defendant-Counterclaimant Turnersville (as franchisee) were parties to a certain PMPA Franchise Agreement, with an effective date of June 1, 2005 and related additional agreements (the "Franchise Agreements"). Counterclaim ¶6. The parties had a longstanding business relationship and Turnersville, in reliance thereof, as well as on the contractual agreements, made substantial investments and improvements to its Lukoil-branded service station. Counterclaim ¶10. Under the Franchise Agreement, the price charged by LNA to Turnersville for motor fuel was an open price term, to be fixed by LNA in good faith, governed by the Uniform Commercial Code, *N.J.S.A.* 12A:2-305. Counterclaim ¶11.

Despite LNA's obligations under the Franchise Agreement to set the price for fuel fairly and in good faith, LNA's fuel prices were arbitrary and commercially unreasonable. Counterclaim ¶13. LNA often set its wholesale price close to, equal to, or even above the price being charged at retail by Turnersville's competitors. Counterclaim ¶14. Turnersville had a reasonable expectation that LNA would set its fuel prices such that Turnersville could operate at a profit. Counterclaim ¶15. As a direct and proximate result of LNA's pricing policies, Turnersville regularly operated at a loss. Counterclaim ¶16. Turnersville was thereby deprived

2

of its reasonable expectations and the benefit of its bargain with LNA. *Id.* As a direct and proximate result of LNA's pricing policies, Turnersville suffered substantial damages. Counterclaim ¶17. Despite the fact that Turnersville regularly, repeatedly, and within a reasonable time, notified LNA that LNA's fuel prices were unfair and unreasonable, LNA failed and refused to change its ways. Counterclaim ¶18. As a result of LNA's arbitrary and unreasonable fuel prices, Turnersville's retail prices were higher than its competitors' retail prices, which in turn caused significant declines in Turnersville's volume of fuel sales. Counterclaim ¶32. Additionally, the Franchise Agreements required Turnersville to sell certain minimum quantities of fuel, which were unreasonable and which Turnersville was unable to attain as a result of LNA's arbitrary and unreasonable fuel prices. Counterclaim ¶¶31, 33.

## ARGUMENT

### POINT I

### TURNERSVILLE'S STATE LAW CLAIMS ARE OUTSIDE THE NARROW PREEMPTIVE SCOPE OF THE PMPA.

The PMPA was enacted to address a singularly narrow focus of petroleum franchise relationships–the termination and the nonrenewal of franchise relationships. Plaintiff-Counterclaim Defendant LNA misguidedly argues that Turnersville's counterclaims that assert causes of action under state law are preempted under the PMPA "because all of the Defendants' claims involve the grounds for termination of a franchise agreement that are governed exclusively by the PMPA." Plaintiff's Brief at 4. However, the Third Circuit has made clear that the PMPA only preempts state laws that regulate the grounds for termination of a franchise agreement, or that regulate the procedures for and notification requirements regarding such termination. *O'Shea v. Amoco Oil Co.*, 886 F.2d 584, 592 (3d Cir. 1989), citing *Bellmore v. Mobil Oil Corp.*, 783 F.2d 300, 304 (2d Cir. 1986) ("PMPA preempts only those state laws that

regulate the 'grounds for, procedures for, and notification requirements with respect to termination,' to the extent that such laws are not the same as the PMPA").

Importantly, the Third Circuit has noted that the PMPA only preempts state laws that regulate the circumstances relating to when a franchisor terminates or non-renews a franchisee. *Id.* ("...we believe that PMPA only preempts state laws that limit the permissible substantive reasons that a petroleum franchisor can terminate a franchisee"). Indeed, the PMPA reflects the intent to mitigate the unequal bargaining power between franchisors and franchisees, endeavoring to protect franchisees from arbitrary and discriminatory terminations and non-renewals. *O'Shea*, 886 F.2d. at 587; *Slatky v. Amoco Oil Co.*, 830 F.2d 476, 484 (3d Cir. 1987). *See also*, *Dersh Energies Inc. v. Shell Oil Co.*, 314 F.3d 846, 855-56 (7th Cir. 2002) ("Congress enacted the PMPA to address the disparity in bargaining power" and to "level the playing field" and "prohibits franchisors from terminating a franchise or discontinuing a franchise relationship unless the franchisor does so pursuant to one of the grounds enumerated in the Act").

