UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| LUKOIL NORTH AMERICA LLC, successor in interest to Getty Petroleum Marketing, Inc.,<br><br>　　　　　Plaintiff,<br><br>　　　v.<br><br>TURNERSVILLE PETROLEUM INC., successor to N.B. Oil Inc. by assignment, and SURINDER BINDRA,<br><br>　　　　　Defendants. | Case No.: 1:14-cv-03810-RMB-AMD<br><br>Motion Date:  December 1, 2014 |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION
OF PLAINTIFF, LUKOIL NORTH AMERICA LLC, TO DISMISS
<u>COUNTERCLAIMS OF DEFENDANT TURNERSVILLE PETROLEUM INC.</u>**

**TABLE OF CONTENTS**

I.    PRELIMINARY STATEMENT ...................................................................................1

II.    ARGUMENT .................................................................................................................2

        A.    Turnersville's State Law Counterclaims Are Intimately Intertwined With LNA's Grounds For Termination Of The Franchise Agreement .............................2

        B.    Turnersville's Counterclaims Are Naked Assertions Devoid Of Necessary Factual Enhancement. ...............................................................................................3

III.    CONCLUSION ..............................................................................................................5

## **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

Ashcroft v. Iqbal,
　556 U.S. 662 (2009) ...............................................................................................1, 2

Callahan, et al. v. Sunoco, Inc.,
　2005 WL 994615 (E.D. Pa., April 28, 2005) ..............................................................3

Casserlie v. Shell Oil Co.,
　121 Ohio St.3d 55 (2009) ............................................................................................3

Eastern Air Lines, Inc. v. McDonnell Douglas Corp.,
　532 F.2d 957 (5th Cir.1976) ........................................................................................4

Joc, Inc. v. Exxonmobil Oil Corp.,
　No. 08–5344, 2010 WL 1380750 (D.N.J. April 1, 2010) ............................................4

Kehm Oil Co. v. Texaco, Inc.,
　537 F.3d 290 (3d Cir. 2008) ........................................................................................2

Slack v. Suburban Propane Partners, L.P.,
　No. 10-2548, 2010 WL 5392845 (D.N.J. Dec. 22, 2010) .................................3, 4, 5

T.A.M., Inc. v. Gulf Oil Corporation,
　553 F.Supp. 499 (E.D. Pa. 1982) .................................................................................3

Wilson v. Amerada Hess Corp.,
　773 A.2d 1121 (N.J. 2001) ..........................................................................................3

Yocham v. Novartis Pharm. Corp.,
　736 F. Supp. 2d 875, 890 (D.N.J. 2010) .....................................................................4

**STATUTES**

N.J.S.A. 12A:2–305 (2) ........................................................................................................4

U.C.C. 2–607 ...........................................................................................................3, 4, 5

I.  **PRELIMINARY STATEMENT**

Far from "overreaching," LNA's[1] motion to dismiss properly addresses Turnersville's preempted state law claims—claims that are also devoid of the facts necessary to maintain Turnersville's causes of action.  First, Turnersville's claims, at their core, involve an allegation that LNA unreasonably set prices such that Turnersville was unable to perform under the PMPA Franchise Agreement's volume of sales requirements.  This failure to meet minimum sales requirements is one of the reasons why LNA decided to terminate the PMPA Franchise Agreement.  Thus, LNA's grounds for termination of the PMPA Franchise Agreement are "intimately intertwined" with Turnersville's claims that LNA unreasonably set prices causing its failure to meet minimum sales requirements.

Second, under Iqbal, Turnersville is not permitted to make bare assertions and still maintain its claims.  Turnersville's only "facts" to back up its claim that LNA unfairly or unreasonably set prices are: (a) LNA's "wholesale prices were close to, equal to or even above the retail prices being charged by Turnersville's competitors" and (b) Turnersville expected to, and failed to, operate at a profit.  The PMPA Franchise Agreement contained an open price term, and Turnersville's assertion that LNA's price would sometimes fall near, at, or above competitors' prices does nothing to explain how LNA was acting unfairly.  What's more, Turnersville does nothing to explain how its failure to make a profit resulted from any bad motive or intention on LNA's part.  Finally, Turnersville has not met the notice requirement under the U.C.C., having failed to allege that it notified LNA that Turnersville viewed the "unfair and unreasonable" prices as rising to the level of a breach of the PMPA Franchise Agreement.

