<u>NOT FOR PUBLICATION</u>                                  [Docket No. 22]

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

LUKOIL NORTH AMERICA LLC,
successor in interest to Getty
Petroleum Marketing, Inc.,

         Plaintiff,

    v.

TURNERSVILLE PETROLEUM INC.,
successor to N.B. Oil Inc., by
assignment, and SURINDER
BINDRA,

        Defendants.

Civil No. 14-3810 (RMB/AMD)

**OPINION**

APPEARANCES:

Brett Berman
Lauren Winchester
Barry Muller
Christopher Kinkade
Fox Rothschild LLP
2000 Market Street, 20th Floor
Philadelphia, PA 19103
    Attorneys for Plaintiff

Shalom Stone
Brown Moskowitz & Kallen, P.C.,
180 River Road 07901
Summit, New Jersey
    Attorneys for Defendants

**BUMB**, United States District Judge:

This matter comes before the Court upon a Motion by Plaintiff, Lukoil North America LLC ("LNA" or "Plaintiff"), to dismiss all counterclaims filed by Defendant, Turnersville Petroleum Inc., ("Turnersville" or "Defendant") pursuant to Federal Rule of Civil Procedure 12(b)(6).  For the reasons set forth below, Defendants' motion will be denied in part and granted in part.

## I.   Factual Background

LNA, through its predecessor in interest, Getty Petroleum Marketing Inc., and Turnersville, successor to N.B. Oil Inc. by assignment, were parties to a Petroleum Marketing Practices Act ("PMPA") Franchise Agreement effective June 1, 2005, and related additional agreements (together referred to as the "Franchise Agreement").  Compl. at ¶ 15.  LNA has the exclusive right to license and use in the United States the trademark "LUKOIL" and various related trade names, trademarks and services marks, logos and derivations thereof.  Id. at ¶ 9.  Citing default, LNA terminated the franchise relationship with Turnersville effective on November 26, 2013.  Id. at ¶ 20.

Counts One, Two and Three of Plaintiff's Complaint allege that Defendant has continued to market and sell oil and gas through the unauthorized use of LUKOIL marks in violation of

various sections of the Lanham Act since the termination of the Franchise Agreement. Id. at ¶¶ 24-45. In Count Four of the Complaint, LNA alleges a Breach of Contract claim against Turnersville, stating that Turnersville breached the terms of the Franchise Agreement by, inter alia:

- failing to use good faith and best efforts to maximize the sale of products;
- failing to purchase motor fuel from LNA and failing to maintain an adequate inventory of motor fuel; and,
- failing to pay LNA in a timely manner.

Complaint at ¶ 48.

In its Answer to the Complaint, Turnersville asserts several counterclaims against LNA. Turnersville alleges that the price charged by LNA to Turnersville for motor fuel is an open price term governed by the Uniform Commercial Code, codified in New Jersey at N.J.S.A. 12A:-305, which provides that "[a] price to be fixed by the seller or by the buyer means a price for him to fix in good faith." Docket No. 12 at ¶ 11. Turnersville further alleges that LNA failed to set the price for fuel in good faith and that "LNA often set[s] its wholesale price close to, equal to, or even above the price being charged at retail by Turnersville's competitors." Id. at ¶¶ 13-14. Turnersville avers that it "reasonably expected that LNA would set its fuel prices such that Turnersville could operate at a reasonable

profit." Id. at ¶ 15.  In sum, Turnersville alleges that because

of LNA's pricing practices, it operated at a loss, suffered

substantial damages, and was "unable to continue purchasing

Lukoil-branded fuel, and was unable to continue as a Lukoil

franchisee." Id. at 17.  Based on these allegations,

Turnersville has asserted four counterclaims against LNA:

- Count I: breach of contract;
- Count II: violation of the Uniform Commercial Code;
- Count III: breach of duty of good faith and fair dealing; and
- Count IV: violations of the New Jersey Franchise Practices Act ("NJFPA").

Id. at ¶¶ 19-25.  In support of the NJFPA claims, Turnersville

claims that

> LNA's fuel prices were arbitrary and unreasonable.  As a
> result of LNA's arbitrary and unreasonable fuel prices,
> Turnersville's retail prices were higher than its
> competitors' retail prices, which in turn caused significant
> declines in Turnersville's volume of fuel sales.  As a
> result of LNA's arbitrary and unreasonable fuel prices and
> the resulting significant decline in Turnersville's sales
> volume, (a) Turnersville could not achieve the unrealistic
> minimum sales volumes required by the Franchise Agreements,
> and (b) the unrealistic minimum sales volumes imposed by LNA
> on Turnersville were "unreasonable standards of performance"
> within the meaning of the New Jersey Franchise Practices
> Act.

