Case 1:14-cv-03810-RMB-AMD   Document 114-2   Filed 08/07/17   Page 1 of 58 PageID: 577

To:   Page 2 of 19                          2017-06-08 09:05:18 EDT                 Fox Rothschild LLP  From: Lawrence, Barbara A.



## SETTLEMENT AGREEMENT AND MUTUAL GENERAL RELEASE

This Settlement and Mutual General Release Agreement (this "Agreement") is entered into as of June 7, 2017 (the "Effective Date"), by and between **LUKOIL North America, LLC,** a Delaware limited liability company ("LUKOIL"), **Turnersville Petroleum Inc. ("TPI")** a New Jersey corporation, **Surinder Biudra,** a resident of New Jersey ("Surinder"), **RB Distributor, Inc. ("RBDI"),** a New Jersey corporation, and Roshanee Bindra ("Roshanee"). LUKOIL, TPI, Surinder, RBDI, and Roshanee are collectively referred to as the "Parties."

**WHEREAS,** LUKOIL and TPI are parties to a certain PMPA Franchise Agreement dated June 1, 2005, together with various ancillary and related Agreements (the "Franchise Agreements"), which creates a franchise relationship governed by the federal Petroleum Marketing Practices Act ("PMPA") 15 U.S.C. § 2801, *et seq.* (the "Franchise Relationship");

**WHEREAS,** Surinder provided LUKOIL a personal guarantee, dated May 12, 2005 and April 1, 2008, guaranteeing payment by TPI of amounts owed by TPI under the Franchise Agreements (the "Personal Guaranty");

**WHEREAS,** LUKOIL provided TPI with certain goods and benefits, pursuant to the Franchise Agreements and arising through their Franchise Relationship;

**WHEREAS,** LUKOIL has not received payment for the goods and benefits it provided to TPI, which LUKOIL claims to be in the amount of $203,748.28;

**WHEREAS,** the parties to the Franchise Agreement and the Personal Guaranty are involved in litigation arising out of the Franchise Agreements and their Franchise Relationship and being heard by the United States District Court for the District of New Jersey in the matter captioned LUKOIL North America, LLC v. Turnersville, et al., Civil Action No. 1:14-cv-03810-RMB-AMD (the "Action");

WHEREAS, TPI and Surinder deny liability for the sums allegedly due and owing to LUKOIL;

WHEREAS Roshanee is related to Surinder, is the owner of RBDI, and each of Roshanee and RBDI will derive substantial benefit from the settlement of the Action;

WHEREAS Roshanee has agreed to cause the pledge of certain collateral (in the form of property owned by RBDI) and to provide a personal guarantee to ensure that such collateral is and does not become impaired as consideration for the resolution of the Action; and

WHEREAS, in order to avoid the expense, risk and uncertainty of continued litigation, the Parties seek to resolve all claims among them arising out of or related to the Franchise Agreements and/or as asserted in the Action, provided that TPI and Surinder jointly and severally agree to timely pay and timely do pay to LUKOIL the amount of Seventy-Two Thousand Dollars ($72,000.00), in satisfaction of all amounts due and owing to LUKOIL through and including the date hereof.

NOW THEREFORE, in consideration of the mutual promises contained herein and other good and valuable consideration, receipt of which is hereby acknowledged, the Parties now agree as follows:

1.     The WHEREAS clauses are an integral part of this Agreement and are incorporated herein by reference as fully set forth at length.

2.     **Payment of Settlement Amount.**

a.     The "Payment Obligation" is a joint and several obligation of TPI and Surinder, to pay LUKOIL the total amount of $72,000.00 in 36 equal, consecutive installments of $2,000 per month until the Payment Obligation is paid in full to LUKOIL.  Each installment shall be made in immediately available funds and be due each month on the first of every month

2

Case 1:14-cv-03810-RMB-AMD   Document 114-2   Filed 08/07/17   Page 3 of 58 PageID: 579

To:   Page 4 of 19                          2017-06-08 09:05:18 EDT        Fox Rothschild LLP  From: Lawrence, Barbara A.

beginning June 1, 2017, concluding with the final installment to be made no later than May 1, 2020, TIME BEING OF THE ESSENCE AS TO EACH INSTALLMENT OF THE PAYMENT OBLIGATION HEREUNDER.  TPI and Surinder shall be jointly and severally liable for the Payment Obligation.  There shall be no penalty for pre-payment of any portion or all of the Payment Obligation.

b.      If any installment of the Payment Obligation is not made as required hereunder, or if TPI, Surinder, Roshanee and/or RBDI shall otherwise commit any breach or default of this Agreement, then not less than ten (10) days after LUKOIL provides notice of such non-payment, breach or default to TPI and Surinder, LUKOIL may declare the Restated Payment Obligation (as hereinafter defined) to be immediately due and payable (upon which declaration the Restated Payment Obligation shall in fact be immediately due and payable), unless within such ten (10) day period, TIME BEING OF THE ESSENCE, the due and outstanding installments have been paid.  Without prejudice to LUKOIL's rights under the prior sentence, failure to timely make payment of any installment of the Payment Obligation three (3) or more times in any twelve (12) month period after notice and expiration of such ten (10) day period shall automatically result (with no further action required) in modification of the Payment Obligation into the "Restated Payment Obligation".

c.      The "Restated Payment Obligation" shall be an obligation for which TPI, Surinder, and RBDI are jointly and severally liable to pay immediately upon demand in cash the amount equal to: Two Hundred Three Thousand Seven Hundred Forty-Eight Dollars and Twenty-Eight Cents ($203,748.28), less any installments made under the Payment Obligation, plus interest at the rate of twelve (12%) percent per annum, accruing from the date of this Agreement. TPI, Surinder, and RBDI shall be jointly and severally liable for the Restated

3

Payment Obligation.

      d.    Payment in full of the Payment Obligation when due or the Restated Payment Obligation, if applicable, when due shall result in full satisfaction of any and all claims between LUKOIL, on one side, and TPI, Surinder, Roshanee (for the Payment Obligation only), and RBDI, on the other side, including claims asserted in the Action or in connection with the Franchise Agreements and Relationship as provided herein, or in connection with this Settlement Agreement.

      e.    The notices hereunder are to be provided in accord with Paragraph 7 hereof, and so long as such notice was provided in accord with such Paragraph 7, hereof, the automatic modification of the Payment Obligation into the Restated Payment Obligation shall occur notwithstanding whether the Paragraph 7, hereof, procedures result in actual notice occurring or not.

    3.    **Dismissal of the Action.** Upon execution of this Agreement and receipt of the first payment of the Payment Obligation, in accord with Paragraph 2(a) above, LUKOIL shall cause its attorneys to notify the Court of this Agreement and file a joint Stipulation of Dismissal of the Action with prejudice, which is attached hereto as Exhibit A.  Dismissal of the Action shall not prejudice any efforts by a Party to bring a separate action to enforce the terms of this Agreement.

    4.    **Mortgages; Guarantee.**

      a.    TPI and Surinder hereby grant LUKOIL a lien and security interest in the real property described in Exhibit "B" (the "Monroe Property") attached hereto as security for the performance of the obligations of TPI and Surinder under this Agreement. TPI shall, concurrent with this Agreement, duly execute, acknowledge and deliver the mortgage(s) attached

hereto as Exhibit "D", which mortgage TPI acknowledges and agrees shall be recorded against the Monroe Property. Surinder hereby agrees that he is personally liable in his individual capacity for any breach or default of any obligation, representation, or covenant under this Agreement or in the mortgage executed by TPI (including but not limited to his joint and several obligation to pay the Restated Payment Obligation set forth in Paragraph 2(d), above).

       b.     RBDI hereby grants LUKOIL a lien and security interest in the real property described in Exhibit "C" (the "Sandycreek Property", and together with the Monroe Property, the "Properties" and each a "Property"). RBDI shall, concurrent with this Agreement, duly execute, acknowledge and deliver the mortgage(s) attached hereto as Exhibit "E", which mortgage RBDI acknowledges and agrees shall be recorded against the Sandycreek Property. Roshanee hereby agrees that she is personally liable in her individual capacity for any breach or default of any obligation, representation, or covenant under this Agreement or in the mortgage executed by RBDI (including but not limited to her joint and several obligation to pay the Restated Payment Obligation set forth in Paragraph 2(d), above).

       c.     TPI, Surinder, Roshanee, and RBDI shall fully cooperate in a prompt manner with LUKOIL in order to perfect such security interest(s). LUKOIL acknowledges that any such security interest provided to LUKOIL in Paragraph 4(a) shall be subordinate to pre-existing security interests in the same property. Each of TPI, Surinder, Roshanee, and RBDI represent and warrant that the only pre-existing security interests in effect as of the date hereof are as listed in Schedule 1 attached hereto (the "Permitted Liens"). Roshanee and RBDI represent and warrant to LUKOIL that the underlying indebtedness secured by that certain mortgage (the "Uni-Marts Mortgage") in the original principal indebtedness of $321,000 recorded on 07/23/1998 in Record Book 109, Page 1092 made by Uni-Marts, Inc. to FFCA

Acquisition Corporation that remains against the Sandycreek Property and appearing of record has been satisfied and that neither Roshanee nor RBDI has done anything to encumber the Sandycreek Property since the date of acquiring title; provided, however, that the Parties acknowledge that no satisfaction is of record for the Uni-Marts Mortgage.

5.    **Termination of PMPA Franchise Agreement.** Upon the execution of this Agreement, the Franchise Agreements, the Personal Guaranty, and any and all agreements entered into by and between LUKOIL and TPI and/or Surinder, are hereby deemed terminated and the Franchise Relationship shall be terminated and that such Franchise Agreements and Franchise Relationship between the relevant Parties will not be extended after the termination.

6.    **Mutual General Release.**   Immediately upon the execution of this Agreement and receipt of the first payment of the Payment Obligation, LUKOIL, on one hand, and TPI and Surinder, on the other hand, hereby release each other (as well as the other's affiliates, successors, heirs and assigns and each of their respective employees, officers, directors, members and agents) from any and all liabilities, claims, actions, causes of action, demands, rights, damages, injuries, costs, allegations, losses, expenses, compensation and responsibilities (whether or not known to the Parties) arising directly or indirectly under, out of, or in connection with the Franchise Agreements and/or the Franchise Relationship specified herein, and the termination thereof, including any claims that were or could have been brought in the Action, excepting, however, (a) any claims for enforcement of this Agreement, and (b) claims of LUKOIL against the other Parties TPI and Surinder (under the Personal Guaranty) for indemnification and defense against third party claims under the Agreements.

7.    **Notices.**

a.    This notice provision is a substantive and important part of this

6

Case 1:14-cv-03810-RMB-AMD   Document 114-2   Filed 08/07/17   Page 7 of 58 PageID: 583

To:   Page 8 of 19                          2017-06-08 09:05:18 EDT          Fox Rothschild LLP  From: Lawrence, Barbara A.

Agreement.   Any notice required hereunder shall be provided, as follows:

To Surinder and/or TPI:

Surinder Bindra and Turnersville Petroleum Inc.
Sunnybindra14@yahoo.com
bindra.r@gmail.com
Turnersville Petroleum, Inc.
2111 Orion Road
Toms River, New Jersey

With a copy to:

Roshanee Bindra
bindra.r@gmail.com
RB Distributor, Inc.
2111 Orion Road
Toms River, New Jersey

To RBDI:

Roshanee Bindra
bindra.r@gmail.com
RB Distributor, Inc.
2111 Orion Road
Toms River, New Jersey

To LUKOIL:

General Counsel
jsocolow@lukoilusa.com
LUKOIL North America LLC
505 5th Avenue, 9th Floor
New York, NY 10017

For the avoidance of doubt, any notices to Roshanee and/or RBDI shall be provided to them at the addresses set forth in the "copy to" provided above.

b.      When a notice is provided as set forth in Paragraph 2 of this Agreement, the notice shall be deemed provided to TPI and Surinder and/or Roshanee and RBDI the day

7

Case 1:14-cv-03810-RMB-AMD   Document 114-2   Filed 08/07/17   Page 8 of 58 PageID: 584

To:   Page 9 of 19                           2017-06-08 09:05:18 EDT            Fox Rothschild LLP  From: Lawrence, Barbara A.

after the notice was provided via email and to a nationally recognized overnight courier for overnight delivery to at the address(es) provided herein.  Failure of this notice provision to result in Surinder and/or TPI to actually receive notice of a failure to pay in time shall not be construed as an excuse or reason for the Restated Payment Obligation to go into effect as provided in Paragraph 2, hereof.

c.      For the avoidance of doubt, attempted overnight delivery of a package to such address by a nationally recognized courier shall constitute delivery of notice.

d.      Should any Party wish to change the notice address provided above in Paragraph 7(a), such change may only be achieved through a specific written correspondence between the Parties that explicitly and expressly changes the address for the purpose of this notice provision.

8.      **Further Assurances.**  Each Party shall execute such documents and do such acts and things the other Party(ies) may reasonably require for the purpose of giving that Party the full benefit of all the provisions of this Agreement.

9.      **Governing Law.**  The laws of the State of New Jersey govern this Settlement Agreement, excluding (to the greatest extent permissible by law) any rule of law that would cause the application of the laws of any jurisdiction other than the State of New Jersey.  All actions and proceedings arising out of or relating to this Release shall be heard and determined in any New Jersey state or federal court in the District of New Jersey, provided it has jurisdiction.

10.     **Construction.**  Should any provision of this Agreement require interpretation or construction, it is agreed by the Parties that the court interpreting or construing this Agreement shall not apply a presumption that the provisions hereof shall be more strictly construed against one Party by reason of the rule of construction that a document is to be construed more strictly

8

ACTIVE\9468055.v1-6/7/17

Case 1:14-cv-03810-RMB-AMD   Document 114-2   Filed 08/07/17   Page 9 of 58 PageID: 585

To:   Page 10 of 19                    2017-06-08 09:05:18 EDT              Fox Rothschild LLP  From: Lawrence, Barbara A.

against the Party who prepared the Agreement, it being agreed that all Parties (by their respective attorneys) have participated fully and equally in the preparation of all provisions of this Agreement.

11.   **No Waiver.** No failure to exercise a right given hereunder nor course of conduct nor other type of behavior or action may be construed as a waiver of any right under this Agreement. A right under this Agreement may only be deemed waived by a writing signed by the Party against whom it is asserted to be a waiver that is express and explicit in its waiver of a specific right and any such waiver must state in its terms that it is a waiver made pursuant to the requirements of this paragraph 11.

12.   **Complete Agreement.** This Agreement (and all documents that this Agreement expressly by its terms contemplates being made, including but not limited to the stipulation of dismissal and the security documents evidencing the mortgage) contains the entire agreement amongst the Parties regarding the subject matter hereof. The terms of this Agreement are contractual and not a mere recital.

13.   **Binding Nature Of This Agreement.** The provisions of this Agreement shall be binding on and inure to the benefit of the respective successors, assigns, heirs, beneficiaries and personal representatives of the Parties hereto, as applicable.

14.   **No Benefits To Third Parties.** Except as is otherwise expressly provided herein, no third party is intended to secure any rights or benefits under this Agreement, and this Agreement is not intended for the benefit of any third party.

15.   **Terminology.** As used in this Agreement, the singular may include the plural and the plural the singular, and the use of any gender shall be applicable to all genders.