In the case at bar, Turnersville is the franchisee -- not the franchisor -- and its counterclaims against LNA are neither directed to the basis under which LNA terminated the franchise agreement, nor to the procedure or notification of termination followed by LNA. Accordingly, those counterclaims are not preempted by the PMPA.

Inasmuch as franchise relationships are formalized and reflected in franchise agreements, claims sounding in contract and related causes of action are prevalent in disputes between franchisors and their franchisees. Given the narrow breadth of the PMPA, these claims are not typically subject to preemption under the PMPA. In *O'Shea*, the plaintiff had asserted a claim of fraud in the inducement of the franchise agreement. The Third Circuit noted that such a claim

was not properly preempted by the PMPA, as the intent of that law was not to pre-empt the general common law of contract, as would be applicable to any franchise agreement.

> The goal of the framers of the PMPA was to create a uniform system of franchise termination, not a uniform system of contract law. The Senate Report on the bill refers to legislative intent to preempt the patchwork of state laws that the states had adopted to address "petroleum product franchising problems." There is no reference to any legislative intent to preempt the general common law of contract, even to the extent that it may become involved in a PMPA action.

*Id.* at 593, citations omitted. Adding to its analysis in *O'Shea*, the Third Circuit later adopted an "intimately intertwined" analysis. *Kehm Oil Co. v. Texaco, Inc.*, 537 F.3d 290 (3d Cir. 2008). Simply put, "when the state law claims are 'intimately intertwined' with the termination or nonrenewal of a franchise, they are preempted by the PMPA." *Id.* at 299. In so ruling, the *Kehm* court remanded the franchisee's claims – including a breach of contract claim – to the trial court for a determination as to whether those claims were "so intimately intertwined with the non-renewal" of the franchise relationship, that they were preempted by the PMPA.

In determining whether a claim meets the "intimately intertwined" test, it is noteworthy that the cases cited by the Third Circuit in *Kehm,* in its adoption of the "intimately intertwined" test, are within the narrow focus of termination or non-renewal of a franchise relationship. *Kehm,* 537 F.3d. at 299, citing *Clark v. BP Oil Co.,* 137 F.3d 386 (6th Cir. 1998) (plaintiff's state law claims preempted by PMPA because they sought to impose standards more stringent than the PMPA regarding the termination or nonrenewal of his franchise); *Simmons v. Mobil Oil Corporation*, 29 F.3d 505 (9th Cir. 1993) (breach of duty of good faith and fair dealing in renewal terms offering); *Consumers Petroleum Co. v. Texaco, Inc.*, 804 F.2d 907 (6th Cir. 1986) (state law claim

seeking to impose a different notice requirement than under the PMPA on franchisor was preempted). Simmons is particularly instructive, holding that the franchisee's claim for a breach of the duty of good faith and fair dealing was prempted by the PMPA. Careful analysis reveals allegations that this breach was manifested by the franchisor's alleged imposition of conditions in the renewal terms that drastically increased the rent. *Id.* at 509. Thus, the alleged bad faith act was intimately intertwined with the franchisor's actions in the renewal of the franchise agreement, and therefore subject to the exclusive purview of the PMPA.

In contrast, in the case at bar, Turnersville's counterclaim asserts, inter alia, that LNA breached its the duty of good faith and fair dealing in LNA's performance of its obligations under the franchise agreement, during the period prior to LNA's termination of that agreement. More specifically, Turnersville has alleged that LNA failed to set the price for fuel fairly or in good faith, and instead, set its fuel prices arbitrarily and at commercially unreasonable terms, often at close to, equal to, or even above the price charged a retail by Turnersville's competitors.[1] These allegations serve as the basis for the claims that LNA now seeks to preempt under the PMPA, yet without question have nothing to do with LNA's termination or renewal of the franchise agreement. Accordingly, LNA's motion to dismiss Counts I, II, III and IV of the Counterclaim as preempted by the PMPA should be denied.

---

[1] In addition to the foregoing allegations, for Count IV of the Counterclaim, Turnersville also alleged facts specifically relating to LNA's violation of the *NJ Franchise Practices Act, N.J.S.A.* 56:10-1, *et seq.*, all occurring prior to LNA's termination of the franchising agreement and similarly failing to meet the intimately intertwined test. See Counterclaim, ¶¶25-34.