---

[1] Terms in LNA's moving brief dated October 16, 2014, have the same meaning in this brief.

II.    **ARGUMENT**

    A.    **Turnersville's State Law Counterclaims Are Intimately Intertwined With LNA's Grounds For Termination Of The Franchise Agreement.**

As Turnersville acknowledges in its brief, the Third Circuit has established that "when the state law claims are 'intimately intertwined' with the termination or nonrenewal of a franchise, they are preempted by the PMPA." Turnersville's Memorandum of Law in Opposition at 5 (quoting Kehm Oil Company v. Texaco, Inc., 537 F.3d 290, 299 (3d Cir. 2008)). Turnersville also notes that the court in Kehm remanded the franchisee's claim for breach of contract to determine if it was intimately intertwined with the termination or non-renewal of the franchise relationship. Id.[2]

What does not add up is Turnersville's contention that its unreasonable pricing claims "without question have nothing to do with LNA's termination . . . of the franchise agreement." Id. As stated in LNA's moving papers, Turnersville's failure to meet minimum sales volumes is certainly one of LNA's grounds for termination of the PMPA Franchise Agreement. And, as laid out in Turnersville's counterclaims and facts section of its brief, Turnersville claims that it was LNA's unfair pricing that caused it to fail to meet the minimum sales requirements under the PMPA Franchise Agreement. Thus, inherent in Turnersville's claims that LNA's unfair pricing resulted in its failure to meet sales requirements, is a complaint about LNA's grounds for termination.

---

[2] Ultimately, the issue was not determined on remand as the parties entered a Stipulation of Dismissal of Action with Prejudice.

**B. Turnersville's Counterclaims Are Naked Assertions Devoid Of Necessary Factual Enhancement.**

There can be no doubt that Turnersville's Counterclaims are "labels and conclusions" and "naked assertions devoid of further factual enhancement" and should therefore be dismissed. Slack v. Suburban Propane Partners, L.P., 2010 WL 5392845, *10 (D. N.J. Dec. 22, 2010) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).

Turnersville does not allege how LNA breached the Franchise Agreement, violated the U.C.C. or violated the implied duty of good faith and fair dealing, although it is required to do so to maintain its claims. Rather, Turnersville only states that "LNA failed to set the price for fuel fairly or in good faith [and that] LNA's fuel prices were arbitrary and commercially unreasonable." See Answer at ¶ 13. Turnersville's conclusion that LNA's prices, under an open price term, were "unfair" and "unreasonable" is not a factual assertion. Its only support for its conclusion is that LNA's price would sometimes fall near, at, or above competitors' prices. This "fact" does nothing to explain how LNA was acting unfairly. And Turnersville's other "fact"—that it wasn't making a profit—is not on its own sufficient to support a claim of breach when an open price term is involved. See Casserlie v. Shell Oil Co., 121 Ohio St.3d 55, 61 (2009) (holding that Shell Oil was not required to sell gasoline that is "profitable for buyers"). See also, Slack, 2010 WL 5392845 (quoting Wilson v. Amerada Hess Corp., 773 A.2d 1121 (N.J. 2001) ("[w]ithout bad motive or intention, discretionary decisions that happen to result in economic disadvantage to the other party are of no legal significance.")); Callahan, et al. v. Sunoco, Inc., 2005 WL 994615, at *5 (E.D. Pa., April 28, 2005) (quoting same); T.A.M., Inc. v. Gulf Oil Corporation, 553 F. Supp. 499, 509 (E.D. Pa. 1982) ("It is safe therefore, to conclude that the open price term, in addition to being necessary to accommodate a fluctuating market, was also acceded to by Plaintiffs").