Id. at ¶¶ 32-33.

LNA has moved to dismiss Plaintiff's counterclaims I, II,

III and IV, arguing that all claims are preempted by the PMPA

and, in the alternative, arguing that Turnersville has failed to state a claim under Counts I, II and III.

## II.  Standard

When deciding a motion to dismiss counterclaims under Federal Rule of Civil Procedure 12(b)(6), the court must limit its review to the face of the counterclaims.  Barefoot Architect, Inc. v. Bunge, 632 F.3d 822, 835 (3d Cir. 2011).  In other words, a [counterclaim] is sufficient if it contains enough factual matter, accepted as true, to "state a claim to relief that is plausible on its face."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, (2007).  However, legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Iqbal, 556 U.S. at 678.

When considering a Rule 12(b)(6) motion, a district court should conduct a three-part analysis.  See Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011).  "First, the court must 'take note of the elements a plaintiff must plead to state a claim.'"  Id. (quoting Iqbal, 556 U.S. at 675 (2009)).  Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth."  Id. at 680.  Third, "whe[n] there are well-pleaded factual allegations,

a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." <u>Id.</u>

### III. Analysis

LNA contends that all of Turnersville counterclaims must be dismissed because they relate to LNA's termination of the Franchise Agreement and are thus preempted by the PMPA, 15 U.S.C. §§ 2801-2841.  In the alternative, LNA argues that even if not preempted, Turnersville's claims fail under the Fed. R. Civ. P. 12(b)(6) standard.  This Court finds that Turnersville's counterclaims are not preempted by the PMPA and that the factual allegations are sufficient at this juncture as to Count III, but not as to Counts I and II for the reasons set forth below. Turnersville will, however, be granted leave to cure its deficient pleadings.

A. <u>PMPA Preemption</u>

In passing the PMPA, Congress noted the need for a "single, uniform set of rules governing the grounds for termination and non-renewal of motor fuel marketing franchises. . . ." S. Rep. No. 731, 95th Cong., 2 Sess., 19.  In furtherance of this need for uniformity, the PMPA specifically addresses the issue of preemption:

> To the extent that any provision of this title [15 U.S.C.S. §§ 2801 et seq.] applies to the termination (or the furnishing of notification with respect thereto) of any franchise, or to the nonrenewal (or the furnishing of notification with respect thereto) of any franchise relationship, no State or any political subdivision thereof may adopt, enforce, or continue in effect any provision of any law or regulation (including any remedy or penalty applicable to any violation thereof) with respect to termination (or the furnishing of notification with respect thereto) of any such franchise or to the nonrenewal (or the furnishing of notification with respect thereto) of any such franchise relationship unless such provision of such law or regulation is the same as the applicable provision of this title [15 U.S.C.S. §§ 2801 et seq.].

15 U.S.C. § 2806(a)(1). The Third Circuit, in interpreting this provision, has stated that "the 'PMPA only preempts state laws that limit the permissible substantive reasons that a petroleum franchisor can terminate a franchisee' because '[t]he goal of the framers of the PMPA was to create a uniform system of franchise termination, not a uniform system of contract law.'" Kehm Oil Co. v. Texaco, Inc., 537 F.3d 290, 298 (3d Cir. 2008)(quoting O'Shea, v. Amoco Oil Co., 886 F. 2d 584, 592-93 (3d Cir. 1989)).[1]

---

[1] In contrast, where a broad preemptive scope is sought, Congress effectuates that aim via broad preemptive language. See Civil Docket No. 14-1465, Millman v. Medtronic, Docket Entry No. 20 (D.N.J. Feb. 24, 2015)(discussing the broad preemptive sweep of the Medical Devices Amendments, 21 U.S.C. §360c et seq., via Congress' use of language making clear that no sate may impose "any requirement" relating to the safety or effectiveness of a medical device. . . ." Id. at * 7.