16.   **Amendments.** The terms and conditions of this Agreement may only be

9

ACTIVE\9468055.v1-6/7/17

Case 1:14-cv-03810-RMB-AMD   Document 114-2   Filed 08/07/17   Page 10 of 58 PageID: 586

To:    Page 11 of 19                    2017-06-08 09:05:18 EDT          Fox Rothschild LLP  From: Lawrence, Barbara A.

amended by written agreement, duly executed by all Parties.

17.    **Counterpart Execution.**  This Settlement Agreement and Mutual General Release may be executed in one or more counterparts, each of which when executed shall be deemed to be an original but all of which taken together shall constitute one and the same Agreement. All of the counterparts shall become effective when one or more counterparts have been signed by each of the Parties and delivered (including delivery of executed signature pages electronically) to each of the Parties hereto. The execution and delivery of this Agreement may be conducted by electronic means in accordance with the Uniform Electronic Transactions Act, N.J.S.A. 12A:12-1, *et seq.*

18.    **Representations; Warranties.**  Each of the undersigned warrants and represents that he is duly authorized and empowered to execute this Agreement for the purposes specified herein. TPI, Surinder, Roshanee and RBDI jointly represent and warrant to LUKOIL that: (i) the consideration paid for the Sandycreek Property is $132,000 and (ii) to the best of his/her knowledge, the fair market value of the Properties, collectively, is sufficient to satisfy the Restated Payment Obligations, irrespective of any Permitted Liens. TPI, Surinder, Roshanee and RBDI acknowledge and agree that a breach of any representation or warranty made by any of them in this Agreement constitutes an immediate default and entitle LUKOIL to receive the Restated Payment Obligations in accordance with Section 2(b).

THE PARTIES HERETO REPRESENT AND WARRANT THAT THEY HAVE CAREFULLY READ THIS SETTLEMENT AGREEMENT AND MUTUAL GENERAL RELEASE, CONSULTED WITH THEIR RESPECTIVE ATTORNEYS, IF REPRESENTED, AND FULLY UNDERSTAND AND CONSENT TO BE BOUND BY THE TERMS OF THIS SETTLEMENT AGREEMENT AND MUTUAL GENERAL RELEASE IN ALL RESPECTS.

TPI AND SURINDER ACKNOWLEDGE THAT, UNDER PARAGRAPH 2, HEREOF, FAILURE OF ONE OF THEM TO PAY THE PAYMENT OBLIGATION WHEN DUE SHALL RESULT IN THEM AND RBDI OWING A LARGER AMOUNT THAN THE PAYMENT OBLIGATION AND THAT SUCH LARGER AMOUNT WILL BE DUE

ACTIVE\49468055.v1-6/7/17

Case 1:14-cv-03810-RMB-AMD   Document 114-2   Filed 08/07/17   Page 11 of 58 PageID: 587

To:   Page 12 of 19                          2017-06-08 09:05:18 EDT          Fox Rothschild LLP  From: Lawrence, Barbara A.

SOONER THAN THE LESSER AMOUNT OF THE PAYMENT OBLIGATION.

TPI, SURINDER, AND RBDI ACKNOWLEDGE THAT SUCH A PROVISION WAS A BARGAINED FOR EXCHANGE IN REACHING THIS SETTLEMENT AGREEMENT AND THAT NO SETTLEMENT WOULD HAVE BEEN ACHIEVED WITHOUT SUCH PROVISION.

**IN WITNESS WHEREOF,** and intending to be legally bound, the Parties hereunto set their hands effective as of the day and year first set forth above to this Settlement Agreement and Mutual General Release and acknowledge that they have read this Agreement and agree to the terms thereof.

Attest:                                          LUKOIL OF NORTH AMERICA, LLC

_____ 6/8/17        By: _____ 06.08.2017
          Date                                              Date

Attest:                                          TURNERSVILLE PETROLEUM INC.

_____                    By: _____ 6-7-17
          Date                                              Date

Attest:                                          SURINDER BINDRA

_____ 6-7-17       By: _____ 6-7-17
          Date                                              Date

Attest:                                          RB DISTRIBUTOR, INC.

_____ 6-7-17       By: _____ JUNE 7th 2017
          Date                                              Date

Attest:                                          ROSHANEE BINDRA

_____ 6-7-17       By: _____ JUNE 7th 2017
          Date                                              Date

                                    11

ACTIVE\49468055.v1-6/7/17

Case 1:14-cv-03810-RMB-AMD   Document 114-2   Filed 08/07/17   Page 12 of 58 PageID: 588

To:    Page 13 of 19                         2017-06-08 09:05:18 EDT          Fox Rothschild LLP  From: Lawrence, Barbara A.

## EXHIBIT A

### UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

| | |
|---|---|
| LUKOIL NORTH AMERICA LLC, successor in interest to Getty Petroleum Marketing, Inc., | Case No.: 1:14-cv-03810-RMB-AMD |
| Plaintiff, | |
| v. | **STIPULATION OF DISMISSAL** |
| TURNERSVILLE PETROLEUM INC., successor to N.B. Oil Inc. by assignment, and SURINDER BINDRA, | |
| Defendants. | |

Plaintiff LUKOIL North America, LLC ("Plaintiff"), by and through its attorneys Fox Rothschild, LLP (Corinne McCann Trainor, Esq., appearing), and Defendants Turnersville Petroleum, Inc. and Surinder Bindra (jointly "Defendants"), by and through their attorneys Stone Conroy LLC (Shalom D. Stone, Esq., appearing) hereby stipulate and agreed that the above captioned matter is hereby DISMISSED WITH PREJUDICE pursuant to the terms of the parties' Settlement Agreement and Mutual General Release.

Respectfully submitted,

| | |
|---|---|
| /s/ Corinne McCann Trainor, Esq. | /s/ Shalom D. Stone, Esq. |
| FOX ROTHSCHILD LLP | STONE CONROY LLC |
| Brett A. Berman, Esq. | Shalom D. Stone, Esq. |
| Corinne McCann Trainor, Esq. | Rebekah Conroy, Esq. |
| Princeton Pike Corporate Center | 25A Hanover Road, Suite 301 |
| 997 Lenox Drive, Building 3 | Florham Park, New Jersey 07932 |
| Lawrenceville, New Jersey 08648-2311 | Tel: (973) 400-4181 |
| Tel: (609) 844-3038 / Fax: (609) 896-1469 | *Attorneys for Defendants Turnersville* |
| *Attorneys for Plaintiff LUKOIL* | *Petroleum, Inc. and Surinder Bindra* |
| *North America LLC* | |

Dated:  June 7, 2017

12

ACTIVE\49468055.v1-6/7/17

Case 1:14-cv-03810-RMB-AMD  Document 114-2  Filed 08/07/17  Page 13 of 58 PageID: 589

To:   Page 14 of 19                        2017-06-08 09:05:18 EDT         Fox Rothschild LLP  From: Lawrence, Barbara A.

SO ORDERED,

_____
HONORABLE RENEE MARIE BUMB, U.S.D.J.

ACTIVE\49468055.v1-6/7/17

## EXHIBIT B

### Legal Description

All that certain lot or piece of ground situate in the Township of Monroe, County of Gloucester and State of New Jersey, described as follows:

BEGINNING AT THE POINT OF INTERSECTION OF THE Southwesterly line of Black Horse Pike (New Jersey State Highway Route 42) and the Northwesterly line of Pedrick Avenue (40 feet wide), and proceeding; thence

1. South 38 degrees 19 minutes 57 seconds West, along said line of Pedrick Avenue, 200.00 feet to a corner of lands of the Latham Park Apartments Complex; thence

2. North 33 degrees 15 minutes 00 seconds West, along lands of said Apartment Complex, 205.53 feet to the Southeasterly right of way line of Esposito Boulevard (said Boulevard being an ingress and egress road of said Apartment Complex and not a dedicated Street); thence

3. North 38 degrees 19 minutes 57 seconds, East, along said line of Esposito Boulevard, 200.00 feet to the Southwesterly line of Black Horse Pike; thence

4. South 33 degrees 15 minutes 00 seconds East, along said line of Black Horse Pike, 205.53 feet to the point and place of BEGINNING.

Excepting thereout and therefrom Title to that portion of the above described subject premises conveyed to Township of Monroe (Gloucester County) by deed from Gulf Oil Corporation, a Pennsylvania corporation, dated May 12, 1970, recorded June 05, 1970 in Deed Book 1183, page 1193 and described as follows:

BEGINNING at the point of intersection of the Southwesterly line of Black Horse Pike (New Jersey State Highway Route 42) and the Northwesterly line of Pedrick Avenue 40.00 feet wide), and proceeding; thence

1. South 38 degrees 19 minutes 57 seconds West, along said line of Pedrick Avenue, 200.00 feet to a point; thence

2. North 33 degrees 15 minutes 00 seconds west, 10.54 feet to a point; thence

3. North 38 degrees 19 minutes 57 seconds East, 200.00 feet to a point in the southwesterly line of Black Horse Pike; thence

4. South 33 degrees 15 minutes 00 seconds East, along said line of Black Horse Pike, 10.54 feet to the aforesaid line of Pedrick Avenue, being the place of BEGINNING.

FOR INFORMATIONAL PURPOSES ONLY:

Premises described herein is designated as Lot 10, Block 1703 on the Tax Map of the Monroe Township, County of Gloucester, State of New Jersey

14

Case 1:14-cv-03810-RMB-AMD   Document 114-2   Filed 08/07/17   Page 15 of 58 PageID: 591

To:   Page 16 of 19                    2017-06-08 09:05:18 EDT        Fox Rothschild LLP  From: Lawrence, Barbara A.

## EXHIBIT C

### Legal Description

ALL THAT CERTAIN piece or parcel of land situate in Sandycreek Township, Venango County, Pennsylvania, bounded and described as follows, to wit:

BEGINNING at a railroad spike on the Southwesterly right of way line of T.R. 62, at, the most Northerly portion of the premises hereby conveyed; thence along the said right of way line of T.R. 62 South 44° 48' East, 70.40 feet to a point; thence by the same and the Northerly right of way line of T.R. 8 South 2° 58' 45" West, 114.65 feet to a point; thence along the Northwesterly right of way line of the said T.R. 8 by a curve having a radius of 869.02 feet an arc distance of 80.76 feet, the chord of said curve being South 37° 20' 50" West, 80.73 feet to a railroad spike; thence by other land of the said Raymond L. Lantz South 89° 10' 20" West, 49.27 feet to a railroad spike; thence by the same North 2° 57' 40" West, 135.70 feet to an iron pin; thence by the same North 25° 4' 35" East, 49.37 feet to the center of a manhole cover; thence by the same North 39° 38' 25" East, 63.75 feet to the railroad spike at the place of beginning.

FOR INFORMATION PURPOSES ONLY:

Premises described herein is designated as Parcel No. 26-006-0011, and has a street address of 1110 15th Street, Franklin, Sandy Creek Township, Venango County, State/Commonwealth of Pennsylvania.

ACTIVE\49468055.v1-6/7/17

To:    Page 17 of 19                          2017-06-08 09:05:18 EDT              Fox Rothschild LLP  From: Lawrence, Barbara A.

## EXHIBIT D

**MORGAGE, ASSIGNMENT OF LEASES AND RENTS, SECURITY AGREEMENT
and FINANCING STATEMENT FOR MONROE, NEW JERSEY PROPERTY,
DESCRIBED IN EXHIBIT B HEREIN**

16

ACTIVE\49468055.v1-6/7/17



*First American Title Company*

# Electronically Recorded Document

Ref No:                                    ACCOMP-88

The attached document was recorded on your behalf by First American Title Company via our electronic recording process.

Thank you for allowing First American Title Company to record your documents.

**Recorded Date/Time:** *7/21/2017 8:51 AM*
**Instrument Number:** *27563*
**Book:** *15135*
**Page:** *162*

**County/State:** *Gloucester/NJ*
**Borrower:** *ACCOMP-88_NA  ACCOMP-88_NA*
**Document Type:** *Mortgage*
**Document Seq:** *1*

## <u>Do not detach.  This page is now a permanent part of this document.</u>

Doc-27563  Bk-MB  Vl-15135  Pg-162



DOCKET#:27563        Type:ERX-Mortgage
PAGES:20

HONORABLE JAMES N. HOGAN
GLOUCESTER COUNTY CLERK
RECEIPT#: 665498      08:51:28 AM

E-recorded

07/21/2017
MB  15135  162

Fee:$      210.00

DOCUMENT DATE:  06/08/2017

MUNICIPALITY: MONROE   BLOCK: 1703   LOT: 10

PARTIES:
FIRST PARTY-TURNERSVILLE PETROLEUM INC
SECOND PARTY-LUKOIL NORTH AMERICA LLC

RECORD & RETURN TO:
SIMPLIFILE

PLEASE DO NOT DETACH THIS PAGE FROM THE ORIGINAL
DOCUMENT AS IT CONTAINS IMPORTANT INFORMATION AND
IS PART OF THE PERMANENT RECORD.

GLOUCESTER COUNTY RECORDING DATA PAGE
HONORABLE JAMES N. HOGAN, COUNTY CLERK

THIS INSTRUMENT WAS PREPARED BY
AND UPON RECORDING RETURN TO:

Laura DeLuca
LUKOIL North America LLC
505 Fifth Floor, 9th Floor
New York, NY 10017

Re: _____, _____, N.J. (_____ County)

_____

[SPACE ABOVE FOR RECORDER'S USE ONLY]

## MORTGAGE, ASSIGNMENT OF LEASES AND RENTS, SECURITY AGREEMENT
## and FINANCING STATEMENT
## (New Jersey)

**THIS MORTGAGE, ASSIGNMENT OF LEASES AND RENTS, SECURITY AGREEMENT and FINANCING STATEMENT** (this "Mortgage") is made as of June 8th, 2017 by **TURNERSVILLE PETROLEUM INC.**, a New Jersey limited liability company, having an address of 2111 Orien Rd, Toms River, New Jersey 08755 ("Mortgagor") in favor of **LUKOIL NORTH AMERICA LLC**, a Delaware limited liability company having an address of 505 5th Avenue, 9th Floor, New York, New York 10017 ("Mortgagee").

### WITNESSETH:

WHEREAS, Mortgagor is indebted to Mortgagee in the principal sum of Two Hundred Three Thousand Seven Hundred Forty-Eight and 28/100 Dollars ($203,748.28) (the "Indebtedness"), together with interest thereon as evidenced by that certain Settlement Agreement and Mutual General Release dated June 7, 2017 by and between Mortgagor and Mortgagee (the "Agreement"); and

WHEREAS, Mortgagor is the owner of fee simple title to certain real property and the improvements situated thereon located in the Township of Monroe, Gloucester County, New Jersey, being Block 1703, Lot 10 as more particularly described in Schedule "A" attached hereto and made a part hereof (the "Real Estate"); and

WHEREAS, to induce Mortgagee to enter into the Agreement, Mortgagor has agreed to execute and deliver this Mortgage.