## POINT II

### TURNERSVILLE'S COUNTERCLAIMS FOR BREACH OF CONTRACT, VIOLATION OF THE U.C.C., AND BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING READILY MEET THE STANDARD AND SHOULD NOT BE DISMISSED.

To prevail under a motion to dismiss, Turnersville's counterclaims must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. " *Ashcroft v. Igbal,* 129 S. Ct. 1937 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A court is bound to accept all of Turnersville's factual allegations in its counterclaim as true and draw all reasonable inferences in Turnersville's favor. *Philips v. County of Allegheny,* 515 F.3d 224, 234 (3d Cir. 2008). Synthesizing the impact of *Twombly* on the applicable standard for dismissal, the Third Circuit has made clear that certain pre-existing pleading standards remain in effect:

> In determining how *Twombly* has changed this standard, we start with what *Twombly* expressly leaves intact. The Supreme Court reaffirmed that Fed. R. Civ. P. 8, "'requires only a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests,'" and that this standard does not require "detailed factual allegations." *Twombly,* 127 S.Ct. at 1964 (quoting *Conley,* 355 U.S. at 47, 78 S.Ct. 99). The Supreme Court also reaffirmed that, on a Rule 12(b)(6) motion, the facts alleged must be taken as true and a complaint may not be dismissed merely because it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits. *See id.* at 1964-65, 1969 n. 8. The Supreme Court did not address the point about drawing reasonable inferences in favor of the plaintiff, but we do not read its decision to undermine that principle.

*Philips,* 515 F.3d. at 231.

> [T]he Supreme Court's *Twombly* formulation of the pleading standard can be summed up thus: "stating . . . a claim requires a complaint with enough factual matter (taken as true) to suggest"

> the required element. This "does not impose a probability requirement at the pleading stage," but instead "simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of" the necessary element.

*Phillips*, 515 F.3d at 234.

The Third Circuit has provided further post-*Iqbal* guidance to district courts faced with a motion to dismiss under 12(b)(6):

> Therefore, after *Iqbal*, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts.

*Fowler v. UpMC Shadyside*, 578 F.3d, 203, 210-211 (3d Cir. 2009) (citations omitted).

In the case at bar, Turnersville's counterclaims are sufficient under the applicable standard described above, and should not be dismissed. Separating the factual elements from the legal elements, Turnersville has alleged, without limitation, the following facts. The parties' relationship was governed by a franchise agreement (Counterclaim ¶6) with open price terms, (Counterclaim ¶11) and LNA failed to set the price for fuel fairly or in good faith. Counterclaim ¶13. Indeed, LNA's wholesale fuel prices were close to, equal to or even above the retail prices being charged by Turnersville's competitors. Counterclaim ¶14. Despite Turnersville's reasonable expectations that the LNA prices would be set at a level that would enable Turnersville to operate at a reasonable profit, as a result of LNA's pricing practices, Turnersville operated at a loss, and suffered substantial damages. Counterclaim ¶15-17. Moreover, Turnersville alleges that it regularly, repeatedly, and within a reasonable time, notified LNA that

LNA's fuel prices were unfair and unreasonable, but LNA failed and refused to change its ways. Counterclaim ¶18.

As thus pleaded, the factual allegations above amply demonstrate a "plausible claim for relief." Turnersville has alleged sufficient facts to establish that there is a reasonable expectation that discovery will reveal evidence establishing the causes of action asserted in the Counterclaim.

### 1. Turnersville's Counterclaim for Breach of Contract (Count I) is Well-Pleaded and Should Not be Dismissed.

Count I of the Counterclaim properly states a claim against LNA for breach of contract. The essential elements of a cause of action for breach of contract are (1) the existence of a valid contract; (2) the material breach of the contract by the defendant; and (3) resulting damages. *Fletcher–Harlee Corp. v. Pote Concrete Contractors, Inc.*, 421 F.Supp.2d 831, 833 (D.N.J. 2006), aff'd, 482 F.3d 247 (3d Cir. 2007); *Coyle v. Englander's*, 199 N.J. Super. 212, 488 A.2d 1083, 1088 (App. Div. 1985). Taking all of Turnersville's allegations as true, and drawing all inferences in Turnersville's favor, the Court should readily find that Turnersville's breach of contract claim should not be dismissed.