3

Finally, even if Turnersville alleged facts to support its U.C.C. claim, which it did not, Turnersville has not properly alleged that it complied with the notice requirement of Section 2–607 of the U.C.C. (or N.J.S.A. 12A:2–607), which bars Turnersville from bringing a claim under Section 2–305. As explained in LNA's moving papers, and supported by case law[3], generalized complaints about the price, with nothing more, do not amount to notice as required by 2-607. See Slack, 2010 WL 5392845, *5 (dismissing claim pursuant to N.J.S.A. 12A:2–305(2) where "Plaintiffs do not allege that they notified Suburban Propane that they believed their Customer Service Agreements had been breached as a result of the unreasonably high prices charged in connection therewith."); Joc, Inc. v. Exxonmobil Oil Corp., 2010 WL 1380750, at *5 (D. N.J. Apr. 1, 2010) (dismissing claim pursuant to N.J.S.A. 12A:2–305(2) where "Plaintiffs have not alleged in the Complaint that they notified Exxon that they believed their PMPA Agreements had been breached as a result of the high prices or resulting financial difficulties."); Eastern Air Lines, Inc. v. McDonnell Douglas Corp., 532 F.2d 957, 976 (5th Cir.1976) ("[T]he fact that the Code has eliminated the technical rigors of the notice requirement under the Uniform Sales Act does not require the conclusion that any expression of discontent by a buyer always satisfies section 2–607. . . . Thus, while the buyer must inform the seller that the transaction is 'still troublesome,' Comment 4 also requires that the notification 'be such as informs the seller that

---

[3] Although the decisions of other judges in this district are not "controlling", they interpret N.J.S.A. 12A:2-305(2) and should be given more weight than Turnersville's cited authority, Yocham, a case from this district interpreting the Texas U.C.C. In addition, the notice alleged in Yocham was much more detailed: "Plaintiff identified the specific way in which Lamisil allegedly harmed her, sent over voluminous documentation of her injury, and explicitly threatened suit over the allegedly defective nature of the product." Yocham v. Novartis Pharm. Corp., 736 F. Supp. 2d 875, 890 (D.N.J. 2010).

the transaction is claimed to involve a breach, and thus opens the way for normal settlement through negotiation.'"").

Here, Turnersville has not alleged that it notified LNA that it believed the Franchise Agreement had been breached as a result of the "unfair and unreasonable" price setting. Instead, Turnersville merely asserts that it "regularly, repeatedly, and within a reasonable time notified LNA that LNA's fuel prices were unfair and unreasonable, but LNA failed and refused to changes its ways." Answer at ¶ 18. Just as the court in Slack dismissed the claim, this Court should dismiss Turnersville's Counterclaim for violation of the U.C.C. because its generalized complaints to LNA did not rise to the level of notification as required by N.J.S.A. 12A:2–607.[4]

### III. CONCLUSION

For all of the foregoing reasons, Plaintiff, LUKOIL North America LLC, respectfully requests this Court dismiss the Counterclaims of Defendant, Turnersville Petroleum, Inc., for failure to state a plausible claim for relief for an alleged breach of contract (Count I), an alleged violation of the U.C.C. (Count II), an alleged breach of the duty of good faith and fair dealing (Count III) and an alleged violation of the New Jersey Franchise Practices Act (Count IV).

Respectfully submitted,

/s/ Brett A. Berman
BRETT A. BERMAN (No. 204843)
LAUREN T. WINCHESTER (313644)
FOX ROTHSCHILD LLP
2000 Market Street, 20th Floor
Philadelphia, PA 19103

---

[4] Turnersville's note that the court in Slack II allowed the amended pleading to go forward is of no import here. The amended pleading in Slack II alleged in more detail that the false pricing practice was to grant price reductions after-the-fact in response to customer complaints. Turnersville's Counterclaims do not give any explanation as to how LNA's pricing was unfair or improper.

5

        (215) 299-2000
        (215) 299-2150 (facsimile)
        bberman@foxrothschild.com
        lwinchester@foxrothschild.com

*Attorneys for Plaintiff,*
*LUKOIL North America LLC*

Dated:  November 24, 2014

## CERTIFICATE OF SERVICE

I hereby certify that on this date, a true and correct copy of the foregoing Reply Memorandum in Support of Plaintiff's Motion to Dismiss has been served through the Court's electronic filing system and first class mail upon the following:

>Shalom D. Stone, Esq.
>BROWN MOSKOWITZ & KALLEN, P.C.
>180 River Road
>Summit, NJ 07901
>
>*Attorney for Defendants*
>*Turnersville Petroleum, Inc. and Surinder Bindra*

>/s/ Lauren T. Winchester
>LAUREN T. WINCHESTER

Dated: November 24, 2014