In O'Shea, 886 F. 2d at 592, the Court emphasized the narrow scope of PMPA preemption: "the PMPA preempts only those state laws that regulate 'the grounds for, procedures for, and notification requirements with respect to termination,' to the extent that such laws are not the same as the PMPA." Id. 886 F.2d at 592 (quoting Bellmore v. Mobil Oil Corp., 783 F.2d 300, 304 (2d Cir. 1986))(emphasis added). In light of the narrow scope of preemption, the Third Circuit found that the plaintiff's state law claim for fraudulent inducement was not preempted because the claim did not involve the procedures for or notification requirements with respect to termination. The Court went on to add that "[t]here is no reference to any legislative intent to preempt the common law of contract, even to the extent that it may become involved in a PMPA action." Id. at 593.

Following O'Shea, the Third Circuit adopted the "intimately intertwined test" in Kehm, noting that the Eleventh Circuit in Shukla v. BP Exploration & Oil, Inc., 115 F.3d 849 (11th Cir. 1997), held that state law claims that were intimately intertwined with the termination or nonrenewal of a franchise are preempted. There is, however, a paucity of case law in the Third Circuit with respect to the actual application of the "intimately intertwined" test. In Kehm, the Third Circuit remanded the

8

plaintiff's claims for breach of contract, promissory estoppel, civil conspiracy, and interference with contract so that the District Court could determine whether those claims were so intimately intertwined with the nonrenewal of the franchise relationship such that they were preempted by the PMPA.  The District Court never made a determination, however, because the parties stipulated to dismiss the matter.  See Docket No. 06-785, Entry No. 75 (W.D. Pa. 2009).

After Kehm, there is only one other case within this Circuit that this Court has located discussing PMPA preemption and the intimately intertwined test: MacWilliams v. BP Products North Am., No. 09-1844, 2010 U.S. Dist. LEXIS 8967 (D.N.J. Feb. 3, 2010).  In MacWilliams, the plaintiff asserted a state law breach of contract claim allegation that "[a]s a result of [BP's] material breaches and termination of the Agreements, the plaintiff has suffered damages. . . ."  Id. at *20.  Notably, there was no actual termination alleged in that case, rather the plaintiff was propounding a constructive termination claim.  In his preemption analysis, Judge Kugler found:

> The Complaint clearly alleges that BP has materially
> breached its contractual agreements. This allegation
> articulates a breach of contract. Thus, the allegation that
> these material breaches occurred in the context of what
> Plaintiff considers to be a constructive termination is of

little consequence. This is especially so in light of the
Court's conclusion that the Complaint states no such claim.
Congress intended the PMPA "to create a uniform system of
franchise termination, not a uniform system of contract
law." O'Shea, 886 F.2d at 593. The Senate Report on the PMPA
does not refer to any congressional intent to preempt the
common law of contracts, "even to the extent that it may
become involved in a PMPA action." Id. Thus, the Court does
not agree with BP that the PMPA preempts Plaintiff's
contract claim.

Id. at 21-22.

        In support of its preemption argument, LNA argues that,

pursuant to Third Circuit law, where claims are intimately

intertwined with the termination or nonrenewal of franchise, they

are preempted by the PMPA.  LNA Br. at 4 (citing Kehm Oil Co.,

537 F.3d at 299).  Here, LNA contends that all four of

Turnersville's counterclaims are intimately intertwined with the

grounds for LNA's termination of the PMPA Franchise Agreement,

largely because Turnersville failed to maximize the sale of

products and purchase motor fuel from LNA as required by the

Franchise Agreement.  See e.g., Counterclaim at ¶ 17 ("As a

direct and proximate result of LNA's pricing practices,

Turnersville suffered substantial damages, was unable to continue

purchasing Lukoil-branded fuel, and was unable to continue as a

Lukoil franchisee.").  LNA states that the very genesis of

Turnersville's counterclaims is that LNA allegedly set prices

10

unreasonably, such that Turnersville was unable to perform under the Franchise Agreement; this, in turn, caused the related inability to meet minimum sales—a basis for LNA's termination of that Agreement.  Thus, LNA contends that the appropriate vehicle for such claims is the PMPA, and these counterclaims cannot be recharacterized as state law claims in the instant matter.

In response, Turnersville argues that its counterclaims "have nothing to do with the grounds invoked by LNA, or the procedure it followed in terminating the franchise agreement with Turnersville – and have everything to do with the lack of good faith on LNA's part in its performance of the Franchise Agreement and with its breach thereof."  Turnersville Opp. Br. at 1. Because the counterclaims relate to the performance of the Agreement and not its termination or nonrenewal, Turnersville argues that said claims are outside the narrow preemptive scope of the PMPA.  In support of this contention, Turnersville cites O'Shea, 886 F. 2d at 592, for the proposition that "the PMPA only preempts state laws that regulate the circumstances relating to when a franchisor terminates or non-renews a franchisee." Turnersville Br. at 4.