### GRANTING CLAUSES

NOW, THEREFORE, to secure to Mortgagee (i) all performance and payment obligations of Mortgagor under or in connection with the Agreement or this Mortgage; (ii) all other obligations of Mortgagor to Mortgagee, in each case howsoever created, arising or evidenced, whether direct or indirect, joint or several, absolute or contingent, or now or hereafter existing, or due or to become due, including, without limitation, those obligations arising out of or in connection with the Agreement or this Mortgage; (iii) payment and performance of all

1

future advances and other obligations that Mortgagor, or any successor in interest to Mortgagor, and/or any other obligor (if different than Mortgagor), or any successor in ownership of all or part of the Property (defined below), may agree to pay and/or perform (whether as principal, surety, or guarantor) for the benefit of Mortgagee, when a writing evidences the parties' agreement that the advance or obligation be secured by this Mortgage; (iv) payment and performance of all modifications, amendments, extensions, and renewals, however evidenced; (v) interest on all of the foregoing; and (vi) all costs of enforcement and collection (subsections (i) thru (vi), inclusive, each a "Secured Obligation" and collectively, the "Secured Obligations"), Mortgagor has mortgaged, granted and conveyed and by these presents DOES HEREBY MORTGAGE, GRANT AND CONVEY TO MORTGAGEE, ITS SUCCESSORS AND ASSIGNS, all of Mortgagor's right, title and interest now owned or hereafter acquired in and to each of the following (collectively, the "Property"):

(A)     The Real Estate;

(B)     Any and all buildings and improvements now or hereafter erected on, under or over the Real Estate (the "Improvements");

(C)  ,   Any and all fixtures, machinery, equipment and other articles of real, personal or mixed property, belonging to Mortgagor, at any time now or hereafter installed in, attached to or situated in or upon the Real Estate, or the buildings and improvements now or hereafter erected thereon, or used or intended to be used in connection with the Real Estate, or in the operation of the building and improvements situate thereon, whether or not such real, personal or mixed property is or shall be affixed thereto, and all replacements, substitutions and proceeds of the foregoing (all of the foregoing herein called the "Service Equipment");

(D)     Any and all leases, subleases, tenancies, licenses, occupancy agreements or agreements to lease all or any portion of the Real Estate, Improvements, Service Equipment or all or any other portion of the Property and all extensions, renewals, amendments, modifications and replacements thereof, and any options, rights of first refusal or guarantees relating thereto (collectively, the "Leases"); all rents, income, receipts, revenues, security deposits, escrow accounts, reserves, issues, profits, awards and payments of any kind payable under the Leases or otherwise arising from the Real Estate, Improvements, Service Equipment or all or any other portion of the Property including, without limitation, minimum rents, additional rents, percentage rents, parking, maintenance and deficiency rents (collectively, the "Rents"); all of the following personal property (collectively referred to as the "Contracts"); all accounts, general intangibles and contract rights (including any right to payment thereunder, whether or not earned by performance) of any nature relating to the Real Estate, Improvements, Service Equipment or all or any other portion of the Property or the use, occupancy, maintenance, construction, repair or operation thereof; all warranties and guaranties; all permits, licenses and approvals; and all insurance policies, books of account and other documents, of whatever kind or character, relating to the use, construction upon, occupancy, leasing, sale or operation of the Real Estate, Improvements, Service Equipment or all or any other portion of the Property;

(E)     Any and all estates, rights, tenements, hereditaments, privileges, easements, reversions, remainders and appurtenances of any kind benefiting or appurtenant to the Real Estate, Improvements or all or any other portion of the Property; all means of access to and from

ACTIVE\49468546.v1-6/7/17

the Real Estate, Improvements or all or any other portion of the Property, whether public or private; all streets, alleys, passages, ways, water courses, riparian, littoral, water and mineral rights relating to the Real Estate, Improvements or all or any other portion of the Property; all rights of Mortgagor as declarant or unit owner under any declaration of condominium or association applicable to the Real Estate, Improvements or all or any other portion of the Property including, without limitation, all development rights and special declarant rights; and all other claims or demands of Mortgagor, either at law or in equity, in possession or expectancy of, in, or to the Real Estate, Improvements or all or any other portion of the Property (all of the foregoing described in this subsection E herein called the "Appurtenances"); and

(F)      Any and all "proceeds" of any of the above-described Real Estate, Improvements, Service Equipment, Leases, Rents, Contracts and Appurtenances, which term "proceeds" shall have the meaning given to it in the Uniform Commercial Code, as amended, (the "Code") (collectively, the "Proceeds") and shall additionally include whatever is received upon the use, lease, sale, exchange, transfer, collection or other utilization or any disposition or conversion of any of the Real Estate, Improvements, Service Equipment, Leases, Rents, Contracts and Appurtenances, voluntary or involuntary, whether cash or non-cash, including proceeds of insurance and condemnation awards, rental or lease payments, accounts, chattel paper, instruments, documents, contract rights, general intangibles, equipment and inventory.

TO HAVE AND TO HOLD the above granted and conveyed Property unto and to the proper use and benefit of Mortgagee, its successors and assigns, forever.

All capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Agreement.

AND Mortgagor covenants and agrees with and represents to Mortgagee as follows:

**1.  FUTURE ADVANCES: PROTECTION OF PROPERTY**.  This Mortgage shall secure future advances and readvances under the Secured Obligations made by Mortgagee to or for the benefit of Mortgagor or the Property, including, without limitation: (a) principal, interest, late charges, fees and other amounts due under the Secured Obligations or this Mortgage; (b) all advances by Mortgagee to Mortgagor or any other person to pay costs of erection, construction, alteration, repair, restoration, maintenance and completion of any improvements on the Property; (c) all advances made or costs incurred by Mortgagee for the payment of real estate taxes, assessments or other governmental charges, maintenance charges, insurance premiums, appraisal charges, environmental inspection, audit, testing or compliance costs, and costs incurred by Mortgagee for the enforcement and protection of the Property or the lien of this Mortgage; and (d) all legal fees, costs and other expenses incurred by Mortgagee by reason of any default in connection with the Secured Obligations.  Mortgagor agrees that if, at any time during the term of this Mortgage or following a foreclosure hereof (whether before or after the entry of a judgment of foreclosure), Mortgagor fails to perform or observe any covenant or obligation under this Mortgage (subject to any applicable notice and period to cure granted to Mortgagor under this Mortgage or the Agreement)  including, without limitation, payment of any of the foregoing, Mortgagee may (but shall not be obligated to) take such steps as are reasonably necessary to remedy any such nonperformance or nonobservance and provide payment thereof.  All amounts advanced by Mortgagee shall be added to the amount secured by this Mortgage and

the Agreement (and, if advanced after the entry of a judgment of foreclosure, by such judgment of foreclosure), and shall be due and payable on demand, together with interest at the Default Rate set forth in the Agreement, such interest to be calculated from the date of such advance to the date of repayment thereof.

## 2.   REPRESENTATIONS, WARRANTIES AND COVENANTS.

2.1.   **Payment and Performance**.   Mortgagor shall (a) pay to Mortgagee all sums required to be paid by Mortgagor under the Agreement and this Mortgage, in accordance with their stated terms and conditions; and (b) perform and comply with all terms, conditions and covenants set forth in the Agreement and this Mortgage.

2.2.   **Seisin and Warranty**.   Mortgagor hereby warrants that (a) Mortgagor is seized of an indefeasible estate in fee simple in, and warrants the title to, the Property; (b) Mortgagor has the right, full power and lawful authority to mortgage, grant, convey and assign the same to Mortgagee in the manner and form set forth herein; and (c) this Mortgage is a valid and enforceable third lien on the Property subject only to the priority of the mortgage held by Wells Fargo Bank, with a payoff amount of $687,872.12 as of May 22, 2017 ("First Lien") and further subject to the priority of the mortgage held by Customers Bank, with a payoff amount of $223,258.53 as of June 1, 2017 ("Second Lien").   Mortgagor hereby covenants that Mortgagor shall (1) preserve such title and the validity and priority of the lien of this Mortgage and shall forever warrant and defend the same to Mortgagee against all lawful claims whatsoever; and (2) execute, acknowledge and deliver all such further documents or assurances as may at any time hereafter be required by Mortgagee to protect fully the lien of this Mortgage.

2.3.   **Insurance**.   (a) Mortgagor shall obtain and maintain at all times throughout the term of this Mortgage all insurance required at any time or from time to time by Mortgagee and, in any event, the following insurance: (i) protecting Mortgagor in an amount acceptable to Mortgagee, and all other insurance commonly or, in the judgment of Mortgagee, prudently maintained by those whose business, improvement to, and use of real estate is similar to that of Mortgagor, all in amounts satisfactory to Mortgagee, and all of such insurance to be maintained in such form and with such companies as shall be approved by Mortgagee; (ii) "All-Risk" fire and extended coverage hazard insurance (non-reporting Commercial Property Policy with Special Cause of Loss form) covering the Property in an aggregate amount not less than 100% of the agreed upon full insurable replacement value of the Property without consideration for depreciation, with an inflation guard endorsement, insurance against business interruption and loss of rentals for such occurrences and in such amounts as Mortgagee may reasonably require, including coverage for loss of rents or business interruption; (iii) during the course of any construction, reconstruction, remodeling or repair of any Improvements, builders' all-risk extended coverage insurance (non-reporting Completed Value with Special Cause of Loss form) in amounts based upon the completed replacement value of the Improvements (excluding roads, foundations, parking areas, paths, walkways and like improvements) and endorsed to provide that occupancy by any person shall not void such coverage; (iv) if the Property is required to be insured pursuant to the National Flood Insurance Reform Act of 1994, and the regulations promulgated thereunder, flood insurance in an amount at least equal to the lesser of the agreed upon full insurable replacement value of the Property (less any value attributable to the Real

4

Estate) or the maximum limit of coverage available; and (v) insurance which complies with the workers' compensation and employers' liability laws of all states in which Mortgagor shall be required to maintain such insurance.

(b)   Each insurance policy required under this Section 2 shall: (i) be written by an insurance company authorized or licensed to do business in the state within which the Property is located, which insurance company shall be reasonably acceptable to Mortgagee; (ii) be for terms of a least one (1) year, with premium prepaid; (iii) be subject to the reasonable approval of Mortgagee as to insurance companies, amounts, content, forms of policies and expiration dates; and (iv) name Mortgagee, its successors and assigns: (1) as an additional insured under all liability insurance policies, and (2) as the mortgagee, under a standard non-contributory mortgagee clause, on all property insurance policies and all loss of rents or loss of business income insurance policies.

(c)   Mortgagor further agrees that each insurance policy: (i) shall provide at least thirty (30) days' prior written notice to Mortgagee (ten (10) days' prior written notice for non-payment of premiums) prior to any policy reduction or cancellation for any reason; (ii) shall contain an endorsement or agreement by the insurer that any loss shall be payable to Mortgagee in accordance with the terms of such policy notwithstanding any act or negligence of Mortgagor which might otherwise result in forfeiture of such insurance; (iii) shall waive all rights of setoff, counterclaim, deduction or subrogation against Mortgagor; and (iv) shall exclude Mortgagee from the operation of any coinsurance clause.

(d)   At least thirty (30) days prior to the expiration of any insurance policy, Mortgagor shall furnish evidence satisfactory to Mortgagee that such policy has been renewed or replaced or is no longer required.

(e)   Notwithstanding the foregoing, in the event that Mortgagor fails to maintain insurance in accordance with this Section 2.3, and Mortgagee elects to obtain insurance to protect its interests hereunder, Mortgagee may obtain insurance in any amount and of any type Mortgagee deems appropriate to protect Mortgagee's interest only and Mortgagee shall have no duty or obligation to Mortgagor to maintain insurance in any greater amount or of any other type for the benefit of Mortgagor.  All insurance premiums incurred or paid by Mortgagee shall be at Mortgagor's sole cost and expense in accordance with Section 1 hereof.  Mortgagee's election to obtain insurance shall not be deemed to waive any Event of Default (as hereinafter defined) hereunder.

2.4.   **Taxes and Other Charges**.  Mortgagor shall promptly pay and discharge or cause to be paid and discharged all taxes, assessments, water and sewer rents, and other governmental charges imposed upon the Property when due, but in no event after interest or penalties commence to accrue thereon or become a lien upon the Property.  Notwithstanding the foregoing, Mortgagor shall have the right to contest, at its own expense, by appropriate legal proceedings conducted in good faith and with due diligence, the amount or validity of such taxes, assessments, water and sewer rents, or other governmental charges; provided, that such contest operates to prevent collection, stay any proceedings which may be instituted to enforce payment of such item, and prevent a sale of the Property to pay such item.  Mortgagor shall promptly

ACTIVE\49468546.v1-6/7/17

provide to Mortgagee, upon request, copies of receipted tax bills, canceled checks or other evidence evidencing that such taxes, assessments, water and sewer rents, and other governmental charges have been timely paid.  Mortgagor shall not claim or demand or be entitled to any credit on account of the Secured Obligations for any part of the taxes paid with respect to the Property or any part thereof and no deduction shall otherwise be made or claimed from the taxable value of the Property, or any part thereof, by reason of this Mortgage.

2.5.   **Transfer; Sales; Liens**.  Mortgagor will not, and will not permit, without prior written consent of Mortgagee, which consent Mortgagee may grant or withdraw in its sole and absolute discretion:  any contract to sell, assign, convey, encumber, pledge, mortgage, lease (other than as expressly permitted under this Mortgage) or other transfer of the Property or any part thereof or any interest or estate in any thereof whether by operation of law or otherwise (including, without limitation, any conveyance into a trust or any conveyance of the beneficial interest in any trust that may be holding title to the Property) or remove any Improvements or Service Equipment from the Real Estate; or create, suffer or permit to be created or to exist any mortgage, lien, claim, security interest, charge, encumbrance or other right or claim of any kind whatsoever upon the Property or any part thereof, except only those of current taxes not then due and payable (any of which shall constitute an "Accelerating Transfer").  If any Accelerating Transfer occurs, Mortgagee in its sole and absolute discretion may declare all of the Secured Obligations to be immediately due and payable, and Mortgagee may invoke any rights and remedies provided in this Mortgage.

2.6.   **No Encumbrances**.  Mortgagor shall not create, permit or suffer to exist, be created or remain any mortgage, pledge, lien (including without limitation any construction, mechanics', laborers' or materialmens'), security interest (including, without limitation, a purchase money security interest), encumbrance, attachment, levy, distraint or other judicial process on or against the Property or any part thereof (including, without limitation, fixtures and other personalty), whether superior or inferior to the lien of this Mortgage, without the prior written consent of Mortgagee.   If any lien or encumbrance is filed or entered without Mortgagee's consent, Mortgagor shall have it removed of record within thirty (30) days after it is filed or entered. Mortgagor agrees to promptly deliver to Mortgagee a copy of any notices that Mortgagor receives with respect to any pending or threatened lien, encumbrance, attachment, levy, distraint or other judicial process on or against the Property or the foreclosure thereof.

2.7.   **Removal of Fixtures**.  Mortgagor shall not remove or permit to be removed from the Property any fixtures presently or in the future owned by Mortgagor as the term "fixtures" is defined by the law of the state where the Property is located (unless such fixtures have been replaced with similar fixtures of equal or greater utility and value).