Turnersville specifically alleges that LNA and Turnersville, as the successor to N.B. Oil, Inc. by assignment, were parties to a specific agreement, namely the PMPA Franchise Agreement, having the effective date of June 1, 2005 (the "PMPA Franchise Agreement") and related additional agreements (collectively, the "Franchise Agreements"). Counterclaim ¶6. Additionally, Turnersville set forth with sufficient detail the manner in which LNA breached the Franchise Agreements, including alleging (i) that the price was subject to the Uniform Commercial Code, Section 2-305, codified at *N.J.S.A.* 12A:2-305, and thereby required to be fixed in good faith (Counterclaim ¶11), (ii) that LNA failed to set such price fairly or in good faith, and to the contrary, that such prices were arbitrary and commercially unreasonable

9

(Counterclaim ¶13); (iii) that LNA set its wholesale price close to, equal to, or even above the price being charged at retail by Turnersville's competitors (Counterclaim ¶14); (iv) that Turnersville reasonably expected that LNA would set fuel prices such that Turnersville could operate at a reasonable profit (Counterclaim ¶15); and that as a direct and proximate result of such pricing practices, Turnersville operated at a loss, was deprived of the benefit of its bargain with LNA (Counterclaim ¶16), and suffered substantial damages (Counterclaim ¶17).

### 2. Turnersville's Counterclaim Alleging Violations of the U.C.C. (Count II) is Well-Pleaded and Should Not be Dismissed.

Turnersville has asserted in Count II of its Counterclaim, that LNA has violated the Uniform Commercial Code ("U.C.C."). More specifically, Turnersville has claimed that the price charged by LNA to Turnersville for fuel is an open price term subject to the U.C.C., *N.J.S.A.* 12A:2-305, and must be fixed by the seller in good faith. Counterclaim ¶11.

Illustrative of the pleading standard for a claim under U.C.C. 2-305, *Pauly v Houlihan's*, 2012 WL 6652754 (D.N.J. Dec. 20, 2012) involved a restaurant customer's action for breach of contract alleging a violation of U.C.C. 2-305, where he ordered several drinks offered via a restaurant menu that did not list the prices charged. Despite plaintiff's failure to allege what price he paid for the drinks versus what a reasonable good faith price for the drinks would be, the District Court concluded that the claim should not be dismissed:

> Plaintiff has alleged sufficient facts to put Defendant Houlihans on notice about the grounds for his claim. That is sufficient to satisfy Rule 8 and presents a plausible basis for relief. No claim of fraud is made, so the heightened pleading standards of a Rule 9(b) do not apply. The parties will have an opportunity to further develop the facts which support Plaintiff's claim in Plaintiff's initial disclosures under Rule 26(a)(1), Fed. R. Civ. P., and in discovery, but at this early stage of the litigation, the Plaintiff has satisfied the pleading requirements in order to survive a motion to dismiss.

As previously noted, Turnersville has alleged that LNA owed it a duty of good faith in connection with the Franchise Agreements, and that LNA failed to set the price for fuel fairly or in good faith. Specific allegations of fact assert that the wholesale price that LNA set was arbitrary and commercially unreasonable, as reflected in the fact that pricing was close to, equal to, or even above the price charged at retail by Turnersville's competitors. These allegations are sufficient to withstand a motion to dismiss. Moreover, contrary to LNA's argument that LNA had no obligation to set prices in a manner that enable Turnersville to make a profit, the New Jersey Supreme Court has held that where there is a contractual open price term, the party setting the price may not do so arbitrarily, unreasonably or capriciously, with the objective of denying the other party from reaping the benefits of its bargain without legitimate purpose:

> a party exercising its right to use discretion in setting price under a contract breaches the duty of good faith and fair dealing if that party exercises its discretionary authority arbitrarily, unreasonably, or capriciously, <u>with the objective of preventing the other party from receiving its reasonably expected fruits under the contract</u>. Such risks clearly would be beyond the expectations of the parties at the formation of a contract when parties reasonably intend their business relationship to be mutually beneficial. They do not reasonably intend that one party would use the powers bestowed on it to destroy unilaterally the other's expectations without legitimate purpose.