With respect to the decision in Kehm Oil Co., also cited by LNA, Turnersville addresses the intimately intertwined test,

11

noting that the cases cited by the Third Circuit in Kehm, in relation to the adoption of that test, "are within the narrow focus of termination or non-renewal of a franchise relationship." Turnersville Br. at 5.  For example in Simmons v. Mobil Oil Corp., 29 F.3d 505 (9th Cir. 1993), the Court held that a franchisee's claim for breach of duty of good faith and fair dealing was preempted by the PMPA, but that claim was intimately intertwined with the franchisor's actions in the renewal of the franchise agreement.  Turnersville avers that its counterclaims, by contrast, relate to LNA's performance under the Agreement – i.e., setting fuel prices arbitrarily and even above the price set by Turnersville's competitors.

Outside of the Third Circuit, other Courts have applied the intimately intertwined test in a manner that reflects the narrow scope of PMPA preemption.  For example, in a case with factual similarity to the instant matter, Citgo Petroleum Corp., v. Ranger Enterprises, Inc., 573 F. Supp. 2d 1114 (W.D. Wis. 2008), Citgo, the franchisor, sued defendant franchisee, Ranger Enterprises, for breach of contract, arguing that Ranger's de-branding and failure to buy minimum fuel requirements constituted a breach of the parties' franchise agreement.  Ranger responded with counterclaims including, inter alia, wrongful nonrenewal of

12

the franchise agreement, brand damage, and failure to supply fuel in accordance with the franchise agreement during 2005.  Because of the delivery failures, Ranger's business nearly failed, and Ranger questioned whether it could remain a Citgo franchisee.  In early 2006, Citgo proposed new franchise agreements as the prior agreements were set to expire in July 2006.  The proposed terms were commercially unreasonable and Ranger advised Citgo that it would not renew the agreement.

Citgo moved to dismiss Ranger's counterclaims arguing, in relevant part, that the alleged failure to meet contractual fuel supply obligations in 2005 was preempted by the PMPA.  In finding that the counterclaim was not preempted, the Court held that it was not intimately intertwined with the non-renewal claim: "Instead, it seeks independent damages for breach of the contract prior to non-renewal." Id. at 1123.

Similarly, in the instant matter, Turnersville seeks independent damages for breach of contract, violation of the Uniform Commercial Code, breach of duty of good faith and fair dealing, and violations of the NJFPA prior to LNA's termination of the franchisee for events that took place during the life of the Franchise Agreement.  In light of the guidance from this and other Circuits, this Court finds that Turnersville's

13

counterclaims are not preempted by the PMPA.  The mere fact that
LNA chose to terminate the franchise should not deprive
Turnersville of the ability to bring claims for a breach of the
Franchise Agreement.  See O'Shea, 886 F.2d at 593 ("[t]here is
simply no merit to O'Shea's contention that 'once a termination
notice has been served, the Federal courts acquire [exclusive]
jurisdiction over [all aspects of] the controversy.'").  The fact
that LNA has claimed that it terminated the Franchise Agreement
because Turnersville breached the agreement by failing to use
good faith and best efforts to maximize the sale of products is
not dispositive.  Again, as stated in O'Shea, "[t]here is no
reference to any legislative intent to preempt the general common
law of contract, even to the extent that it may become involved
in a PMPA action." 886 F.2d at 593.  Thus, the fact the Franchise
Agreement was terminated does not necessarily render all
potential counterclaims by Turnersville preempted by the PMPA.
See Seckler v. Star Enterprise, 124 F.3d 1399, 1406 (11th Cir.
1997) ("The PMPA was not written to allow petroleum franchisors
to hide behind the preemption provision to avoid tort, contract
or fraud suits brought by franchisees with regard to actions that
do not constitute termination or non-renewal of a franchise or
notification of such action."); Simmons v. Mobil Oil Corp., 29

14

F.3d 505, 512 (9th Cir. 1994)("The fact that Simmons himself eventually terminated the franchise does not preclude him from bringing a claim based on Mobil's alleged breach of the covenant of good faith."). For the above reasons, this Court finds that Turnersville's claims are not preempted by the PMPA.