2.8.   **Maintenance and Repair: Alterations**.  (a) Mortgagor shall (i) abstain from and not permit the commission of waste in or about the Property; (ii) keep the Property, at Mortgagor's own cost and expense, in good and substantial repair, working order and condition; (iii) make or cause to be made, as and when necessary, all repairs and replacements, whether or not insurance proceeds are available therefor; and (iv) not remove, demolish, materially alter, discontinue the use of, permit to become vacant or deserted, or otherwise dispose of all or any part of the Property.  All alterations, replacements, renewals or additions made pursuant hereto

shall automatically become a part of the Property and shall be covered by the lien of this Mortgage.

(b) Mortgagee, and any persons authorized by Mortgagee, shall have the right, but not the obligation, to enter upon the Property at any reasonable time to inspect and photograph its condition and state of repair. In the event any such inspection reveals, in the sole discretion of Mortgagee, the necessity for any repair, alteration, replacement, clean-up or maintenance, Mortgagor shall, at the discretion of Mortgagee, either: (i) cause such work to be effected immediately; or (ii) promptly establish an interest bearing reserve fund with Mortgagee in an amount determined by Mortgagee for the purpose of effecting such work.

2.9. **Compliance with Applicable Law**. Mortgagor agrees to observe, conform and comply with all federal, state, county, municipal and other governmental or quasi-governmental laws, rules, regulations, ordinances, codes, requirements, covenants, conditions, orders, licenses, permits, approvals and restrictions, including without limitation, Environmental Laws (as defined below) and the Americans with Disabilities Act of 1990 (collectively, the "Legal Requirements"), now or hereafter affecting all or any part of the Property, its occupancy or the business or operations now or hereafter conducted thereon and the personalty contained therein, within such time as required by such Legal Requirements. Notwithstanding the foregoing, Mortgagor shall have the right to contest, at its own expense, by appropriate legal proceedings conducted in good faith and with due diligence, any violation or alleged violation of the Legal Requirements.

2.10. **Damage, Destruction and Condemnation**. (a) If all or any part of the Property shall be damaged or destroyed, or if title to or the temporary use of the whole or any part of the Property shall be taken or condemned by a competent authority for any public or quasi-public use or purpose, there shall be no abatement or reduction in the amounts payable by Mortgagor under the Agreement or this Mortgage and Mortgagor shall continue to be obligated to make such payments.

(b) If all or any part of the Property is partially or totally damaged or destroyed, Mortgagor shall give prompt notice thereof to Mortgagee, and Mortgagee may make proof of loss if not made promptly by Mortgagor. Mortgagor hereby authorizes and directs any affected insurance company to make payment under such insurance, including return of unearned premiums, to Mortgagee instead of to Mortgagor and Mortgagee jointly, and Mortgagor appoints Mortgagee as Mortgagor's attorney-in-fact to endorse any draft thereof, which appointment, being for security, is coupled with an interest and irrevocable. Mortgagee is hereby authorized and empowered by Mortgagor to settle, adjust or compromise, in consultation with Mortgagor, any claims for loss, damage or destruction to the Property. Mortgagor shall pay all costs of collection of insurance proceeds payable on account of such damage or destruction. Mortgagor shall have no claim against the insurance proceeds, or be entitled to any portion thereof, and all rights to the insurance proceeds are hereby assigned to Mortgagee as security for payment of the Secured Obligations. Mortgagee shall have the option, in its sole discretion, of paying or applying all or any part of the insurance proceeds to: (i) reduction of the Secured Obligations; or (ii) restoration, replacement or repair of the Property.

ACTIVE\49468546.v1-6/7/17

(c)     Immediately upon obtaining knowledge of the institution of any proceeding for the condemnation of all or any part of the Property, Mortgagor shall give notice to Mortgagee.  Mortgagor shall, at its sole cost and expense, diligently prosecute any such proceeding and shall consult with Mortgagee, its attorneys and experts, and shall cooperate with it in the defense of any such proceeding.  Mortgagee may participate in any such proceeding and Mortgagor shall from time to time deliver to Mortgagee all instruments requested by it to permit such participation.  Mortgagor shall not, without Mortgagee's prior written consent, enter into any agreement (i) for the taking or conveyance in lieu thereof of all or any part of the Property, or (ii) to compromise, settle or adjust any such proceeding.   The awards and proceeds of condemnation are hereby assigned to Mortgagee, and Mortgagor, upon request by Mortgagee, agrees to make, execute and deliver any additional assignments or documents necessary from time to time to enable Mortgagee to collect the same.  Such awards and proceeds shall be paid or applied by Mortgagee, in its sole discretion, to: (i) reduction of the Secured Obligations; or (ii) restoration, replacement or repair of the Property.

(d)     Nothing herein shall relieve Mortgagor of its duty to repair, restore, rebuild or replace the Property following damage or destruction or partial condemnation if no or inadequate insurance proceeds or condemnation awards are available to defray the cost of repair, restoration, rebuilding or replacement.

2.11.   **Required Notices**.  Mortgagor shall notify Mortgagee within five (5) days of: (a) receipt of any notice from any governmental or quasi-governmental authority relating to the structure, use or occupancy of the Property (other than notices relating to approval of the Plans and other construction and development approvals) or alleging a violation of any Legal Requirement; (b) a substantial change in the occupancy or use of all or any part of the Property; (c) commencement of any litigation affecting or potentially materially affecting the financial ability of Mortgagor or the value of the Property; (d) a pending or threatened condemnation of all or any part of the Property; (e) a fire or other casualty causing damage to all or any part of the Property; (f) receipt of any notice with regard to any release of hazardous substances or any other environmental matter affecting the Property or Mortgagor's interest therein; or (g) receipt of any request for information, demand letter or notification of potential liability from any entity relating to potential responsibility for investigation or clean-up of hazardous substances on the Property or at any other site owned or operated by Mortgagor.

2.12.   **Environmental Matters**.   Mortgagor will investigate, clean up, remove or remediate any spill or release of hazardous substances at the Property in accordance with the requirements of all environmental laws and will otherwise use, handle, store and dispose of all hazardous substances in accordance with the requirements of all environmental laws. Without limiting any other rights hereunder or under applicable law, Mortgagor does and shall indemnify Mortgagee and hold Mortgagee harmless from and against any and all claims, losses, damages (including, without limitation, natural resources damages), Secured Obligations, fines, penalties, charges, administrative and judicial proceedings and orders, judgments, remedial action requirements, enforcement actions of any kind, and all costs and expenses incurred in connection therewith, including, without limitation, all attorneys' fees and expenses, arising directly or indirectly in whole or in part, out of any spill or attributable to the presence, use, generation, disposal, discharge, storage, release or threatened release of hazardous substances on, from,

8

under or affecting the Property, or transported to or from the Property, whether prior to or during the term of the indebtedness secured hereby, and whether by Mortgagor or any predecessor in title or any employees, agents, contractors, or subcontractors of Mortgagor or any predecessors in title, or any third persons at any time occupying or present on the Property.

2.13. **Books and Records; Inspection**. Mortgagor shall keep and maintain (a) complete and accurate books and records reflecting all items of income and expense in connection with the operation of the Property, and (b) copies of all written contracts, leases and other agreements affecting the Property. Mortgagee or its designated representatives shall, upon reasonable prior notice to Mortgagor, have (i) the right of entry and free access to the Property during business hours (which may be without notice in any case of emergency) to inspect the Property, and (ii) the right to examine and audit all books, contracts and records of Mortgagor relating to the Property.

2.14. **Utilities**. Mortgagor will pay or cause to be paid all utility charges incurred in connection with the Property promptly when due and maintain all utility services available for use at the Premises.

3. **SECURITY AGREEMENT**. This Mortgage constitutes a security agreement under the Code and shall be deemed to constitute a fixture financing statement. Mortgagor hereby grants to Mortgagee a security interest in the personal and other property (other than real property) included in the Property, and all replacements of, substitutions for, and additions to, such property, and the proceeds thereof. For purposes of the foregoing, Mortgagor is the debtor (with its address, type of organization and jurisdiction of organization as set forth above) and Mortgagee is the secured party (with its address as set forth above). Mortgagor shall, at Mortgagor's own expense, execute, deliver, file and refile any financing or continuation statements or other security agreements Mortgagee may require from time to time to perfect, confirm or maintain the lien of this Mortgage with respect to such property. A photocopy of an executed financing statement shall be effective as an original. Without limiting the foregoing, Mortgagor hereby irrevocably appoints Mortgagee attorney-in-fact for Mortgagor to execute, deliver and file such instruments for or on behalf of Mortgagor at Mortgagor's expense, which appointment, being for security, is coupled with an interest and shall be irrevocable.

4. **ASSIGNMENT OF LEASES AND RENTS AND COLLECTIONS**. All of Mortgagor's interest in and rights under the Leases now existing or hereafter entered into, and all of the Rents, whether now due, past due, or to become due, and including all prepaid rents and security deposits, and all other amounts due with respect to any of part of the Property, are hereby absolutely, presently and unconditionally assigned and conveyed to Mortgagee to be applied by Mortgagee in payment of all sums due under the Agreement, the other Secured Obligations and all other sums payable under this Mortgage. Prior to the occurrence of any Event of Default, Mortgagor shall have a license to collect and receive all Rents and other amounts, which license shall be terminated at the sole option of Mortgagee, without regard to the adequacy of its security hereunder and without notice to or demand upon Mortgagor, upon the occurrence of any Event of Default. It is understood and agreed that neither the foregoing assignment to Mortgagee nor the exercise by Mortgagee of any of its rights or remedies under Section 7 hereof shall be deemed to make Mortgagee a "mortgagee-in-possession" or otherwise responsible or liable in

9

any manner with respect to the Property or the use, occupancy, enjoyment or any portion thereof, unless and until Mortgagee, in person or by agent, assumes actual possession thereof, nor shall appointment of a receiver for the Property by any court at the request of Mortgagee or by agreement with Mortgagor, or the entering into possession of any part of the Collateral by such receiver, be deemed to make Mortgagee a mortgagee-in-possession or otherwise responsible or liable in any manner with respect to the Property or the use, occupancy, enjoyment or operation of all or any portion thereof. Upon the occurrence of any Event of Default, this shall constitute a direction to and full authority to each lessee under any Leases, each guarantor of any of the Leases and any lessee, licensee, occupant or other person obligated to pay all Rents and other amounts to Mortgagee without proof of the Event of Default relied upon.  Mortgagor hereby irrevocably authorizes each such lessee, licensee, occupant or person to rely upon and comply with any notice or demand by Mortgagee for the payment to Mortgagee of any Rents and other amounts due or to become due. Mortgagor shall apply the Rents and other amounts received to the payment of all necessary and reasonable operating costs and expenses of the Property, debt service on the Secured Obligations and otherwise in compliance with the terms and provisions of the Agreement and this Mortgage. Mortgagee shall have the right to assign Mortgagee's right, title and interest in any Leases to any subsequent holder of this Mortgage or any participating interest therein or to any Person acquiring title to all or any part of the Property through foreclosure or otherwise.  Any subsequent assignee shall have all the rights and powers herein provided to Mortgagee.  Upon the occurrence of any Event of Default, Mortgagee shall have the right to execute new leases of any part of the Property, including leases that extend beyond the term of this Mortgage.  Mortgagee shall have the authority, as Mortgagor's attorney-in-fact, such authority being coupled with an interest and irrevocable, to sign the name of Mortgagor and to bind Mortgagor on all papers and documents relating to the operation, leasing and maintenance of the Property.

**5.  DECLARATION OF NO OFFSET**.  Mortgagor represents to Mortgagee that Mortgagor has no offsets, counterclaims or defenses to the Secured Obligations either at law or in equity.

**6.  EVENTS OF DEFAULT**.  Each of the following shall constitute a default (each, an "Event of Default") hereunder:

6.1.    Non-payment of any sum required to be paid to Mortgagee under the Agreement on the date due, including without limitation, principal and interest; or

6.2.    A breach of any covenant contained in Sections 2.3, 2.4, 2.5 or 2.6 hereof; or

6.3.    A breach by Mortgagor of any other term, covenant, condition, obligation or agreement under this Mortgage, and the continuance of such breach for a period of ten (10) days after written notice thereof shall have been given to Mortgagor; or

6.4.    Any warranty or representation made by Mortgagor or any guarantor of the Secured Obligations shall prove to be false or misleading in any respect at the time made or deemed made; or

6.5.    The filing by or against Mortgagor of a petition seeking relief, or the granting of

relief, under the Federal Bankruptcy Code or any similar federal or state statute; any assignment for the benefit of creditors made by Mortgagor; the appointment of a custodian, receiver, liquidator or trustee for Mortgagor or for any of the property of Mortgagor, or any action by Mortgagor to effect any of the foregoing; or if Mortgagor becomes insolvent (however defined) or is not paying its debts generally as they become due; or

6.6.    The dissolution, liquidation, merger, consolidation or reorganization of Mortgagor, or the institution of any proceeding to effect any of the foregoing; or

6.7.    A default under any other obligation by Mortgagor in favor of Mortgagee as set forth in this Mortgage, or under any document securing or evidencing such obligation, whether or not such obligation is secured by the Property; or

6.8.    The filing, entry or issuance of any judgment, execution, garnishment, attachment, distraint or lien against Mortgagor or their property, subject to the provisions of Section 2.5 hereof, if applicable; or

6.9.    A default under any other obligation secured by the Property or any part thereof, including, without limitation, any installment of principal or interest required under any other mortgage on the Property, whether subordinate or prior to the lien of this Mortgage, or if Mortgagor shall fail to perform or observe any other term, covenant, condition or obligation required to be performed or observed by Mortgagor therein; or

6.10.   Mortgagor shall fail to perform its obligations under any lease or other material contract relating to the Premises and such failure shall continue for ten (10) days after notice from Mortgagee; or

6.11.   Mortgagor makes or permits the occurrence of an Accelerating Transfer.

**7.   REMEDIES**.  If an Event of Default shall have occurred, Mortgagee may take any of the following actions:

7.1.    **Acceleration**.    Mortgagee may declare the entire amount of the Secured Obligations immediately due and payable, without presentment, demand, notice of any kind, protest or notice of protest, all of which are expressly waived, notwithstanding anything to the contrary contained in the Settlement.  Mortgagee may charge and collect interest from the date of default on the unpaid balance of the Secured Obligations, at the Default Rate (Default Rate is the lesser of (a) the maximum rate of interest allowed per law and (b) 18% per annum).

7.2.    **Possession**.  Mortgagee may enter upon and take possession of the Property, with or without legal action, lease the Property, collect therefrom all rentals and, after deducting all costs of collection and administration expense, apply the net rentals to any one or more of the following items in such manner and in such order of priority as Mortgagee, in Mortgagee's sole discretion, may elect: the payment of any sums due under any prior lien, taxes, water and sewer rents, charges and claims, insurance premiums and all other carrying charges, to the maintenance, repair or restoration of the Property, or on account of the Secured Obligations.

11

Mortgagee is given full authority to do any act which Mortgagor could do in connection with the management and operation of the Property. This covenant is effective either with or without any action brought to foreclose this Mortgage and without applying for a receiver of such rents. In addition to the foregoing, upon the occurrence of an Event of Default, Mortgagor shall pay monthly in advance to Mortgagee or to any receiver appointed to collect said rents the fair and reasonable rental value for Mortgagor's use and occupation of the Property, and upon default in any such payment Mortgagor shall vacate and surrender the possession of the Property to Mortgagee or to such receiver. If Mortgagor does not vacate and surrender the Property then Mortgagor may be evicted by summary proceedings.