*Wilson v. Amerada Hess Corp.*, 168 N.J. 236, 251 (2001) (*emphasis added*). In *Wilson*, the New Jersey Supreme Court determined that the lower court's grant of defendants' motion for summary judgment improperly denied plaintiffs the opportunity to take discovery to develop evidence of an improper motive on the part of Hess, and remanded the matter to the trial court.

Turnersville has specifically alleged that LNA's conduct in setting prices under the Franchise Agreements was arbitrary and unreasonable, and lacking good faith. That, in combination with the allegation that these actions deprived Turnersville of its reasonable

11

expectations and benefit of its bargain with LNA, sufficiently establish Turnersville's claim for the breach of the covenant of good faith and fair dealing. *Joc, Inc. v. ExxonMobil Oil Corp.*, 2010 WL 1380750 at *6 (D.N.J. April 1, 2010) (Plaintiff's use of terms "arbitrarily, unreasonably, or capriciously" connote bad faith; combined with allegations that Exxon knew its prices and other decisions prevented them from receiving the contractual rewards or benefits they reasonably expected, stated a claim for a breach of the implied covenant of good faith and fair dealing sufficient for motion to dismiss). In this case, Turnersville's Counterclaim adequately alleges the lack of good faith required of LNA's in setting prices under the Franchise Agreements, and these claims should not be dismissed.

LNA also argues, without citing controlling authority, that Turnersville's claim under U.C.C. 2-305 is barred by the failure to provide notice to LNA as required by U.C.C. 2-607. Plaintiff's Brief at 8. To be sure, *N.J.S.A.* 12A:2-607 requires notice as a condition precedent to a successful claim for breach of Section 2-305. However, Turnersville has met the notice requirement as asserted in its Counterclaim. Specifically, at ¶18, Turnersville alleges that it "regularly, repeatedly, and within a reasonable time notified LNA that LNA's fuel prices were unfair and unreasonable, but LNA failed and refused to change its ways." These notifications were not generalized complaints about prices being too high, but assertions of unfair and unreasonable pricing in the context of LNA setting prices under an open price term - which required that LNA set prices fairly and in good faith. The nature of the notice required under U.C.C. 2-607 "need not be detailed, and is merely to inform the seller that something is amiss with the particular transaction." *Yocham v. Novartis Pharmaceuticals Corp.*, 736 F.Supp. 2d 875,

889 (D.N.J. 2010) (noting that failure to use the word "breach" or "contract" did not render notice ineffective). *See also*, Official Comment 4, *N.J.S.A.* 12A:2-607.[2]

### 3. Turnersville's Counterclaim for Breach of Good Faith and Fair Dealing (Count III) is Well-Pleaded and Should Not be Dismissed.

Contrary to LNA's faulty arguments, the allegations of Turnersville contained in the Counterclaim sufficiently allege LNA's breach of the duty of good faith and fair dealing in its performance of the franchise agreement and should not be dismissed. As noted above, in *Wilson*, the New Jersey Supreme Court stated the test for determining whether this duty has been breached in setting a price under an open pricing contract, requiring a showing of the arbitrary, unreasonable or capricious exercise of a party's price-setting authority, with the objective of preventing the other party from receiving its reasonably expected benefits of the contract. *Wilson*, 168 N.J. at 251. While *Wilson* required that there be a showing of bad motive or intention, it further recognized that a party asserting such a claim must be afforded the opportunity to develop the requisite evidence, and declined to find that the plaintiff's contentions were without merit, absent the benefit of the discovery that had been denied by the trial court. *Id.* at 253. In reversing the grant of summary judgment below, and remanding the matter to the trial court for that additional discovery, the *Wilson* Court indicated that if such discovery

---

[2] Official Comment 4 provides:
> The content of the notification need merely be sufficient to let the seller know that the transaction is still troublesome and must be watched. There is no reason to require that the notification which saves the buyer's rights under this section must include a clear statement of all the objections that will be relied on by the buyer, as under the section covering statements of defects upon rejection (Section 2-605). Nor is there reason for requiring the notification to be a claim for damages or of any threatened litigation or other resort to a remedy. The notification which saves the buyer's rights under this Article need only be such as informs the seller that the transaction is claimed to involve a breach, and thus opens the way for normal settlement through negotiation.