   B. <u>Failure to State a Claim</u>

   Even if Turnersville's claims are not preempted, LNA argues that counterclaims I (Breach of Contract), II (Violation of the U.C.C.) and III (Breach of Duty of Good Faith and Fair Dealing), are conclusory assertions devoid of the necessary factual enhancement sufficient to survive under Federal Rule of Civil Procedure 12(b)(6). The Court will address each of Turnersville's counterclaims in turn.

      i. Breach of Contract

   "To prevail on a breach of contract claim under New Jersey law, a plaintiff must establish three elements: (1) the existence of a valid contract between the parties; (2) failure of the defendant to perform its obligations under the contract; and (3) a causal relationship between the breach and the plaintiff's alleged damages." <u>Sheet Metal Workers Int'l Ass'n Local Union No. 27 v. E.P. Donnelly</u>, 737 F.3d 879, 900 (3d Cir. 2013); <u>Sapta</u>

<u>Global, Inc. v. Cilicorp, LLC</u>, No. 13-3698, 2015 U.S. Dist. LEXIS 40186 at *5-6 (D.N.J. Mar. 20, 2015)(citing <u>Murphy v. Implicito</u>, 392 N.J. Super. 245, 920 A.2d 678, 689 (N.J. App. Div. 2007). Other Courts in this Circuit have required a fourth element: that the party asserting the claim for breach of contract allege that it was performing its obligations under the contract.  <u>See</u> <u>Pauly v. Houlihan's Restaurants, Inc.</u>, 2012 U.S. Dist. LEXIS 180215, at *13-14 (D.N.J. Dec. 20, 2012)(stating that there are four elements to a breach of contract claim under New Jersey law, including that "plaintiff performed its obligations).[2]

LNA argues that Turnersville fails to allege exactly how LNA breached the Franchise Agreement and that the assertion that LNA failed to set prices fairly or in good faith is an "utterly vague and conclusory assertion."  Def.'s Br. at 6-7.  LNA also argues that Turnersville does not even claim to have performed its obligations under the contract as required.

In response, Turnersville contends that it has adequately pled the relevant elements. More specifically that,

- LNA and Turnersville were parties to the PMPA Franchise Agreement.  Counterclaim ¶ 6;
- The fuel price was subject to the U.C.C. requirements (<u>Id.</u> at ¶ 11), and LNA failed to set prices fairly or

---

[2] Citied by Turnersville to this Court.

16

in good faith such that prices were arbitrary and commercially unreasonable. <u>Id.</u> at ¶ 13;

- LNA set its prices close to or equal to or above that being charged by Turnersville's retail competitors. <u>Id.</u> at ¶ 14; and,
- As a result of these pricing practices, Turnersville operated at a loss and suffered substantial damages. <u>Id.</u> at ¶¶ 16-17.

Turnersville, however, makes no argument with regard to whether it has alleged that it was adequately performing its obligations under the contract.

Based on the above, this Court finds that Turnersville has adequately pled a claim for breach of contract with respect to the issue of breach.  It is clear that the factual allegation supporting the alleged breach is that LNA set the prices close, equal to or above competitors' prices and, in doing so, failed to set the prices fairly or in good faith. <u>See</u> supra at 16. Because, however, there are no allegations discussing Turnersville's performance of its obligations under the contract, this Court finds that a needed element of the claim for breach is missing.  As such, LNA's motion to dismiss Count I shall be granted.  Plaintiff will, however, have 21 days to cure the pleading deficiency identified.

   ii.  Uniform Commercial Code

17

LNA argues that Count II is devoid of factual allegations sufficient to state a cause of action for a violation of the U.C.C.  New Jersey's codification of Section 2-305 of the UCC, N.J.S.A. 12A:2-305, provides, in relevant part,

(1)  The parties if they so intend can conclude a contract for sale even though the price is not settled. In such a case the price is a reasonable price at the time for delivery if
      (a) nothing is said as to price; or
      (b) the price is left to be agreed by the parties and they fail to agree; or
      (c) the price is to be fixed in terms of some agreed market or other standard as set or recorded by a third person or agency and it is not so set or recorded.
(2) A price to be fixed by the seller or by the buyer means a price for him to fix in good faith.