7.3.  **Foreclosure**.  Mortgagee may institute any one or more actions of mortgage foreclosure against all or any part of the Property, or take such other action at law, equity or by contract for the enforcement of this Mortgage and realization on the security herein or elsewhere provided for, as the law may allow, and may proceed therein to final judgment and execution for the entire unpaid balance of the Secured Obligations. The unpaid balance of any judgment shall bear interest at the greater of (a) the statutory rate provided for judgments, or (b) the Default Rate. Without limiting the foregoing, Mortgagee may foreclose this Mortgage and exercise its rights as a secured party for all or any portion of the Secured Obligations which are then due and payable, subject to the continuing lien of this Mortgage for the balance not then due and payable. In case of any sale of the Property by judicial proceedings, the Property may be sold in one parcel or in such parcels, manner or order as Mortgagee in its sole discretion may elect. Mortgagor, for itself and anyone claiming by, through or under it, hereby agrees that Mortgagee shall in no manner, in law or in equity, be limited, except as herein provided, in the exercise of its rights in the Property or in any other security hereunder or otherwise appertaining to the Secured Obligations or any other obligation secured by this Mortgage, whether by any statute, rule or precedent which may otherwise require said security to be marshaled in any manner and Mortgagor, for itself and others as aforesaid, hereby expressly waives and releases any right to or benefit thereof. The failure to make any tenant a defendant to a foreclosure proceeding shall not be asserted by Mortgagor as a defense in any proceeding instituted by Mortgagee to collect the Secured Obligations or any deficiency remaining unpaid after the foreclosure sale of the Property.

7.4.  **Appointment of Receiver**.  Mortgagee may petition a court of competent jurisdiction to appoint a receiver of the Property. Such appointment may be made either before or after sale, without notice, without regard to the solvency or insolvency of Mortgagor at the time of application for such receiver, without regard to the then value of the Property or whether the Property shall be then occupied as a homestead or not, and without regard to whether Mortgagor has committed waste or allowed deterioration of the Property, and Mortgagee or any agent of Mortgagee may be appointed as such receiver. Mortgagor hereby agrees that Mortgagee has a special interest in the Property and absent the appointment of such receiver the Property shall suffer waste and deterioration and Mortgagor further agrees that it shall not contest the appointment of a receiver and hereby so stipulates to such appointment pursuant to this paragraph. Such receiver shall have the power to perform all of the acts permitted Mortgagee pursuant to Section 7.2 above and such other powers which may be necessary or customary in such cases for the protection, possession, control, management and operation of the Property during such period.

ACTIVE\49468546.v1-6/7/17

7.5. **Rights as a Secured Party**. Mortgagee shall have, in addition to other rights and remedies available at law or in equity, the rights and, remedies of a secured party under the Code. Mortgagee may elect to foreclose such of the Property as then comprise fixtures pursuant either to the law applicable to foreclosure of an interest in real estate or to that applicable to personal property under the Code. To the extent permitted by law, Mortgagor waives the right to any stay of execution and the benefit of all exemption laws now or hereafter in effect.

7.6. **Excess Monies**. Mortgagee may apply on account of the Secured Obligations any unexpended monies still retained by Mortgagee that were paid by Mortgagor to Mortgagee: (a) for the payment of, or as security for the payment of taxes, assessments or other governmental charges, insurance premiums, or any other charges; or (b) to secure the performance of some act by Mortgagor.

7.7. **Fair Rental Payments**. If the Mortgagor or any subsequent owner is occupying the Premises or any part thereof, it is hereby agreed that the said occupants shall pay such reasonable rental monthly in advance as the Mortgagee shall demand for the Property or the part so occupied, and for the use of personal property covered by this Mortgage or any chattel mortgage.

7.8. **Other Remedies**. Mortgagee shall have the right, from time to time, to bring an appropriate action to recover any sums required to be paid by Mortgagor under the terms of this Mortgage, as they become due, without regard to whether or not any other Secured Obligations shall be due, and without prejudice to the right of Mortgagee thereafter to bring an action of mortgage foreclosure, or any other action, for any default by Mortgagor existing at the time the earlier action was commenced. In addition, Mortgagee shall have the right to set-off all or any part of any amount due by Mortgagor to Mortgagee under any of the Secured Obligations, against any indebtedness, Secured Obligations or obligations owing by Mortgagee in any capacity to Mortgagor, including any obligation to disburse to Mortgagor any funds or other property on deposit with or otherwise in the possession, control or custody of Mortgagee.

## 8. **MISCELLANEOUS**.

8.1. **Successors; Assignment**. All provisions hereof shall bind Mortgagor and Mortgagee and their respective successors, vendees and assigns and shall inure to the benefit of Mortgagee, its successors and assigns, and Mortgagor and its permitted successors and assigns. MORTGAGOR CONSENTS TO THE ASSIGNMENT BY MORTGAGEE OF ALL OR ANY PORTION OF ITS RIGHTS UNDER THE AGREEMENT AND THIS MORTGAGE. MORTGAGOR ACKNOWLEDGES AND AGREES THAT ANY AND ALL RIGHTS OF MORTGAGEE UNDER THIS MORTGAGE MAY BE EXERCISED FROM TIME TO TIME BY ANY ASSIGNEE OR SUCCESSOR OF MORTGAGEE. Mortgagor shall not have any right to assign any of its rights hereunder.

8.2. **Notices**. All notices and communications under this Mortgage shall be in writing and shall be given by either (a) hand-delivery, (b) first class mail (postage prepaid), or (c) reliable overnight commercial courier (charges prepaid), to the addresses listed in this Mortgage.

13

Notice shall be deemed to have been given and received: (a) if by hand delivery, upon delivery; (b) if by mail, three (3) calendar days after the date first deposited in the United States mail; and (c) if by overnight courier, on the date scheduled for delivery. A party may change its address by giving written notice to the other party as specified herein.

8.3. **Remedies Cumulative**. The rights and remedies of Mortgagee as provided in this Mortgage or in the Agreement shall be cumulative and concurrent, may be pursued separately, successively or together, may be exercised as often as occasion therefor shall arise, and shall be in addition to any other rights or remedies conferred upon Mortgagee at law or in equity. The failure, at any one or more times, of Mortgagee to assert the right to declare the Secured Obligations due, grant any extension of time for payment of the Secured Obligations, take other or additional security for the payment thereof, release any security, change any of the terms of this Mortgage or the Agreement, or waive or fail to exercise any right or remedy under the Agreement shall not in any way affect this Mortgage or the rights of Mortgagee.

8.4. **No Implied Waiver**. Mortgagee shall not be deemed to have modified or waived any of its rights or remedies hereunder unless such modification or waiver is in writing and signed by Mortgagee, and then only to the extent specifically set forth therein. A waiver in one event shall not be construed as continuing or as a waiver of or bar to such right or remedy on a subsequent event.

8.5. **Partial Invalidity**. The invalidity or unenforceability of any one or more provisions of this Mortgage shall not render any other provision invalid or unenforceable. In lieu of any invalid or unenforceable provision, there shall be added automatically a valid and enforceable provision as similar in terms to such invalid or unenforceable provision as may be possible.

8.6. **Binding Effect**. The covenants, conditions, waivers, releases and agreements contained in this Mortgage shall bind, and the benefits thereof shall inure to, the parties hereto and their respective heirs, executors, administrators, successors and assigns and are intended and shall be held to be real covenants running with the land; provided, however, that this Mortgage cannot be assigned by Mortgagor without the prior written consent of Mortgagee, and any such assignment or attempted assignment by Mortgagor shall be void and of no effect with respect to Mortgagee.

8.7. **Modifications**. This Mortgage may not be supplemented, extended, modified or terminated except by an agreement in writing signed by the party against whom enforcement of any waiver, change, modification or discharge is sought.

8.8. **Governing Law**. This Mortgage shall be a contract made under and governed by the laws of the State of New York without giving effect to any choice of law rule that would cause the application of the laws of any jurisdiction other than the State of New York, except to the extent that matters of title or creation, perfection or priority of the security interests created hereby or procedural issues of foreclosure or enforcement of remedies are required to be governed by the laws of the jurisdiction where the Property is located.

14

8.9.   **Joint and Several Liability**.  If Mortgagor consists of more than one person or entity, the word "Mortgagor" shall mean each of them and their liability shall be joint and several.

8.10.   **Non-Merger**.   In the event Mortgagee shall acquire title to the Property by conveyance from Mortgagor or as a result of foreclosure, this Mortgage shall not merge in the fee estate of the Property but shall remain and continue as an existing and enforceable lien for the Secured Obligations secured hereby until the same shall be released of record by Mortgagee in writing.

8.11.   **Attorney's Fees**.  Mortgagor agrees to pay all costs, attorneys' fees, paralegal fees, and expenses incurred (whether incurred in any trial, appellate, bankruptcy, condemnation, or any other proceeding) in the event it becomes necessary for Mortgagee to protect its security and/or in the event of collection, whether suit be brought or not, and if suit is brought said parties agree to pay Mortgagee's costs and attorneys' fees, paralegal fees and expenses incurred therein including attorneys' fees, paralegal fees and expenses incurred upon appeal, if any.

8.12.   **WAIVER OF JURY TRIAL.   MORTGAGOR HEREBY EXPRESSLY WAIVES ANY RIGHT TO A TRIAL BY JURY IN ANY ACTION OR PROCEEDING TO ENFORCE OR DEFEND ANY RIGHTS UNDER THIS MORTGAGE OR AGREEMENT TO WHICH IT IS A PARTY, OR UNDER ANY AMENDMENT, INSTRUMENT, DOCUMENT OR AGREEMENT DELIVERED OR WHICH MAY IN THE FUTURE BE DELIVERED IN CONNECTION HEREWITH OR THEREWITH OR ARISING FROM ANY RELATIONSHIP EXISTING IN CONNECTION WITH THIS MORTGAGE OR ANY RELATED DOCUMENT, AND AGREES THAT ANY SUCH ACTION OR PROCEEDING SHALL BE TRIED BEFORE A COURT AND NOT BEFORE A JURY.**

8.13.   **Time of Essence and Severability**.  Time is declared to be of the essence in this Mortgage and the Agreement and of every part hereof and thereof. If Mortgagee chooses to waive any covenant, section, or provision of this Mortgage, or if any covenant, section, or provision of this Mortgage is construed by a court of competent jurisdiction to be invalid or unenforceable, it shall not affect the applicability, validity, or enforceability of the remaining covenants, sections, or provisions.

8.14.   **Receipt of Mortgage**.  Mortgagor hereby acknowledges receipt of a true copy of this Mortgage without any charge to Mortgagor.

8.15.   **Modifications of Mortgage**.  Pursuant to N.J.S.A. 46:9-8.1 et seq., this Mortgage and the Agreement are subject to modification.  To the extent permitted by law, this Mortgage secures all modifications from the date upon which this Mortgage was originally recorded, including future loans and extensions of credit and changes in the interest rate, due date, amount or other terms and conditions of any obligations.  This Mortgage may be modified from time to time without affecting the priority of the lien created hereby.

8.16.   **Recordation**.  The Mortgagor shall promptly cause this Mortgage to be duly recorded in the Office of the County Clerk of Gloucester County, New Jersey and shall pay all

recording fees and other costs incurred in connection therewith.

16

IN WITNESS WHEREOF, Mortgagor, intending to be legally bound hereby, has duly executed and delivered this Mortgage under seal as of the day and year first above written.

**WITNESS:**

By: _[signature]_

The address of the
Mortgagee is:

Laura DeLuca
LUKOIL North America LLC
505 Fifth Floor, 9th Floor
New York, NY 10017

**MORTGAGOR:**

By: _[signature]_

SURINDER BINDRA
PRESIDENT OF TURNERSVILLE PETROLEUM INC.

## Acknowledgment by Notary Public

STATE OF     *New Jersey*    :

                             :SS

COUNTY OF    *Ocean*      :

On this, the *8th* day of *June*, 2017 before me, a Notary Public in and for the State of New Jersey, personally appeared *Surinder Birda* who acknowledged himself to be the *President* of *TPI*, and that he as such officer, being authorized to do so, executed the foregoing instrument for the purposes therein contained by signing the name of the corporation by himself as such officer and acknowledges that he executed the same for the purposes therein contained.

IN WITNESS WHEREOF, I have hereunto set my hand and official seal.

_____
Notary Public

Notary Public in and for the State of _____

My commission expires: _____.

DEBORAH JEANNE HANEY
NOTARY PUBLIC OF NEW JERSEY
ID # 2373529
My Commission Expires 5/14/2018

18

## SCHEDULE A

## DESCRIPTION OF PROPERTY

All that certain lot or piece of ground situate in the Township of Monroe, County of Gloucester and State of New Jersey, described as follows:

BEGINNING AT THE POINT OF INTERSECTION OF THE Southwesterly line of Black Horse Pike (New Jersey State Highway Route 42) and the Northwesterly line of Pedrick Avenue (40 feet wide), and proceeding; thence

1.      South 38 degrees 19 minutes 57 seconds West, along said line of Pedrick Avenue, 200.00 feet to a corner of lands of the Latham Park Apartments Complex; thence

2.      North 33 degrees 15 minutes 00 seconds West, along lands of said Apartment Complex, 205.53 feet to the Southeasterly right of way line of Esposito Boulevard (said Boulevard being an ingress and egress road of said Apartment Complex and not a dedicated Street); thence

3.      North 38 degrees 19 minutes 57 seconds, East, along said line of Esposito Boulevard, 200.00 feet to the Southwesterly line of Black Horse Pike; thence

4. South 33 degrees 15 minutes 00 seconds East, along said line of Black Horse Pike, 205.53 feet to the point and place of BEGINNING.

Excepting thereout and therefrom Title to that portion of the above described subject premises conveyed to Township of Monroe (Gloucester County) by deed from Gulf Oil Corporation, a Pennsylvania corporation, dated May 12, 1970, recorded June 05, 1970 in Deed Book 1183, page 1193 and described as follows:

BEGINNING at the point of intersection of the Southwesterly line of Black Horse Pike (New Jersey State Highway Route 42) and the Northwesterly line of Pedrick Avenue 40.00 feet wide), and proceeding; thence

1.      South 38 degrees 19 minutes 57 seconds West, along said line of Pedrick Avenue, 200.00 feet to a point; thence

2.      North 33 degrees 15 minutes 00 seconds west, 10.54 feet to a point; thence

3.      North 38 degrees 19 minutes 57 seconds East, 200.00 feet to a point in the southwesterly line of Black Horse Pike; thence

4.      South 33 degrees 15 minutes 00 seconds East, along said line of Black Horse Pike, 10.54 feet to the aforesaid line of Pedrick Avenue, being the place of BEGINNING.

FOR INFORMATIONAL PURPOSES ONLY:

Premises described herein is designated as Lot 10, Block 1703 on the Tax Map of the Monroe Township, County of Gloucester, State of New Jersey

## EXHIBIT E

**MORTGAGE, ASSIGNMENT OF LEASES AND RENTS, SECURITY AGREEMENT and FINANCING STATEMENT FOR SANDYCREEK, PENNSYLVANIA PROPERTY, DESCRIBED IN EXHIBIT C HEREIN**

17



*First American Title Company*

# Electronically Recorded Document

Ref No:                                    ACCOMP-87

The attached document was recorded on your behalf by First American Title Company via our electronic recording process.