13

demonstrated that if the petroleum franchisor defendant knew that its pricing made it impossible for the plaintiff franchisees to operated profitably, and unless that the franchisor was able to "provide an explanation for its pricing that is not arbitrary, capricious, or unreasonable", then the plaintiffs will have established a triable question of fact on their claim for breach of the duty of good faith and fair dealing. *Id.* at 254. Accordingly, in this case, at this early stage of the litigation, mindful of the standard applicable to the instant motion to dismiss, LNA's motion must be denied.

LNA's reference to *Slack v. Suburban Propane Partners, L.P.*, 2010 WL 3810870 (D.N.J., Sept. 21, 2010) *("Slack I")*, where the District Court dismissed the plaintiff's initial pleading of a claim of the breach of good faith and fair dealing, is inapposite to the case at bar. That claim was predicated on conclusory allegations, unsupported by any "factual content" from which the Court could draw the inference of a "bad motive" attributable to the defendants exercising their authority to set pricing within their discretion. *Slack I*, 2010 WL 3810870 at *7. Following the dismissal of such claim without prejudice, the plaintiff filed an amended complaint which included specific allegations summarily describing a false pricing practice of granting price reductions after-the-fact in response to customer complaints. *Slack v. Suburban Propane Partners, L.P.*, 2010 WL 5392845 at *10 (D.N.J., Dec. 22, 2010) *("Slack II")*:

> According to the Second Amended Complaint, "Suburban Propane engaged in a pattern and practice of false pricing, whereby it knowingly overcharged customers an inflated price that was commercially unreasonable, later offered to reduce the price as a so-called "courtesy" if customers noticed the overcharge, and pocketed the overcharge for its remaining customers."

This amended pleading was found to have adequately stated a claim, with the court concluding: "At the very least, Plaintiff' allegations concerning the 'after-the-fact price

14

reductions' could be construed as suggestive that Defendants have exercised their discretionary authority over its pricing arrangements in an arbitrary or unreasonable matter." *Slack II,* 2010 WL 5392845 at *11, citing *Joc,* 2010 WL 1380750, at *6 (denying motion to dismiss claim for breach of duty of good faith and fair dealing where plaintiffs specifically alleged defendant exercised its discretionary pricing authority arbitrarily, unreasonably, or capriciously, connoting bad faith).

In this case, Turnersville alleges that in this open price term franchise agreement, "LNA failed to set the price for fuel fairly or in good faith and that LNA's fuel prices were arbitrary and commercially unreasonable." Counterclaim ¶13. Turnersville more specifically alleges that the wholesale prices set by LNA were on par with or even exceed the retail prices that Turnersville's competitors charged: "LNA often set its wholesale price close to, equal to, or even above the price being charged at retail by Turnersville's competitors." Counterclaim ¶14. By setting unreasonably high wholesale prices, LNA deprived Turnersville of its ability to operate at a reasonable profit: "Turnersville reasonably expected that LNA would set its fuel prices such that Turnersville could operate at a reasonable profit." Counterclaim ¶15. "As a direct and proximate result of LNA's pricing practices, Turnersville regularly operated at a loss, depriving Turnersville of its reasonable expectations and the benefit of its bargain with LNA. Counterclaim ¶16. As was the case in *Wilson*, LNA's pricing "rendered it impossible" for Turnersville to "meet [its] operating expenses and perform profitably". Accordingly, Turnersville's claims for breach of the duty of good faith and fair dealing should not be dismissed, and LNA should be required to provide "an explanation for its pricing that is not arbitrary, capricious, or unreasonable." *Wilson,* 168 N.J. at 254.

## CONCLUSION

For the foregoing reasons, Defendant-Counterclaimant Turnersville Petroleum Inc. respectfully requests that Lukoil North America LLC's motion to dismiss Turnersville's counterclaims be denied in its entirety, or in the alternative, that leave to amend any Counterclaims as may be dismissed by the Court be granted.

Respectfully submitted,

BROWN MOSKOWITZ & KALLEN, P.C.
Attorneys for Defendants-Counterclaimants
Turnersville Petroleum, Inc. and Surinder Bindra

By:   /s/ Lora L. Fong
      LORA L. FONG

By:   /s/ Shalom D. Stone
      SHALOM D. STONE

Dated: November 17, 2014