LNA contends that Turnersville's allegation that it failed to set the price for fuel in good faith is without factual support, and, even assuming LNA had made such allegations, Turnersville cannot show that LNA had an obligation to set prices in a way to guarantee that Turnersville would make a profit.  LNA also argues that Turnersville has failed to allege that it complied with the notice requirement of Section 2-607 of the U.C.C., or N.J.S.A. 12A:2-607(3), which provides, in relevant part that, "[w]here a tender has been accepted (a) the buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy."

Comment 4 accompanying this provision sheds light on the contours of notice requirement:

> **The content of the notification need merely be sufficient to let the seller know that the transaction is still troublesome and must be watched.** There is no reason to require that the notification which saves the buyer's rights under this section must include a clear statement of all the objections that will be relied on by the buyer, as under the section covering statements of defects upon rejection (Section 2-605). Nor is there reason for requiring the notification to be a claim for damages or of any threatened litigation or other resort to a remedy. **The notification which saves the buyer's rights under this Article need only be such as informs the seller that the transaction is claimed to involve a breach, and thus opens the way for normal settlement through negotiation.**

N.J.S.A. 12A:2-607(3), Comment 4 (emphasis added).

LNA argues that generalized complaints about price, with nothing more, fail to suffice with respect to notice and that Turnersville's allegation that it "regularly, repeatedly and within a reasonable time notified LNA that LNA's fuel prices were unfair and unreasonable. . ." is insufficient. See Counterclaim at ¶ 18. More specifically, LNA faults Turnersville for not alleging "that it notified LNA that it believed the Franchise Agreement had been breached as a result of the 'unfair and unreasonable' price setting." Def.'s Reply Br. at 5.

In response, Turnersville points to its factual allegation that pricing was close to, equal to or above the price changed at

19

retail by its competitors as sufficient support for its allegation that the prices were arbitrary and unreasonable. Turnersville contends that these allegations of a lack of good faith combined with its allegation that such conduct by LNA deprived it of the expectations and benefits of its bargain with LNA suffice to sustain its U.C.C. claim.  Citing Wilson v. Amerada Hess Corp., 168 N.J. 236, 251 (2001), Turnersville argues that the New Jersey Supreme Court has held that where there is a contractual open price term, the party setting the price may not do so arbitrarily, unreasonably or capriciously with the objective of denying the other party from reaping the benefits of its bargain without a legitimate purpose.  The Wilson case, however, did not deal with a U.C.C. claim but rather a claim for breach of covenant of good faith and fair dealing (discussed further infra).  Finally, with respect to notice, Turnersville points to its allegation that it "regularly, repeatedly and within a reasonable time notified LNA that LNA's fuel prices were unfair and unreasonable but LNA failed and refused to change its ways," as sufficient pleading.  See Counterclaim at ¶ 18.

This Court finds that Turnersville's allegations suffice at this juncture with respect to a violation of N.J.S.A. 12A:2-305 because the allegations address the fact that prices were set at

or above the competitions.  See Pauly v. Houliahan, No. 12-0025,
2012 U.S. Dist. LEXIS 180215, *16-17 (D.N.J. Dec. 20,
2012)(finding that plaintiff adequately pled a claim under
N.J.S.A. 12A:2-305 where plaintiff alleged that defendant
restaurant charged a price for drinks in excess of the good faith
reasonable price even where plaintiff did not allege what the
price he paid for the drinks was versus what a reasonable price
would be).  With respect to notice, however, this Court agrees
with LNA, however, that Turnersville has failed to plead adequate
notice as required.  In JOC, Inc. v. ExxonMobil Oil Corp., No.
08-5344, 2010 U.S. Dist. LEXIS 32305 (D.N.J. Apr. 1, 2010), the
plaintiffs alleged that "[i]n early 2006 [plaintiffs] reached out
to [Exxon] and explained that due to the factors detailed in the
preceding paragraphs [which includes the discriminatory DTW[3]
prices], they were unable to cover their operating expenses or
achieve a profit."  Id. at *12-13.  The Court found this
allegation insufficient for notice, stating: "[g]eneralized
allegations that Exxon knew that these stations were struggling
financially do not suffice as an assertion that notice of a
breach of contract had been given.  Plaintiffs have not alleged

---

[3] Referring to wholesale gasoline prices.

in the Complaint that they notified Exxon that they believed their PMPA Agreements had been breached as a result of the high prices or resulting financial difficulties." Id. at *16.