Thank you for allowing First American Title Company to record your documents.

**Recorded Date/Time:** *7/19/2017 12:16 PM*
**Instrument Number:** *3234*
**Book:**
**Page:**

**County/State:** *Venango/PA*
**Borrower:** *ACCOMP-87_NA  ACCOMP-87_NA*
**Document Type:** *Mortgage*
**Document Seq:** *1*

## <u>Do not detach.  This page is now a permanent part of this document.</u>

# COUNTY OF VENANGO
Susan R. Hannon
Recorder – Register – Clerk of Orphans' Court
1168 Liberty Street
P.O. Box 831
Franklin, PA 16323

| RECEIPT FOR PAYMENT |
| --- |

Instrument Number: 2017-003234          Record Date:    7/19/2017

Instrument Type:   MORTGAGE             Record Time:    12:14:34

Indexed Party:    R B DISTRIBUTOR INC.  Receipt No.:      224625

---

| Receipt Distribution |
| --- |
| Fee/Tax Description          Payment Amount |

```
MORTGAGE                     13.00
WRIT TAX                       .50
AFFORDABLE HOUSING           12.50      Paid By Remarks:
JCS/ATJ/CJEA FEE             35.50
CO IMPROVEMENT FND            2.00
REC. IMPRVMT FUND             3.00
EXTRA PAGES                  28.00
                     ------------------
ACH Transaction             $94.50

Total Received........       $94.50
```

I hereby CERTIFY that this document is
Recorded in the Recorder of Deeds Office
of Venango County, Pennsylvania



Susan R. Hannon
Susan R. Hannon
Recorder of Deeds

**** **DO NOT DETACH** ***

NOTE ** This page is now part of this legal document.  ** NOTE

NOTE **  Some information subject to change during the verification process and may not be reflected on this page.  ** NOTE

PREPARED BY AND UPON
RECORDATION RETURN TO:

Fox Rothschild LLP
997 Lenox Drive, Building 3
Lawrenceville, New Jersey 08648
Attn: Daniel V. Madrid, Esq.

*ACCOMP-87* (handwritten)

Record and Return:
FIRST AMERICAN TITLE INSURANCE CO.
50 MILLSTONE ROAD
BUILDING 200, SUITE 150
EAST WINDSOR, NJ 08520

**R B DISTRIBUTOR, INC.**, as mortgagor

To

**LUKOIL NORTH AMERICA LLC**, as mortgagee

**MORTGAGE AND SECURITY AGREEMENT**

|  |  |
|---|---|
| Dated: | As of June 7, 2017 |
| Location: | 1110 15th Street |
| Municipality/Township: | Sandycreek Township |
| County: | Venango County, PA |
| Parcel Number: | 26-006-0011E |

ACTIVE\45584456.v2-6/7/17

## MORTGAGE, ASSIGNMENT OF LEASES AND RENTS, SECURITY AGREEMENT, AND FIXTURE FILING

(1110 15th Street, Sandycreek Township, Pennsylvania)

THIS MORTGAGE AND SECURITY AGREEMENT ("**Mortgage**"), is executed on June 7, 2017, and made effective on June 7, 2017, by and between **R B DISTRIBUTOR, INC.**, a New Jersey corporation, with an office located at 2111 Orion Road, Toms River, New Jersey ("**Mortgagor**") and **LUKOIL NORTH AMERICA LLC**, a Delaware limited liability company, the principal office of which is located at 505 5th Avenue, 9th Floor, New York, NY 10017 ("**Mortgagee**").

**WHEREAS,** the Mortgagor is the owner of a certain tract or parcel of land known as **1110 15th Street, Sandycreek, Venango County, Pennsylvania a/k/a Parcel No. 26-006-0011E** and described in <u>Exhibit A</u> attached hereto and made a part hereof, together with the improvements now or hereafter erected thereon; and

**WHEREAS,** the Mortgagor has borrowed from the Mortgagee, is providing a guaranty of a borrowing from the Mortgagee, or is otherwise executing and delivering this Mortgage as collateral security for a borrowing from the Mortgagee, in the principal sum of **Two Hundred Three Thousand Seven Hundred Forty-Eight and 28/100 Dollars ($203,748.28)** (the "**Indebtedness**"), together with interest thereon as evidenced by that certain Settlement Agreement and Mutual General Release dated June 7, 2017 by and between Mortgagor and Mortgagee (the "**Agreement**");

**NOW, THEREFORE,** for the purpose of securing the payment of the Indebtedness and performance of the Agreement (collectively, the **Obligations**") the Mortgagor, for good and valuable consideration, receipt of which is hereby acknowledged, and intending to be legally bound hereby, does hereby give, grant, bargain, sell, convey, assign, transfer, mortgage, hypothecate, pledge, set over and confirm unto the Mortgagee and does agree that the Mortgagee shall have a security interest in the following described property, all accessions and additions thereto, all substitutions therefor and replacements and proceeds thereof, and all reversions and remainders of such property now owned or held or hereafter acquired (the "**Property**"), to wit:

(a) All of the Mortgagor's estate in the premises described in Exhibit A, together with all of the easements, rights of way, privileges, liberties, hereditaments, gores, streets, alleys, passages, ways, waters, watercourses, rights and appurtenances thereunto belonging or appertaining, and all of the Mortgagor's estate, right, title, interest, claim and demand therein and in the public streets and ways adjacent thereto, either in law or in equity (the "**Land**");

(b) All the buildings, structures and improvements of every kind and description now or hereafter erected or placed on the Land, and all facilities, fixtures, machinery, apparatus, appliances, installations, machinery and equipment, including all building materials to be incorporated into such buildings, all electrical equipment necessary for the operation of such buildings and heating, air conditioning and plumbing equipment now or hereafter attached to,

ACTIVE\45584456.v2-6/7/17

located in or used in connection with those buildings, structures or other improvements (the **"Improvements"**);

(c)    All rents, issues and profits arising or issuing from the Land and the Improvements (the **"Rents"**) including the Rents arising or issuing from all leases and subleases now or hereafter entered into covering all or any part of the Land and Improvements (the **"Leases"**), all of which Leases and Rents are hereby assigned to the Mortgagee by the Mortgagor. The foregoing assignment extends to Rents arising both before and after the commencement by or against the Mortgagor of any case or proceeding under any Federal or State bankruptcy, insolvency or similar law, and is intended as an absolute assignment and not merely the granting of a security interest.  The Mortgagor, however, shall have a license to collect retain and use the Rents so long as no Event of Default shall have occurred and be continuing or shall exist.  The Mortgagor will execute and deliver to the Mortgagee, on demand, such additional assignments and instruments as the Mortgagee may require to implement, confirm, maintain and continue the assignment of Rents hereunder;

(d)   All proceeds of the conversion, voluntary or involuntary, of any of the foregoing into cash or liquidated claims; and

(e)   Without limiting any of the other provisions of this Mortgage, the Mortgagor, as debtor, expressly grants unto the Mortgagee, as secured party, a security interest in all those portions of the Property which may be subject to the Uniform Commercial Code provisions applicable to secured transactions under the laws of any state (the **"Code"**), and the Mortgagor will execute and deliver to the Mortgagee on demand such financing statements and other instruments as the Mortgagee may require in order to perfect and maintain such security interest under the Code on the aforesaid collateral. This Mortgage constitutes a security agreement under the Code and shall be deemed to constitute a fixture financing statement.  Mortgagor hereby grants to Mortgagee a security interest in the personal and other property (other than real property) included in the Property, and all replacements of, substitutions for, and additions to, such property, and the proceeds thereof.  Mortgagor shall, at Mortgagor's own expense, execute, deliver, file and refile any financing or continuation statements or other security agreements Mortgagee may require from time to time to perfect, confirm or maintain the lien of this Mortgage with respect to such property.

To have and to hold the same unto the Mortgagee, its successors and assigns, forever.

Provided, however, that if the Mortgagor shall pay to the Mortgagee the Obligations, and if the Mortgagor shall keep and perform each of its other covenants, conditions and agreements set forth herein and in the Agreement, then, upon the termination of all obligations, duties and commitments of the Mortgagor under the Obligations and this Mortgage, and subject to the provisions of the paragraph entitled "Survival; Successors and Assigns", the estate hereby granted and conveyed shall become null and void.

1.      **Representations and Warranties**.  The Mortgagor represents and warrants to the Mortgagee that the Mortgagor has good and marketable title to an estate in fee simple absolute in

the Land and Improvements and has all right, title and interest in all other property constituting a part of the Property, in each case free and clear of all liens and encumbrances. This Mortgage is a valid and enforceable first lien on the Property and the Mortgagee shall, subject to the Mortgagor's right of possession prior to an Event of Default, quietly enjoy and possess the Property. The Mortgagor shall preserve such title as it warrants herein and the validity and priority of the lien hereof and shall forever warrant and defend the same to the Mortgagee against the claims of all persons.

2.   **Security Agreement**.   This Mortgage constitutes a security agreement under the Code and shall be deemed to constitute a fixture financing statement. Mortgagor hereby grants to Mortgagee a security interest in the personal property, equipment, fixtures, and other property (other than real property) included in the Property, and all replacements of, substitutions for, and additions to, such property, and the proceeds thereof. Mortgagor shall, at Mortgagor's own expense, execute, deliver, file and refile any financing or continuation statements or other security agreements Mortgagee may require from time to time to perfect, confirm or maintain the lien of this Mortgage with respect to such property.  A photocopy of an executed financing statement shall be effective as an original. Without limiting the foregoing, Mortgagor hereby irrevocably appoints Mortgagee attorney-in-fact for Mortgagor to execute, deliver and file such instruments for or on behalf of Mortgagor at Mortgagor's expense, which appointment, being for security, is coupled with an interest and shall be irrevocable.  Mortgagee shall have, in addition to all rights and remedies provided herein, and in any other agreements, commitments and undertakings made by Mortgagor to Mortgagee, all of the rights and remedies of a "secured party" under the applicable Code. This provision shall be self-operative, but the Mortgagor shall execute and deliver to Mortgagee on demand, from time to time, such further instruments as Mortgagee deems necessary and/or advisable to perfect, re-record, renew, continue or otherwise create or preserve Mortgagee's security interests in and to any personal property, equipment, and other property, or for applicable fixture filings and hereby irrevocably appoints Mortgagee as the attorney-in-fact of Mortgagor to execute, deliver and file such financing statements and other instruments as Mortgagee may require in order to impose the lien hereof and the security interest hereunder upon the personal property, equipment, fixtures, and other property.  If the lien of this Mortgage is subject to the security interest covering any such personal property, then all such property is hereby assigned to Mortgagee, together with the benefits of all deposits and payments now or hereafter made thereon by Mortgagor.

3.   **Affirmative Covenants**.  Until all of the Obligations shall have been fully paid, satisfied and discharged the Mortgagor shall:

(a) Payment and Performance of Obligations.  Pay or cause to be paid and perform all Obligations when due as provided in the Agreement.

(b) Legal Requirements.  Promptly comply with and conform to all present and future laws, statutes, codes, ordinances, orders and regulations and all covenants, restrictions and conditions which may be applicable to the Mortgagor or to any of the Property (the "**Legal Requirements**").

(c) Impositions.  Before interest or penalties are due thereon and otherwise when

due, the Mortgagor shall pay all taxes of every kind and nature, all charges for any easement or agreement maintained for the benefit of any of the Property, all general and special assessments (including any condominium or planned unit development assessments, if any), levies, permits, inspection and license fees, all water and sewer rents and charges, and all other charges and liens, whether of a like or different nature, imposed upon or assessed against the Mortgagor or any of the Property (the "**Impositions**").  Within thirty (30) days after the payment of any Imposition, the Mortgagor shall deliver to the Mortgagee evidence acceptable to the Mortgagee of such payment. The Mortgagor's obligations to pay the Impositions shall survive the Mortgagee's taking title to the Property through foreclosure, deed-in-lieu or otherwise.

(d)  <u>Maintenance of Security</u>.  Use, and permit others to use, the Property only for its present use or such other uses as permitted by applicable Legal Requirements and approved in writing by the Mortgagee.  The Mortgagor shall keep the Property in good condition and order and in a rentable and tenantable state of repair and will make or cause to be made, as and when necessary, all repairs, renewals, and replacements, structural and nonstructural, exterior and interior, foreseen and unforeseen, ordinary and extraordinary, provided, however, that no structural repairs, renewals or replacements shall be made without the Mortgagee's prior written consent.  The Mortgagor shall not remove, demolish or alter the Property nor commit or suffer waste with respect thereto, nor permit the Property to become deserted or abandoned.  The Mortgagor covenants and agrees not to take or permit any action with respect to the Property which will in any manner impair the security of this Mortgage.

4.     **Leases**.  The Mortgagor shall not (a) execute an assignment or pledge of the Rents or the Leases other than in favor of the Mortgagee; (b) accept any prepayment of an installment of any Rents prior to the due date of such installment; or (c) enter into or amend any of the terms of any of the Leases without the Mortgagee's prior written consent.  Any or all leases or subleases of all or any part of the Property shall be subject in all respects to the Mortgagee's prior written consent, shall be subordinated to this Mortgage and to the Mortgagee's rights and, together with any and all rents, issues or profits relating thereto, shall be assigned at the time of execution to the Mortgagee as additional collateral security for the Obligations, all in such form, substance and detail as is satisfactory to the Mortgagee in its sole discretion.

5.     **Due on Sale Clause.**  The Mortgagor shall not sell, convey or otherwise transfer any interest in the Property (whether voluntarily or by operation of law), or agree to do so, without the Mortgagee's prior written consent, including (a) any sale, conveyance, assignment, or other transfer of (including installment sale contracts), or the grant of a security interest in, all or any part of the legal or equitable title to the Property, except as otherwise permitted hereunder; (b) any lease of all or any portion of the Property; or (c) any sale, conveyance, assignment, or other transfer of, or the grant of a security interest in, any share of stock of the Mortgagor, if a corporation or any partnership interest in the Mortgagor, if a partnership, or any membership interest, if a limited liability entity, except in favor of the Mortgagee.  Any default under this Section shall cause an immediate acceleration of the Obligations without any demand by the Mortgagee.

6.     **Insurance**.  The Mortgagor shall keep the Property continuously insured, in an

amount not less than the cost to replace the Property or an amount not less than eighty percent (80%) of the full insurable value of the Property, whichever is greater, against loss or damage by fire, with extended coverage and against other hazards as the Mortgagee may from time to time require. With respect to any property under construction or reconstruction, the Mortgagor shall maintain builder's risk insurance. The Mortgagor shall also maintain comprehensive general public liability insurance, in an amount of not less than One Million Dollars ($1,000,000) per occurrence and Two Million Dollars ($2,000,000) general aggregate per location, which includes contractual liability insurance for the Mortgagor's obligations under the Leases, and worker's compensation insurance. All property and builders risk insurance shall include protection for continuation of income for a period of twelve (12) months, in the event of any damage caused by the perils referred to above. All policies, including policies for any amounts carried in excess of the required minimum and policies not specifically required by the Mortgagee, shall be with an insurance company or companies satisfactory to the Mortgagee, shall be in form satisfactory to the Mortgagee, shall meet all coinsurance requirements of the Mortgagee, shall be maintained in full force and effect, shall be assigned to the Mortgagee, with premiums prepaid, as collateral security for payment of the Obligations, shall be endorsed with a standard mortgagee clause in favor of the Mortgagee and shall provide for at least thirty (30) days notice of cancellation to the Mortgagee. Such insurance shall also name the Mortgagee as an additional insured under the comprehensive general public liability policy and the Mortgagor shall also deliver to the Mortgagee a copy of the replacement cost coverage endorsement. If the Property is located in an area which has been identified by any governmental agency, authority or body as a flood hazard area or the like, then the Mortgagor shall maintain a flood insurance policy covering the Property in an amount not less than the Indebtedness or the maximum limit of coverage available under the federal program, whichever amount is less.