Similarly in Slack v. Suburban Propane Partners, L.P., No. 10-2548, 2010 U.S. Dist. LEXIS 135530 (D.N.J. Dec. 22, 2010)("Slack II"), the Court found that plaintiffs did not give proper notice as required under N.J.S.A 12A:2-305. There, plaintiffs had alleged that they "and other customers have complained about Suburban Propane's unreasonable and unauthorized prices, but Suburban Propane often has failed to make proper and complete price adjustments." Id. at 14. The Court found this allegation to be a generalized complaint insufficient to meet the notice standard of the statute. While the Slack II court acknowledged that buyers enjoy a degree of flexibility with respect to the form of notice that must be given, it nevertheless found that the plaintiffs failed to adequately notify the defendant that they believed their service agreements had been breached because of the high prices. Id. at *15-16 (granting motion to dismiss N.J.S.A. 12A:2-305 claim for lack of adequate notice but allowing plaintiff the opportunity to cure the pleading via amendment).

22

Like the allegations deemed insufficient in <u>Slack II</u> and <u>JOC Inc.</u>, Turnersville has failed to allege anything more than a generalized complaint.  There is no indication, as currently pled, that LNA would have been aware that Turnersville considered the Franchise Agreement was being breached by LNA's conduct.  Moreover, mere notice that Turnersville was struggling financially as a result of the prices set by LNA is insufficient.  <u>See</u> <u>JOC, Inc.</u>, 2010 U.S. Dist. LEXIS 32305 at *16 (finding that allegations that Exxon knew that these stations were struggling financially do not suffice as an assertion that notice of a breach of contract had been given).  Because of the deficient notice, this Court will grant the motion to dismiss but, similar to <u>Slack II</u>, will provide Turnersville an opportunity to cure its allegations by way of amendment.

iii. Breach of Covenant of Good Faith and Fair Dealing

All contracts in New Jersey contain an implied covenant of good faith and fair dealing.  <u>Black Horse Lane Assoc., L.P. v. Dow Chem. Corp.</u>, 228 F.3d 275, 288 (3d Cir. 2000).  The covenant operates to ensure that "neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." <u>Sons of</u>

23

<u>Thunder, Inc. v. Borden, Inc.</u>, 690 A.2d 575, 587 (1997). "The party claiming a breach of the covenant of good faith and fair dealing 'must provide evidence sufficient to support a conclusion that the party alleged to have acted in bad faith has engaged in some conduct that denied the benefit of the bargain originally intended by the parties.'" <u>Brunswick Hills Racquet Club, Inc. v. Route 18 Shopping Ctr. Assocs.</u>, 182 N.J. 210, 225 (2005)(quoting 23 Williston on Contracts § 63:22, at 513-14 (Lord ed. 2002)); <u>Black Horse Lane Assoc., L.P.</u>, 228 F.3d at 288 ("A party to a contract breaches the covenant if it acts in bad faith or engages in some other form of inequitable conduct in the performance of a contractual obligation."). In addition "[t]he Supreme Court of New Jersey has clearly held that bad motive is 'essential' to a claim for breach of the implied covenant of good faith and fair dealing." <u>Vasaturo Bros. v. Alimenta Trading-USA</u>, No. 09-2049, 2011 U.S. Dist. LEXIS 80026, at *13-14 (D.N.J. July 22, 2011).

As stated in <u>Wilson v. Amerada Hess Corp.</u>, 168 N.J. 236 (2001), a case cited by both parties in support of their respective arguments,

> a party exercising its right to use discretion in setting price under a contract breaches the duty of good faith and fair dealing if that party exercises its discretionary authority arbitrarily, unreasonably, or capriciously, with

the objective of preventing the other party from receiving its reasonably expected fruits under the contract.

Id. at 251.  While the Wilson Court noted that, "an allegation of bad faith or unfair dealing should not be permitted to be advanced in the abstract and absent improper motive," it acknowledged that a plaintiff must be given a fair opportunity to show bad motive.  Id. at 252 (remanding for discovery on the issue of bad motive).

LNA argues that Turnersville's allegations with respect to a breach of duty of good faith and fair dealing are insufficient because Turnersville's averment that LNA set prices that "were arbitrary and commercially unreasonable" see Counterclaim at ¶ 13, are bare assertions devoid of factual support.