7.    **Rights of Mortgagee to Insurance Proceeds.**  In the event of loss, the Mortgagee shall have the exclusive right to adjust, collect and compromise all insurance claims, and the Mortgagor shall not adjust, collect or compromise any claims under said policies without the Mortgagee's prior written consent. Each insurer is hereby authorized and directed to make payment under said policies, including return of unearned premiums, directly to the Mortgagee instead of to the Mortgagor and the Mortgagee jointly, and the Mortgagor appoints the Mortgagee as the Mortgagor's attorney-in-fact to endorse any draft therefor. All insurance proceeds may, at the Mortgagee's sole option, be applied to all or any part of the Obligations and in any order (notwithstanding that such Obligations may not then otherwise be due and payable) or to the repair and restoration of any of the Property under such terms and conditions as the Mortgagee may impose.

8.    **Compliance with Laws and Regulations**.  Mortgagor shall comply with all laws, ordinances, regulations and orders of all federal, state, municipal and other governmental authorities relating to the Property, including without limitation the Americans with Disabilities Act (the "ADA"). Mortgagor certifies that all renovations, construction and improvements with respect to the Property are and shall be in compliance with the ADA. Mortgagor will pay all license fees and similar municipal charges for the use of the Property and any other areas now or hereafter comprising part thereof or used in connection therewith and will not, unless so required by a governmental agency having jurisdiction, discontinue use or occupancy of any portion of the

ACTIVE\45584456.v2-6/7/17

Property without the prior written consent of Mortgagee.  Mortgagor shall not take or permit any action with respect to the Property which will in any manner impair the security of this Mortgage.

9.      **Condemnation.**  The Mortgagor, immediately upon obtaining knowledge of the institution of any proceedings for the condemnation or taking by eminent domain of any of the Property, shall notify the Mortgagee of the pendency of such proceedings.  The Mortgagee may participate in any such proceedings and the Mortgagor shall deliver to the Mortgagee all instruments requested by it to permit such participation.  Any award or compensation for property taken or for damage to property not taken, whether as a result of such proceedings or in lieu thereof, is hereby assigned to and shall be received and collected directly by the Mortgagee, and any award or compensation shall be applied, at the Mortgagee's option, to any part of the Obligations and in any order (notwithstanding that any of such Obligations may not then be due and payable) or to the repair and restoration of any of the Property under such terms and conditions as the Mortgagee may impose.

10.      **Environmental Matters.**      (a)      For purposes of this Section 10, the term "**Environmental Laws**" shall mean all federal, state and local laws, regulations and orders, whether now or in the future enacted or issued, pertaining to the protection of land, water, air, health, safety or the environment.  The term "**Regulated Substances**" shall mean all substances regulated by Environmental Laws, or which are known or considered to be harmful to the health or safety of persons, or the presence of which may require investigation, notification or remediation under the Environmental Laws.  The term "**Contamination**" shall mean the discharge, release, emission, disposal or escape of any Regulated Substances into the environment.

(b)  The Mortgagor represents and warrants to the best of its knowledge (i) that no Contamination is present at, on or under the Property and that no Contamination is being or has been emitted onto any surrounding property; (ii) all operations and activities on the Property have been and are being conducted in accordance with all Environmental Laws, and the Mortgagor has all permits and licenses required under the Environmental Laws; (iii) no underground or aboveground storage tanks are or have been located on or under the Property; and (iv) no legal or administrative proceeding is pending or threatened relating to any environmental condition, operation or activity on the Property, or any violation or alleged violation of Environmental Laws.  These representations and warranties shall be true as of the date hereof, and shall be deemed to be continuing representations and warranties which must remain true, correct and accurate during the entire duration of the term of this Mortgage.

(c)  The Mortgagor shall ensure, at its sole cost and expense, that the Property and the conduct of all operations and activities thereon comply and continue to comply with all Environmental Laws.  The Mortgagor shall notify the Mortgagee promptly and in reasonable detail in the event that the Mortgagor becomes aware of any violation of any Environmental Laws, the presence or release of any Contamination with respect to the Property, or any governmental or third party claims relating to the environmental condition of the Property or the conduct of operations or activities thereon.  The Mortgagor also agrees not to permit or allow the presence of Regulated Substances on any part of the Property, except for those Regulated Substances (i) which are used in

the ordinary course of the Mortgagor's business, but only to the extent they are in all cases used in a manner which complies with all Environmental Laws; and (ii) those Regulated Substances which are naturally occurring on the Property. The Mortgagor agrees not to cause, allow or permit the presence of any Contamination on the Property.

(d)   The Mortgagee shall not be liable for, and the Mortgagor shall indemnify, defend and hold the Mortgagee and all of its officers, directors, employees and agents, and all of their respective successors and assigns harmless from and against all losses, costs, liabilities, damages, fines, claims, penalties and expenses (including reasonable attorneys', consultants' and contractors' fees, costs incurred in the investigation, defense and settlement of claims, as well as costs incurred in connection with the investigation, remediation or monitoring of any Regulated Substances or Contamination) that the Mortgagee may suffer or incur (including as holder of the Mortgage, as mortgagee in possession or as successor in interest to the Mortgagor as owner of the Property by virtue of a foreclosure or acceptance of a deed in lieu of foreclosure) as a result of or in connection with (i) any Environmental Laws (including the assertion that any lien existing or arising pursuant to any Environmental Laws takes priority over the lien of the Mortgage); (ii) the breach of any representation, warranty, covenant or undertaking by the Mortgagor in this Section 10; (iii) the presence on or the migration of any Contamination or Regulated Substances on, under or through the Property; or (iv) any litigation or claim by the government or by any third party in connection with the environmental condition of the Property or the presence or migration of any Regulated Substances or Contamination on, under, to or from the Property.

(e)   If requested by Mortgagee, the Mortgagor shall execute and deliver an Environmental Indemnity Agreement satisfactory in form and substance to the Mortgagee, to more fully reflect the Mortgagor's representations, warranties, covenants and indemnities with respect to the Environmental Laws.

11.    **Inspection of Property**.  The Mortgagee shall have the right to enter the Property at any reasonable hour for the purpose of inspecting the order, condition and repair of the buildings and improvements erected thereon, as well as the conduct of operations and activities on the Property.  The Mortgagee may enter the Property (and cause the Mortgagee's employees, agents and consultants to enter the Property), upon prior written notice to the Mortgagor, to conduct any and all environmental testing deemed appropriate by the Mortgagee in its sole discretion.  The environmental testing shall be accomplished by whatever means the Mortgagee may deem appropriate, including the taking of soil samples and the installation of ground water monitoring wells or other intrusive environmental tests.  The Mortgagor shall provide the Mortgagee (and the Mortgagee's employees, agents and consultants) reasonable rights of access to the Property as well as such information about the Property and the past or present conduct of operations and activities thereon as the Mortgagee shall reasonably request.

12.    **Events of Default**.  The occurrence of any one or more of the following events shall constitute an **"Event of Default"** hereunder:  (a) any default under the Agreement (b) the failure by the Mortgagor to perform any of its obligations under this Mortgage or under the Agreement; (c) a falsity or inaccuracy by the Mortgagor of any written warranty, representation or statement made or furnished to the Mortgagee by or on behalf of the Mortgagor; (e) an uninsured material loss, theft,

damage, or destruction to any of the Property, or any lien against or the making of any levy, seizure or attachment of or on the Property; (f) the failure of the Mortgagee to have a mortgage lien on the Property with the priority required under Section 1; (g) if the Mortgagor directly or indirectly engages in any type of activity which, in the Mortgagee's reasonable discretion, would result in the forfeiture of any property of the Mortgagor to any governmental entity, federal, state or local; (h) foreclosure proceedings are instituted against the Property upon any other lien or claim, whether alleged to be superior or junior to the lien of this Mortgage; and (i) the failure by the Mortgagor to pay any Impositions as required under this Mortgage, or to maintain in full force and effect any insurance required under Mortgage.

13.     **Rights and Remedies of Mortgagee.** If an Event of Default occurs, the Mortgagee may, at its option and without demand, notice or delay, do one or more of the following:

(a)   The Mortgagee may declare the entire unpaid principal balance of the Obligations, together with all interest thereon, to be due and payable immediately.

(b)   The Mortgagee may (i) institute and maintain an action of mortgage foreclosure against the Property and the interests of the Mortgagor therein, (ii) institute and maintain an action on any instruments evidencing the Obligations or any portion thereof, and (iii) take such other action at law or in equity for the enforcement of the Agreement as the law may allow, and in each such action the Mortgagee shall be entitled to all costs of suit and reasonable attorneys fees.

(c)   The Mortgagee may, in its sole and absolute discretion: (i) collect any or all of the Rents, including any Rents past due and unpaid, (ii) perform any obligation or exercise any right or remedy of the Mortgagor under any Lease, or (iii) enforce any obligation of any tenant of any of the Property. The Mortgagee may exercise any right under this subsection (c), whether or not the Mortgagee shall have entered into possession of any of the Property, and nothing herein contained shall be construed as constituting the Mortgagee a "mortgagee in possession", unless the Mortgagee shall have entered into and shall continue to be in actual possession of the Property. The Mortgagor hereby authorizes and directs each and every present and future tenant of any of the Property to pay all Rents directly to the Mortgagee and to perform all other obligations of that tenant for the direct benefit of the Mortgagee, as if the Mortgagee were the landlord under the Lease with that tenant, immediately upon receipt of a demand by the Mortgagee to make such payment or perform such obligations. The Mortgagor hereby waives any right, claim or demand it may now or hereafter have against any such tenant by reason of such payment of Rents or performance of obligations to the Mortgagee, and any such payment or performance to the Mortgagee shall discharge the obligations of the tenant to make such payment or performance to the Mortgagor.

(d)   The Mortgagee shall have the right, in connection with the exercise of its remedies hereunder, to the appointment of a receiver to take possession and control of the Property or to collect the Rents, without notice and without regard to the adequacy of the Property to secure the Obligations. A receiver while in possession of the Property shall have the right to make repairs and to make improvements necessary or advisable in its or his opinion to preserve the Property, or to make and keep them rentable to the best advantage, and the Mortgagee may advance moneys to a receiver for such purposes. Any moneys so expended or advanced by the Mortgagee or by a

ACTIVE\45584456.v2-6/7/17

receiver shall be added to and become a part of the Obligations secured by this Mortgage.

(e)   **CONFESSION OF JUDGMENT FOR EJECTMENT.**   FOR THE PURPOSES OF THE REMEDIES AFFORDED MORTGAGEE IN THIS SECTION 13, UPON THE OCCURRENCE OF AN EVENT OF DEFAULT HEREUNDER OR DEFAULT UNDER THE AGREEMENT, MORTGAGOR HEREBY AUTHORIZES AND EMPOWERS ANY ATTORNEY OF ANY COURT OF RECORD WITHIN THE UNITED STATES, AS ATTORNEY FOR MORTGAGOR AND ALL PERSONS CLAIMING UNDER OR THROUGH MORTGAGOR, TO APPEAR FOR AND CONFESS JUDGMENT AGAINST MORTGAGOR AND AGAINST ALL PERSONS CLAIMING UNDER OR THROUGH MORTGAGOR, AND IN FAVOR OF MORTGAGEE, ITS SUCCESSORS AND ASSIGNS, FOR RECOVERY BY MORTGAGEE OF POSSESSION THEREOF, FOR WHICH THIS MORTGAGE, OR A COPY HEREOF, VERIFIED BY AFFIDAVIT, SHALL BE SUFFICIENT WARRANT; AND THEREUPON A WRIT OF POSSESSION MAY IMMEDIATELY ISSUE FOR POSSESSION OF THE PROPERTY, WITHOUT ANY PRIOR WRIT OR PROCEEDING WHATSOEVER AND WITHOUT ANY STAY OF EXECUTION.   IF FOR ANY REASON AFTER SUCH ACTION HAS BEEN COMMENCED IT SHALL BE DISCONTINUED, OR POSSESSION OF THE PROPERTY SHALL REMAIN IN OR BE RESTORED TO MORTGAGOR, MORTGAGEE SHALL HAVE THE RIGHT FOR THE SAME EVENT OF DEFAULT OR ANY SUBSEQUENT EVENT OF DEFAULT TO CONFESS JUDGMENT ONE OR MORE FURTHER TIMES AS ABOVE PROVIDED TO RECOVER POSSESSION OF THE PROPERTY.   MORTGAGEE MAY CONFESS JUDGMENT BEFORE OR AFTER THE INSTITUTION OF PROCEEDINGS TO FORECLOSE THIS MORTGAGE OR TO ENFORCE THE AGREEMENT, OR AFTER ENTRY OF JUDGMENT THEREIN OR ON THE NOTE, OR AFTER A SHERIFF'S SALE OF THE PROPERTY IN WHICH MORTGAGEE IS THE SUCCESSFUL BIDDER, IT BEING THE UNDERSTANDING OF THE PARTIES THAT THE AUTHORIZATION TO PURSUE SUCH PROCEEDINGS FOR OBTAINING POSSESSION AND CONFESSION OF JUDGMENT THEREIN IS AN ESSENTIAL PART OF THE REMEDIES FOR ENFORCEMENT OF THIS MORTGAGE OR THE AGREEMENT, AND SHALL SURVIVE ANY EXECUTION SALE TO MORTGAGEE. MORTGAGOR ACKNOWLEDGES THAT IT HAS BEEN REPRESENTED BY INDEPENDENT LEGAL COUNSEL WITH RESPECT TO THIS MORTGAGE AND THE AGREEMENT AND MORTGAGOR HEREBY EXPRESSLY WAIVES ITS RIGHT TO NOTICE AND HEARING WITH RESPECT TO THE CONFESSION OF JUDGMENT PROVISIONS SET FORTH IN THIS PARAGRAPH.

14.   **Application of Proceeds.**   The Mortgagee shall apply the proceeds of any foreclosure sale of, or other disposition or realization upon, or Rents or profits from, the Property to satisfy the Obligations in such order of application as the Mortgagee shall determine in its exclusive discretion.

15.   **Mortgagee's Right to Protect Security.**   The Mortgagee is hereby authorized to do any one or more of the following, when and if required, irrespective of whether an Event of Default has occurred: (a) appear in and defend any action or proceeding purporting to affect the security hereof or the Mortgagee's rights or powers hereunder; (b) purchase such insurance policies

ACTIVE\45584456.v2-6/7/17

covering the Property as it may elect if the Mortgagor fails to maintain the insurance coverage required hereunder; and (c) take such action as the Mortgagee may determine to pay, perform or comply with any Impositions or Legal Requirements, to cure any Events of Default and to protect its security in the Property.