In response, Turnersville cites to its allegation that LNA set prices "close to, equal to or even above" the price being charged to Turnersville's competitors.  Id. at ¶ 14.  Citing Wilson, Turnersville states that LNA's pricing rendered it impossible for Turnersville to meet its expenses and perform profitably and, as in Wilson, LNA should be required to provide 'an explanation for its pricing that is not arbitrary, capricious, or unreasonable.'"  Turnersville Br. at 15 (quoting Wilson, 168 N.J. at 254).

Both parties have cited two cases to this Court on point that militate in favor of denying the motion to dismiss on this Count. First, in Slack II, 2010 U.S. Dist. LEXIS 135530, the Court found that the plaintiffs' amended allegations were sufficient to survive a motion to dismiss where plaintiffs alleged that "Suburban Propane engaged in a pattern and practice of false pricing, whereby it knowingly overcharged customers an inflated price that was commercially unreasonable, later offered to reduce the price as a so-called 'courtesy' if customers noticed the overcharge, and pocketed the overcharge for its remaining customers." Id. at 35. In reviewing this allegation under the 12(b)(6) standard, the Court held that, "Plaintiffs' allegations concerning the 'after-the-fact price reductions' could be construed as suggestive that Defendants have exercised their discretionary authority over its pricing arrangements in an arbitrary or unreasonable manner." Id. at ¶ 36. In light of this finding, the Court allowed the claim to proceed. See id. at 36-37 (citing Wilson, 168 N.J. at 253 ("[A] plaintiff must have a reasonable opportunity to obtain facts not available to it other than through formal discovery.")).[4]

_____

[4] In Slack v. Suburban Propane Ptnrs., L.P., 2010 U.S. Dist. LEXIS 98602, * 18-19 (D.N.J. Sept. 21, 2010), ("Slack I"), the

26

Similarly in JOC, Inc., the Court allowed plaintiffs' breach of implied covenant of good faith and fair dealing to proceed where plaintiff "specifically alleged that Defendant exercised its discretionary authority over DTW pricing, rental rates and other decisions arbitrarily, unreasonably, or capriciously" and "that Exxon knew that its DTW prices and other decisions prevented them from receiving the contractual rewards or benefits they reasonably expected." Id. at 21. The Court found that the terms "'arbitrarily, unreasonably, or capriciously' connote bad faith," and noted that while the case law requires plaintiffs to make a showing of bad motive, it does not required the use of the words bad motive. Id. at n.10.

As in Joc, Inc., Turnersville, while not using the words "bad motive," has sufficiently alleged that LNA set rates in an arbitrary and capricious manner that prevented Turnersville from performing profitably. Moreover, unlike the conclusory

_____

Court dismissed the plaintiffs breach of covenant of good faith and fair dealing claim where plaintiffs only alleged that Suburban Propane "breached the covenant of good faith and fair dealing by exercising its purported discretionary price-making and fee-making authority under its residential propane contracts arbitrarily, unreasonably and/or capriciously, in bad faith, with the objective of preventing its residential propane customers from receiving their reasonably expected fruits under such contracts."

27

allegations found in <u>Slack I</u>, Turnersville supports its allegation that LNA set prices arbitrarily and capriciously with the factual allegation that LNA set fuel prices "close to, equal to, or even above the price being charged at retail by Turnersville's competitors." Counterclaim at ¶ 14. Although it is questionable as to whether setting the fuel prices close to or equal to the competitors' prices states a claim, the Court need not resolve this issue at this juncture. The allegation that LNA set the prices "above" the prices being set by Turnersville's competitors is sufficient under the relevant case law because such a factual allegation supports the averment that LNA's conduct arbitrarily deprived Turnersville of the benefit of its bargain. Accordingly, LNA's motion to dismiss shall be denied as to Count III. <u>See Slack</u>, 2010 U.S. Dist. LEXIS 135530 at *36 (construing plaintiff's allegations regarding price reductions as suggestive that defendants exercised discretionary authority over pricing in an arbitrary or capricious manner, and allowing breach of good faith and fair dealing claim to proceed).

## IV. Conclusion

For the reasons set forth above, the Plaintiff's motion to dismiss will be denied in part and granted in part. To the extent any of the pleading deficiencies identified above can be

28

cured, Turnersville shall have 21 days to amend its

counterclaims.  An appropriate Order will issue this date.

<u>s/Renée Marie Bumb</u>
RENÉE MARIE BUMB
United States District Judge

Dated:    <u>April 16, 2015</u>

29