16. **Appointment of Mortgagee as Attorney-in-Fact.** The Mortgagee, or any of its officers, is hereby irrevocably appointed attorney-in-fact for the Mortgagor (without requiring any of them to act as such), such appointment being coupled with an interest, to do any or all of the following: (a) collect the Rents after the occurrence of an Event of Default; (b) settle for, collect and receive any awards payable under Section 9 from the authorities making the same; and (c) execute, deliver and file such financing statements and other instruments as the Mortgagee may require in order to perfect and maintain its security interest under the Uniform Commercial Code on any portion of the Property.

17. **Certain Waivers.** The Mortgagor hereby waives and releases all benefit that might accrue to the Mortgagor by virtue of any present or future law exempting the Property, or any part of the proceeds arising from any sale thereof, from attachment, levy or sale on execution, or providing for any stay of execution, exemption from civil process or extension of time for payment or any rights of marshalling in the event of any sale hereunder of the Property, and, unless specifically required herein, all notices of the Mortgagor's default or of the Mortgagee's election to exercise, or the Mortgagee's actual exercise of any option under this Mortgage or the Agreement.

18. **Notices.** All notices, demands, requests, consents, approvals and other communications required or permitted hereunder must be in writing and will be effective upon receipt to the Mortgagor or the Mortgagee. Such notices and other communications may be hand-delivered, sent by facsimile transmission with confirmation of delivery and a copy sent by first-class mail, or sent by nationally recognized overnight courier service, to a party's address set forth above or to such other address as the Mortgagor or the Mortgagee may give to the other in writing for such purpose.

19. **Further Acts.** The Mortgagor will, at the cost of the Mortgagor, and without expense to the Mortgagee, do, execute, acknowledge and deliver all and every such further acts, deeds, conveyances, mortgages, assignments, notices of assignment, transfers and assurances as the Mortgagee shall, from time to time, require for the better assuring, conveying, assigning, transferring or confirming unto the Mortgagee the property and rights hereby mortgaged, or which Mortgagor may be or may hereafter become bound to convey or assign to the Mortgagee, or for carrying out the intent of or facilitating the performance of the terms of this Mortgage or for filing, registering or recording this Mortgage. The Mortgagor grants to the Mortgagee an irrevocable power of attorney coupled with an interest for the purpose of exercising and perfecting any and all rights and remedies available to the Mortgagee under the Note and the Agreement, at law or in equity, including without limitation the rights and remedies described in this paragraph.

20. **Changes in the Laws Regarding Taxation.** If any law is enacted or adopted or amended after the date of this Mortgage which deducts the Obligations from the value of the Property for the purpose of taxation or which imposes a tax, either directly or indirectly, on the

ACTIVE\45584456.v2-6/7/17

Mortgagor or the Mortgagee's interest in the Property, the Mortgagor will pay such tax, with interest and penalties thereon, if any. If the Mortgagee determines that the payment of such tax or interest and penalties by the Mortgagor would be unlawful or taxable to the Mortgagee or unenforceable or provide the basis for a defense of usury, then the Mortgagee shall have the option, by written notice of not less than ninety (90) days, to declare the entire Obligations immediately due and payable.

21.   **Documentary Stamps.**   If at any time the United States of America, any State thereof or any subdivision of any such State shall require revenue or other stamps to be affixed to the Note or this Mortgage, or impose any other tax or charge on the same, the Mortgagor will pay for the same, with interest and penalties thereon, if any.

22.   **Preservation of Rights.**   No delay or omission on the Mortgagee's part to exercise any right or power arising hereunder will impair any such right or power or be considered a waiver of any such right or power, nor will the Mortgagee's action or inaction impair any such right or power.   The Mortgagee's rights and remedies hereunder are cumulative and not exclusive of any other rights or remedies which the Mortgagee may have under other agreements, at law or in equity. The Mortgagee may exercise any one or more of its rights and remedies without regard to the adequacy of its security.

23.   **Illegality.**   In case any one or more of the provisions contained in this Mortgage should be invalid, illegal or unenforceable in any respect, the validity, legality and enforceability of the remaining provisions contained herein shall not in any way be affected or impaired thereby.

24.   **Changes in Writing.**   No modification, amendment or waiver of any provision of this Mortgage nor consent to any departure by the Mortgagor therefrom will be effective unless made in a writing signed by the Mortgagee, and then such waiver or consent shall be effective only in the specific instance and for the purpose for which given.   No notice to or demand on the Mortgagor in any case will entitle the Mortgagor to any other or further notice or demand in the same, similar or other circumstance.

25.   **Entire Agreement.**   This Mortgage (including the documents and instruments referred to herein) constitutes the entire agreement and supersedes all other prior agreements and understandings, both written and oral, between the Mortgagor and the Mortgagee with respect to the subject matter hereof.

26.   **Survival; Successors and Assigns.**   This Mortgage will be binding upon and inure to the benefit of the Mortgagor and the Mortgagee and their respective heirs, executors, administrators, successors and assigns; provided, however, that the Mortgagor may not assign this Mortgage in whole or in part without the Mortgagee's prior written consent and the Mortgagee at any time may assign this Mortgage in whole or in part; and provided, further, that the rights and benefits under the Paragraphs entitled "Environmental Matters", "Inspection of Property" and "Indemnity" shall also inure to the benefit of any persons or entities who acquire title or ownership of the Property from or through the Mortgagee or through action of the Mortgagee (including a

foreclosure, sheriff's or judicial sale).  The provisions of Paragraphs entitled "Environmental Matters", "Inspection of Property" and "Indemnity" shall survive the termination, satisfaction or release of this Mortgage, the foreclosure of this Mortgage or the delivery of a deed in lieu of foreclosure.

27.    **Interpretation.**  In this Mortgage, the singular includes the plural and the plural the singular; references to statutes are to be construed as including all statutory provisions consolidating, amending or replacing the statute referred to; the word "or" shall be deemed to include "and/or", the words "including", "includes" and "include" shall be deemed to be followed by the words "without limitation" and references to sections or exhibits are to those of this Mortgage unless otherwise indicated.   Section headings in this Mortgage are included for convenience of reference only and shall not constitute a part of this Mortgage for any other purpose.  If this Mortgage is executed by more than one party as Mortgagor, the obligations of such persons or entities will be joint and several.

28.    **Indemnity.**   The Mortgagor agrees to indemnify each of the Mortgagee, its directors, officers and employees and each legal entity, if any, who controls the Mortgagee (the "**Indemnified Parties**") and to hold each Indemnified Party harmless from and against any and all claims, damages, losses, liabilities and expenses (including all fees and charges of internal or external counsel with whom any Indemnified Party may consult and all expenses of litigation or preparation therefor) which any Indemnified Party may incur or which may be asserted against any Indemnified Party in connection with or arising out of the matters referred to in this Mortgage or the Agreement by any person, entity or governmental authority (including any person or entity claiming derivatively on behalf of the Mortgagor), whether (a) arising from or incurred in connection with any breach of a representation, warranty or covenant by the Mortgagor, or (b) arising out of or resulting from any suit, action, claim, proceeding or governmental investigation, pending or threatened, whether based on statute, regulation or order, or tort, or contract or otherwise, before any court or governmental authority, which arises out of or relates to this Mortgage or the Agreement.  The indemnity agreement contained in this Section shall survive the termination of this Mortgage, payment of any Indebtedness and assignment of any rights hereunder.  The Mortgagor may participate at its expense in the defense of any such action or claim.

29.    **Governing Law and Jurisdiction.**   This Mortgage has been delivered to and accepted by the Mortgagee and will be deemed to be made in the Commonwealth of Pennsylvania. This Mortgage will be interpreted and the rights and liabilities of the Mortgagor and the Mortgagee determined in accordance with the laws of the Commonwealth of Pennsylvania.  The Mortgagor hereby irrevocably consents to the exclusive jurisdiction of any state or federal court in the county or judicial district in the Commonwealth of Pennsylvania; provided that nothing contained in this Mortgage will prevent the Mortgagee from bringing any action, enforcing any award or judgment or exercising any rights against the Mortgagor individually, against any security or against any property of the Mortgagor within any other county, state or other foreign or domestic jurisdiction. The Mortgagor acknowledges and agrees that the venue provided above is the most convenient forum for both the Mortgagee and the Mortgagor.  The Mortgagor waives any objection to venue and any objection based on a more convenient forum in any action instituted under this Mortgage.

30.   **Security and Priority of Advances**.   This Mortgage secures future advances. Advances may be made and indebtedness incurred from time to time hereafter, but each such advance or indebtedness shall be secured hereby as if made on the date hereof.  The maximum amount of Indebtedness (as defined in 42 Pa. C.S.A. §8143, which term excludes interest and excludes the protective advances and expenses referred to in the immediately following sentence) outstanding at any time which is secured by this Mortgage is double the face amount of the Note. This Mortgage also secures the obligation of Mortgagor to repay, (i) all advances made after the date hereof with respect to the Property for the payment of real estate taxes, water and sewer rents, assessments, maintenance charges, insurance premiums or costs incurred for the protection of the Property or the lien of this Mortgage, and (ii) all reasonable costs and expenses incurred by Mortgagee by reason of an Event of Default hereunder.  As provided in 42 Pa. C.S.A. §8144, this Mortgage shall constitute a lien on the Property from the time this Mortgage is left of record for, among other things, all such advances and expenses, plus interest thereon, regardless of the time when such advances are made or such expenses are incurred.  Mortgagor hereby covenants and agrees that it will not exercise, and hereby waives, its right under 42 Pa. C.S.A. §8143(c) to limit the indebtedness secured by this Mortgage.

31.   **WAIVER OF JURY TRIAL**.   **THE MORTGAGOR IRREVOCABLY WAIVES ANY AND ALL RIGHT IT MAY HAVE TO A TRIAL BY JURY IN ANY ACTION, PROCEEDING OR CLAIM OF ANY NATURE RELATING TO THIS MORTGAGE, ANY DOCUMENTS EXECUTED IN CONNECTION WITH THIS MORTGAGE OR ANY TRANSACTION CONTEMPLATED IN ANY OF SUCH DOCUMENTS.   THE MORTGAGOR ACKNOWLEDGES THAT THE FOREGOING WAIVER IS KNOWING AND VOLUNTARY**.

**The Mortgagor acknowledges that it has read and understood all the provisions of this Mortgage, including the waiver of jury trial, and has been advised by counsel as necessary or appropriate.**

**[Remainder of Page Intentionally Left Blank; Signatures to Follow]**

ACTIVE\45584456.v2-6/7/17

**WITNESS** the due execution hereof as a document under seal, as of the date first written above, with the intent to be legally bound hereby.

**MORTGAGOR:**

WITNESS:

**R B DISTRIBUTOR, INC.,** a New Jersey corporation

Name: Roshanee Bindra
Title: PRESIDENT

## ACKNOWLEDGMENT

STATE OF New Jersey          )
                             ):ss
COUNTY OF Ocean              )

   **BE IT REMEMBERED** that on June 8, 2017, before me, the subscriber, a notary public, personally appeared Roshanee Bindra, a president of R B DISTRIBUTOR, INC., who I am satisfied are the persons named in and who executed this document and they did acknowledge that they signed, sealed and delivered the same as and for the voluntary act and deed of the corporation and for the uses and purposes therein expressed.

Witnesseth my hand and seal.

Notary Public

**DEBORAH JEANNE HANEY**
**NOTARY PUBLIC OF NEW JERSEY**
**ID # 2373529**
**My Commission Expires 5/14/2018**

ACTIVE\45584456.v2-6/7/17

I hereby certify that the precise address of the Mortgagee is:

**Lukoil North America LLC**, a Delaware limited liability company
505 5th Avenue, 9th Floor
New York, NY 10017

By: _____ On Behalf of Mortgagee
     Rashanee Bandra
     **Print Name**

Exhibit "A"

Legal Description of Property

ALL THAT CERTAIN piece or parcel of land situate in Sandycreek Township, Venango County, Pennsylvania, bounded and described as follows, to-wit:

BEGINNING at a railroad spike on the Southwesterly right of way line of T.R. 62, at, the most Northerly portion of the premises hereby conveyed; thence along the said right of way line of T.R. 62 South 44° 48' East, 70.40 feet to a point; thence by the same and the Northwesterly right of way line of T.R. 8 South 2° 58' 45" West, 114.65 feet to a point; thence along the Northwesterly right of way line of the said T.R. 8 by a curve having a radius of 869.02 feet an arc distance of 80.76 feet, the chord of said curve being South 37° 20' 50" West, 80.73 feet to a railroad spike; thence by other land of the said Raymond L. Lantz South 89° 10' 20" West, 49.27 feet to a railroad spike; thence by the same North 2° 57' 40" West, 135.70 feet to an iron pin; thence by the same North 25° 4' 35" East, 49.37 feet to the center of a manhole cover; thence by the same North 39° 38' 25" East, 63.75 feet to the railroad spike at the place of beginning.

PARCEL NO. 26-006-0011E

BEING the same premises which NNN Acquisitions, Inc., a Maryland corporation, by Deed dated 05/02/2006 and recorded 06/07/2006 in the Office of the Recorder of Deeds in and for the County of Venango in Record Book 404 Page 811, granted and conveyed unto 7 Penn Stores, Inc., a Delaware corporation.

BEING the same premises which 7 Penn Stores, Inc., a Delaware corporation, by Deed dated 08/05/2015 and recorded 08/31/2015 in the Office of the Recorder of Deeds in and for the County of Venango in Record Book 2015 Page 3830, granted and conveyed unto R B Distributor, Inc., a New Jersey Corporation

Notice - This Document does not sell, convey, transfer, include or insure the title to the coal and right of support underneath the surface land described or referred to herein, and the owner or owners of such coal may have the complete legal right to remove all of such coal and in that connection damage may result to the surface of the land and any house, building or structure on or in such land. The inclusion of this notice does not enlarge, restrict or modify any legal rights or estates otherwise created, transferred, excepted or reserved by this instrument. (This notice is set forth in the manner provided in section 1 of the act of July 17, 1957 p.l., 984 as amended, and is not intended as notice of unrecorded instruments, if any).

Notice - The undersigned, as evidenced by the signature(s) to the notice and the acceptance and recording of this deed, are fully cognizant of the fact that the undersigned may not be obtaining the right to protection against subsidence, as to the property herein conveyed, resulting from coal mining operations and that the purchased property, herein conveyed, may be protected from damage due to mine subsidence by a private contract with the owners of the economic interest in the coal. This notice is inserted herein to comply with the bituminous mine subsidence and land conservation act of 1966.

ACTIVE\45584456.v2-6/7/17

## SCHEDULE 1

## PERMITTED LIENS

1. Mortgage held by Wells Fargo Bank on real property located at 505 Black Horse Pike, Williamstown, New Jersey, identified in Exhibit B hereto, with a payoff amount of $687,872.12 as of May 22, 2017.

2. Mortgage held by Customers Bank on real property located at 505 Black Horse Pike, Williamstown, New Jersey, identified in Exhibit B hereto, with a payoff amount of $223,258.53 as of June 1, 2017.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

ACTIVE\9468055.v1-6/7/17